Jackie M. Ford, Esq. (SBN: 272641)
jford@structurelaw.com
Karen F. Rothschild, Esq. (SBN: 346949)
krothschild@structurelaw.com
STRUCTURE LAW GROUP, LLP
1754 Technology Drive, Suite 135
San Jose, California 95110
Telephone: (408) 441-7500
Facsimile: (408) 441-7501

Attorneys for Defendants
JACOB STINE and JUANITA TRAVER STINE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPLICIT CONVERSIONS, INC., a Delaware Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>JACOB STINE, an individual, JUANITA TRAVER STINE, an individual, SAYED MAHMOOD ALAWI, an individual, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No. 3:24-cv-03744-WHO<br><br>**COUNTERCLAIMANT JACOB STINE'S OPPOSITION TO ROBIN LAVALLEE'S MOTION TO DISMISS COUNTERCLAIMS**<br><br>Date:     October 9, 2024<br>Time:    2:00 p.m.<br>Judge:   Hon. William H. Orrick |
| JACOB STINE, an individual; and JUANITA TRAVER STINE, an individual,<br><br>        Counterclaimants,<br><br>    v.<br><br>IMPLICIT CONVERSIONS, INC., a Delaware Corporation; and ROBIN LAVALLEE, an individual,<br><br>        Counterdefendants. | |

- 1 -

## I.     INTRODUCTION

As the Court knows, this case involves a business dispute between two co-founders of a video game emulation company, where one co-founder, Counterdefendant Robin Lavallee ("Lavallee") wrongfully pushed out co-founder Counterclaimant Jacob Stine ("Stine"). Stine and Lavallee created Implicit Conversions ("Implicit") together as equals, but while Stine was out on medical leave, Lavallee terminated his employment.  Implicit sued Stine and his wife Juanita Traver Stine ("Traver Stine") for alleged post-employment actions and for declaratory relief related to Implicit's ownership.

Stine asserts counterclaims against both Implicit and Lavallee relating to Stine's wrongful termination from Implicit. Stine's first claim breach of contract claim against Lavallee arises from an agreement between the two that Stine agreed to allow Lavallee to use the "CEO" title with the understanding that Stine and Lavallee would remain equals within the company, and not that Lavallee would rule over Stine as "CEO" and remove him from the company he had founded.

Stine's fifth claim for waiting time penalties (California Labor Code § 203), as related to Lavallee, asserts that Lavallee was personally involved in the operations of Implicit such that Lavallee caused the delay in Stine receiving his final paycheck from Implicit.  Lavallee is therefore personally liable under California Labor Code § 558.1.

As will be shown below, both claims are adequately pleaded, and the motion should be denied.

## II.     STATEMENT OF ISSUES

1.     Has Stine met his obligation to put Lavallee on adequate notice of the breach of contract claim for termination of his employment, considering Lavallee's promises that they would remain equals within Implicit and he would not be Stine's boss?

2.     Has Stine met his obligation to put Lavallee on adequate notice of the waiting time penalty claim against him, considering Lavallee sent Stine a letter (which appears in the Court record) indicating when Stine would be receiving his final pay?

3.     If Stine has not met his burden under issues 1 and/or 2 above, after considering whether there has been bad faith, undue delay, prejudice to the opposing party, futility of

1  amendment, and previous amendments to the counterclaim, should leave to amend be granted?

2                                    **III.    FACTS**

3          Stine and Lavallee were long-time friends who cofounded Implicit Conversions, LLC in

4  2019 as 50/50 members. Counterclaim ¶ 6. Implicit Conversions, LLC was later merged with

5  Implicit Conversions, Inc. in 2023. *Id.* As equal members, Stine and Lavallee each received

6  4,250,000 shares of Implicit common stock. *Id.* ¶ 10.

7          Stine and Lavallee agreed Lavallee would be listed as the outward facing CEO for Implicit,

8  but that the outward title of CEO would not make Lavallee Stine's boss. *Id.* ¶ 9. However, on

9  May 28, 2024, Lavalee sent a letter to Stine, while Stine was out on medical leave, requesting that

10  Stine resign from Implicit by May 31, 2024. *Id.* ¶ 17. Stine's counsel wrote to Lavallee on May

11  31, 2024, informing him that Stine remained on medical leave and further correspondence was

12  forthcoming. *Id.* ¶ 18. Stine's counsel then wrote again on June 7, 2024 again confirming Stine

13  would remain on medical leave and respond to the request to resign in the near future. *Id.* Stine's

14  counsel and Implicit's corporate counsel scheduled a call to discuss the outstanding issues

15  between Stine and Lavallee, however, before that call was set to take place, Lavallee terminated

16  Stine in a letter dated June 14, 2024. *Id.* This letter appears in Lavallee's declaration at Exhibit G

17  to Dkt. No. 17-2, where Lavallee states in writing that Stine would be paid in accordance with

18  Implicit's standard payroll practices.

19                        **IV.    LEGAL AUTHORITY AND ANALYSIS**

20          **A.  Legal Standard**

21          A federal complaint requires only "a short and plain statement of the claim showing that

22  the pleader is entitled to relief." *Federal Rules of Civil Procedure 8(a)(2).* When ruling on a Rule

23  12(b)(6) motion to dismiss, the court must accept all factual allegations as true and draw all

24  reasonable inferences in favor of the nonmoving party. *Rescuecom Corp. v. Google Inc.,* 562 F3d

25  123, 127 (2009). A complaint must contain "enough facts to state a claim to relief that is plausible

26  on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a detailed factual

27  allegation is not required for a complaint, as a short and plain statement of the claim will suffice.

28  *Id.* at 562.  The facts the plaintiff alleges must add up to "more than a sheer possibility that a

1  defendant has acted unlawfully." *Id.* at 678.

2      When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court may augment the

3  facts and inferences in the complaint by considering matters of public record, considering that the

4  noticed facts are not "subject to reasonable dispute*." Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,

5  499 F.3d 1048, 1052 (9th Cir. 2007).

6      In the context of a 12(b)(6) motion, "'The standard for granting leave to amend is

7  generous.' [Citation.]   The court considers five factors in assessing the propriety of leave to

8  amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and

9  whether the plaintiff has previously amended the complaint."  *U.S. v. Corinthian Colleges,* 655

10  F.3d 984, 995 (9th Cir. 2011), quoting *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 701 (9th

11  Cir. 1990).

12  **B. Stine's First Counterclaim States a Plausible Claim to Relief for Breach of
13      Contract as Mr. Lavallee's Words and Conduct Indicated a Deal was Being Made**

14      The counterclaim alleges that there was an agreement between Lavallee and Stine that

15  commensurate with the founding of Implicit, neither would be each other's "boss."  Counterclaim

16  ¶ 9. Ultimately, it is only Lavallee and Stine who can provide evidence as to exactly what is meant

17  by that.  But at the time Lavallee made such an offer to Stine, it was clear that he knew exactly

18  what he was offering.  Lavallee told Stine: "[s]o let me know if that works or if that is a deal

19  breaker." *Id.* This meets the "plausibility" standard that there was a deal between Stine and

20  Lavallee as to the respective roles they would each play.

21      Additionally, a contract need not be established purely on words.  "Contracts can be

22  created by the conduct of the parties, without spoken or written words. Contracts created by

23  conduct are just as valid as contracts formed with words.  Conduct will create a contract if the

24  conduct of both parties is intentional and each knows, or has reason to know, that the other party

25  will interpret the conduct as an agreement to enter into a contract." *Judicial Council of California*

26  *Civil Jury Instructions (CACI), No. 305.*  "Whether or not an implied contract has been created is

27  determined by the acts and conduct of the parties and all the surrounding circumstances involved

28  and is a question of fact." *Del E. Webb Corp. v. Structural Materials Co.*, 123 Cal.App.3d 593,

611 (1981), internal citation omitted.  By asking if the arrangement was a "dealbreaker," Lavallee plausibly indicated that he knew Stine was relying on what he was offering.

Stine's counterclaim provides enough information to put Lavallee on notice as to the basis of Stine's breach of contract claim.  There was a deal between Lavallee and Stine where neither would be each other's boss and that the company would be 50/50 as to the two of them.  It is plausible that such conduct implied that neither could "fire" the other, particularly without a chance for any kind of rational discussion and while Stine was on a medical leave.  Even if the words alone did not create a contract – the parties' conduct, in deciding each other's titles and roles in the context of founding a company, created an agreement that one party would not fire the other, particularly without cause. Clearly Stine relied on this promise in continuing to work with Lavallee and allowing him to assume the CEO title.

If the Court is inclined to dismiss this claim, Stine seeks leave to amend.  In considering leave to amend, the Court should consider five factors: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *U.S. v. Corinthian Colleges*, 655 F.3d 984, 995, (9th Cir. 2011) quoting *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 701 (9th Cir.1990). Here, there have been no prior amendments, and there is nothing to indicate that Stine is seeking to amend out of bad faith, that amendment will cause any delay of the action, or that Lavallee will suffer any untoward prejudice. The amendment would not be futile.  Stine can plausibly amend this breach of contract claim to allege further details of this agreement between him and Lavallee, including additional statements that were made between the two of them indicating that Lavallee would not fire Stine and that Lavallee was given the CEO title based on Stine's understanding that they would remain equal in terms of their management of the business.   Stine can further allege that he understood this to mean that Lavallee would use the CEO title but that as a founder of Implicit, neither one would have the power to remove the other from the company's management.  Had Stine known that Lavallee would renege on this promise, he would not have agreed to give Lavallee the CEO title. Furthermore, Stine would not have agreed to work as the CTO "under" Lavallee had he known Lavallee could fire him on a whim.

1    The Court should deny this motion as to this claim.  But if it does not, leave to amend

2    should be granted.

3    **C. Stine's Fifth Counterclaim Adequately Puts Lavallee on Notice of His Waiting**
     **Time Penalties Claim, Particularly as Lavallee States in Court Record When**
4    **Stine Should Expect his Final Pay**

5    California Labor Code section 201(a) provides that employees are entitled to their pay

6    "immediately" upon discharge by the employer.  If the employer fails to make such payment

7    immediately, "the wages of the employee shall continue as a penalty from the due date thereof at

8    the same rate until paid." Labor Code § 203. Labor Code § 558.1(a) imposes personal liability for

9    a Section 203 violation on those who cause the violation: "[a]ny employer or other person acting

10   on behalf of an employer, who violates, or causes to be violated, any provision regulating

11   minimum wages or hours and days of work in any order of the Industrial Welfare Commission,

12   or violates, or causes to be violated, Sections 203 . . . may be held liable as the employer for such

13   violation."

14   Prior to the filing of Stine's Counterclaim, Lavallee submitted a written declaration to this

15   Court attaching a letter he signed addressed to Stine.  The letter is dated June 14, 2024, and states

16   that Stine will be paid in accordance with Implicit's standard payroll practices.  If Stine was paid

17   late, then it stands to reason that that Lavallee "caused" the late payment based on Lavallee's

18   presentation to this Court that he signed a letter to Stine stating when he would receive his final

19   pay.  Stine requests that the Court take judicial notice of Lavallee's filing, for the premise that it

20   is not reasonably subject to dispute that Lavallee provided such a letter to Stine. *See* Ex. G to

21   Lavallee Decl., Dkt. No. 17-2. Stine presents this information to the Court to point out that it is

22   certainly "plausible" under the standard articulated above that Lavallee "caused" this violation of

23   Labor Code § 203.

24   If the Court is inclined to dismiss this claim, Stine seeks leave to amend to clarify that

25   Lavallee sent a letter informing Stine when he would be paid, indicating that there is sufficient

26   evidence that Lavallee "caused" Stine's late pay in violation of California law.

27   //

28   //

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.    CONCLUSION

For the foregoing reasons, Stine respectfully requests that this Court deny Lavallee's Motion to Dismiss his Counterclaims.


Date:  September 18, 2024                STRUCTURE LAW GROUP, LLP


                                         By: _____
                                             Jackie Ford, Esq.
                                             Karen Rothschild, Esq.
                                             Attorneys for Defendants JACOB STINE
                                             and JUANITA TRAVER STINE