Jackie M. Ford, Esq. (SBN: 272641)
*jford@structurelaw.com*
Karen F. Rothschild, Esq. (SBN: 346949)
*krothschild@structurelaw.com*
STRUCTURE LAW GROUP, LLP
1754 Technology Drive, Suite 135
San Jose, California 95110
Telephone: (408) 441-7500
Facsimile: (408) 441-7501

Attorneys for Defendants and Counterclaimants
JACOB STINE and JUANITA TRAVER STINE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPLICIT CONVERSIONS, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JACOB STINE, an individual, JUANITA TRAVER STINE, an individual, SAYED MAHMOOD ALAWI, an individual, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 3:24-cv-03744-WHO<br><br>**DEFENDANT JACOB STINE'S ANSWER TO COMPLAINT AND <u>FIRST AMENDED</u> COUNTERCLAIM**<br><br>Judge: Hon. William H. Orrick |
| JACOB STINE, an individual; and JUANITA TRAVER STINE, an individual,<br><br>Counterclaimants,<br><br>v.<br><br>IMPLICIT CONVERSIONS, INC., a Delaware Corporation; and ROBIN LAVALLEE, an individual,<br><br>Counterdefendants. | |

Pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendant Jacob Stine ("Stine") hereby responds to Plaintiff Implicit Conversions, Inc.'s ("Plaintiff" or "Implicit") Complaint as follows:

**PRELIMINARY STATEMENT**

1. As to Paragraph 1 of Plaintiff's Complaint, Stine admits that he used the Chief Technology Officer title and was a co-founder but denies the remaining allegations.

2. As to Paragraph 2 of Plaintiff's Complaint, Stine denies the allegations.

3. As to Paragraph 3 of Plaintiff's Complaint, Stine lacks sufficient knowledge to admit or deny the allegations but deny that they have caused harm or damages to Plaintiff.

**PARTIES**

4. As to Paragraph 4 of Plaintiff's Complaint, Stine admits the allegations.

5. As to Paragraph 5 of Plaintiff's Complaint, Stine admits that Stine Jacob Stine is a natural person residing in the County of San Mateo.

6. As to Paragraph 6 of Plaintiff's Complaint, Stine admits that Stine Juanita Traver Stine is a natural person residing in the County of San Mateo.

7. As to Paragraph 7 of Plaintiff's Complaint, Stine lacks sufficient knowledge or information as to Sayed Mahmood Alawi.

8. As to Paragraph 8 of Plaintiff's Complaint, Stine lacks sufficient knowledge or information as to any Doe Defendants, and alleges that Doe defendants are not authorized by federal law.

**JURISDICTION AND VENUE**

9. As to Paragraph 9 of Plaintiff's Complaint, this paragraph contains Plaintiff's jurisdictional allegations, to which no response is required. To the extent a response is deemed required, Stine admits that this Court has subject matter jurisdiction over the claims asserted in the Complaint.

10. As to Paragraph 10 of Plaintiff's Complaint, this paragraph contains Plaintiff's jurisdictional allegations, to which no response is required. To the extent a response is deemed required, Stine admits that this Court has jurisdiction over the claims asserted in the Complaint

as to Stine.

11. As to Paragraph 11 of Plaintiff's Complaint, this paragraph contains Plaintiff's venue allegations, to which no response is required. To the extent a response is deemed required, Stine admits that this Court has venue over the claims asserted in the Complaint.

**FACTS**

12. As to Paragraph 12 of Plaintiff's Complaint, Stine admits in part and denies in part. Stine denies the allegations to the extent that Implicit Conversions, LLC, was co-founded by Stine and Robin Lavallee ("Lavallee"). Implicit Conversions, LLC, was founded by Stine as the sole member. Stine admits that Implicit Conversions, LLC, was restructured to add Lavallee as a member.

13. As to Paragraph 13 of Plaintiff's Complaint, Stine admits the allegations.

14. As to Paragraph 14 of Plaintiff's Complaint, Stine admits that he has been on the board of directors of Implicit. Defendants denies the remainder of the allegations.

15. As to Paragraph 15 of Plaintiff's Complaint, Stine admits in part and denies in part. Stine admits the allegations to the extent that Implicit issued 4,250,000 shares of Common Stock to Lavallee and 4,250,000 shares of Common Stock to Jacob Stine, both subject to vesting over a 4-year period on or around January 26, 2023. Stine denies the remaining allegations.

16. As to Paragraph 16 of Plaintiff's Complaint, Stine admits the allegations.

17. As to Paragraph 17 of Plaintiff's Complaint, Stine admits the allegations.

18. As to Paragraph 18 of Plaintiff's Complaint, Stine denies the allegations.

19. As to Paragraph 19 of Plaintiff's Complaint, Stine denies that Lavallee made him CTO. Stine lacks sufficient knowledge or information to form a belief as to the truthfulness of the remaining allegations contained herein, on that basis denies each and every allegation.

20. As to Paragraph 20 of Plaintiff's Complaint, Stine denies the allegations.

21. As to Paragraph 21 of Plaintiff's Complaint, Stine denies that Juanita Traver Stine was hired on April 1, 2024. Stine admits the remaining allegations.

22. As to Paragraph 22 of Plaintiff's Complaint, Stine denies the allegations.

23. As to Paragraph 23 of Plaintiff's Complaint, Stine denies that the actions were taken by Implicit, but admits that they were taken by Lavallee purporting to act for Implicit.

24. As to Paragraph 24 of Plaintiff's Complaint, Stine admits that Lavallee took steps to block Stine's computer access. Stine denies the remainder of the allegations.

25. As to Paragraph 25 of Plaintiff's Complaint, Stine admits in part and denies in part. Stine admits that he accessed Implicit's Google Admin system. Stine denies any access to computer systems was unlawful as Lavallee did not have the right to terminate Stine and because Stine was a Board member.

26. As to Paragraph 26 of Plaintiff's Complaint, Stine admits that Co-Stine Juanita Traver Stine's credentials were used to access the Google Admin system, Stine's access to Google Admin was restored, and Lavallee's access to Google Admin was disabled. Stine denies the remaining allegations.

27. As to Paragraph 27 of Plaintiff's Complaint, Stine denies the allegation.

28. As to Paragraph 28 of Plaintiff's Complaint, Stine denies that he made unauthorized copies of vast quantities of Implicit's confidential and proprietary information and its trade secrets. Stine acknowledges that he has copies of Implicit confidential information as this is information he either created or was provided to him in the course of his work with Implicit. Stine denies that Implicit had any kind of forecasting.

29. As to Paragraph 29 of Plaintiff's Complaint, Stine admits in part and denies in part. Stine admits he accidentally brought some of Implicit's computer systems offline. Stine denies deleting any information from Plaintiff's computer systems.

30. As to Paragraph 30 of Plaintiff's Complaint, Stine admits the allegations.

31. As to Paragraph 31 of Plaintiff's Complaint, Stine admits the allegations.

32. As to Paragraph 32 of Plaintiff's Complaint, Stine admits the allegations.

33. As to Paragraph 33 of Plaintiff's Complaint, Stine lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein.

34. As to Paragraph 34 of Plaintiff's Complaint, Stine admits in part and denies in part. Stine admits that a letter was received. Stine denies the remainder of the allegations.

35. As to Paragraph 35 of Plaintiff's Complaint, Stine denies the allegations.

36. As to Paragraph 36 of Plaintiff's Complaint, Stine admits that Lavallee signed a document purporting to remove Stine from the Board of Directors. Denied as to the remainder of the allegations.

37. As to Paragraph 37 of Plaintiff's Complaint, Stine admits the allegations.

38. As to Paragraph 38 of Plaintiff's Complaint, Stine admits in part and denies in part. Stine admits the allegations to the extent that a letter was received, and that a courier service was offered, and no response to said offer was provided by Stine. Stine denies that the hardware is critical to Plaintiff's ongoing operations, and that Stine has converted company property to his own use.

39. As to Paragraph 39 of Plaintiff's Complaint, Stine denies the allegations on the premise that the supposed buy-out of unvested shares is illegitimate, Lavallee and Stine are equal partners, and Stine's termination was wrongful.

40. As to Paragraph 40 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein.

41. As to Paragraph 41 of Plaintiff's Complaint, Stine admits that on the morning of June 20, 2024, Jacob Stine, through counsel, sent an Action By Written Consent of the Majority Stockholders, signed by Jacob Stine and Alawi, as Implicit stockholders. The written consent states that Jacob Stine is an Implicit Board member and removes Lavallee from the Implicit Board and appoints Juanita Stine and Alawi to the Board. Denied as to the remainder of the allegations.

42. As to Paragraph 42 of Plaintiff's Complaint, Stine admits that such actions were taken but denies the color that Plaintiff puts on these allegations.

43. As to Paragraph 43 of Plaintiff's Complaint, Stine admits in part and denies in part. Stine admits to the allegations to the extent that he sent documents to Implicit personnel. Stine denies that his actions caused, and continue to cause, significant confusion and disruption

to Plaintiff's workplace and to its business.

44. As to Paragraph 44 of Plaintiff's Complaint, Stine denies the allegations.

**COUNTS**

**FIRST COUNT**

**[Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*]**

**[Against Jacob Stine and Juanita Stine]**

45. As to Paragraph 45 of Plaintiff's Complaint, Stine incorporates his responses to each allegation contained in Plaintiffs' Complaint herein as if separately pleaded.

46. As to Paragraph 46 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

47. As to Paragraph 47 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

48. As to Paragraph 48 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

49. As to Paragraph 49 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

50. As to Paragraph 50 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

51. As to Paragraph 51 of Plaintiff's Complaint, Stine lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein, and on that basis denies each and every allegation.

52. As to Paragraph 52 of Plaintiff's Complaint, this paragraph contains Plaintiff's prayer for relief request, to which no response is required. To the extent a response is deemed

required, Stine denies the allegations.

53. As to Paragraph 53 of Plaintiff's Complaint, this paragraph contains Plaintiff's prayer for relief request, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

**<u>SECOND COUNT</u>**

**[Violation of California Penal Code § 502(c) *et seq.*]**

**[Against Jacob Stine and Juanita Stine]**

54. As to Paragraph 54 of Plaintiff's Complaint, Stine incorporates his responses to each allegation contained in Plaintiffs' Complaint herein as if separately pleaded.

55. As to Paragraph 55 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

56. As to Paragraph 56 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

57. As to Paragraph 57 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

58. As to Paragraph 58 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

59. As to Paragraph 59 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

60. As to Paragraph 60 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

61. As to Paragraph 61 of Plaintiff's Complaint, this paragraph contains Plaintiff's

conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

62. As to Paragraph 62 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

63. As to Paragraph 63 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

64. As to Paragraph 64 of Plaintiff's Complaint, Stine lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein, and on that basis denies each and every allegation.

65. As to Paragraph 65 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

66. As to Paragraph 66 of Plaintiff's Complaint, this paragraph contains Plaintiff's prayer for relief request, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

67. As to Paragraph 67 of Plaintiff's Complaint, this paragraph contains Plaintiff's prayer for relief request, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

## THIRD COUNT

**[Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836]**

**[Against Jacob Stine and Juanita Stine]**

68. As to Paragraph 68 of Plaintiff's Complaint, Stine incorporates his responses to each allegation contained in Plaintiffs' Complaint herein as if separately pleaded.

69. As to Paragraph 69 of Plaintiff's Complaint, Stine admits that material company systems are password protected, but denies the remainder of the allegations.

70. As to Paragraph 70 of Plaintiff's Complaint, Stine admits that Implicit has

investigated time and resources into development. Stine acknowledges that he has copies of Implicit confidential information as this is information he either created or was provided to him in the course of his work with Implicit. Stine denies that Implicit had any kind of forecasting. Stine lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein, and on that basis denies each and every allegation.

71. As to Paragraph 71 of Plaintiff's Complaint, Stine lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein, and on that basis denies each and every allegation.

72. As to Paragraph 72 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

73. As to Paragraph 73 of Plaintiff's Complaint, Stine admits that he had reason to know Implicit's confidential information was intended be kept secret and use limited. Stine lacks sufficient knowledge or information to form a belief as to the truthfulness of the remaining allegations contained therein, and on that basis denies each and every the remaining allegations.

74. As to Paragraph 74 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

75. As to Paragraph 75 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

76. As to Paragraph 76 of Plaintiff's Complaint, Stine denies the allegations.

77. As to Paragraph 77 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

78. As to Paragraph 78 of Plaintiff's Complaint, this paragraph contains Plaintiff's prayer for relief request, to which no response is required. To the extent a response is deemed

required, Stine denies the allegations.

**FOURTH COUNT**

**[Violation of the California Uniform Trade Secrets Act,**

**Cal. Civil Code § 3426 et. seq]**

**[Against Jacob Stine and Juanita Stine]**

79. As to Paragraph 79 of Plaintiff's Complaint, Stine incorporates his responses to each allegation contained in Plaintiffs' Complaint herein as if separately pleaded.

80. As to Paragraph 80 of Plaintiff's Complaint, Stine admits that material company systems are password protected, but denies the remainder of the allegations.

81. As to Paragraph 81 of Plaintiff's Complaint, Stine admits that Implicit has investigated time and resources into development. Stine acknowledges that he has copies of Implicit confidential information as this is information he either created or was provided to him in the course of his work with Implicit. Stine denies that Implicit had any kind of forecasting. Stine lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein, and on that basis denies each and every allegation.

82. As to Paragraph 82 of Plaintiff's Complaint, Stine lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein, and on that basis denies each and every allegation.

83. As to Paragraph 83 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

84. As to Paragraph 84 of Plaintiff's Complaint, Stine lacks sufficient knowledge or information to form a belief as to the truthfulness of the allegations contained therein, and on that basis denies each and every allegation.

85. As to Paragraph 85 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

86. As to Paragraph 86 of Plaintiff's Complaint, this paragraph contains Plaintiff's

conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

87. As to Paragraph 87 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

88. As to Paragraph 88 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

89. As to Paragraph 89 of Plaintiff's Complaint, this paragraph contains Plaintiff's prayer for relief request, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

**FIFTH COUNT**

**[Breach of Contract]**

**[Against Jacob Stine]**

90. As to Paragraph 90 of Plaintiff's Complaint, Stine incorporates his responses to each allegation contained in Plaintiffs' Complaint herein as if separately pleaded.

91. As to Paragraph 91 of Plaintiff's Complaint, Stine denies the allegations.

92. As to Paragraph 92 of Plaintiff's Complaint, Stine denies the allegations.

93. As to Paragraph 93 of Plaintiff's Complaint, Stine denies the allegations.

94. As to Paragraph 94 of Plaintiff's Complaint, Stine admits the contents of what the purported CIIAA states, but denies entering into the CIIAA.

95. As to Paragraph 95 of Plaintiff's Complaint, Stine denies the allegations.

96. As to Paragraph 96 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

97. As to Paragraph 97 of Plaintiff's Complaint, this paragraph contains Plaintiff's prayer for relief request, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

**SIXTH COUNT**

**[Breach of Duty of Loyalty]**

**[Against Juanita Stine]**

98. As to Paragraph 98 of Plaintiff's Complaint, Stine incorporates his responses to each allegation contained in Plaintiffs' Complaint herein as if separately pleaded.

99. As to Paragraph 99 of Plaintiff's Complaint, this paragraph contains Plaintiff's allegations against Co-Stine Juanita Traver Stine, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

100. As to Paragraph 100 of Plaintiff's Complaint, this paragraph contains Plaintiff's allegations against Co-Stine Juanita Traver Stine, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

101. As to Paragraph 101 of Plaintiff's Complaint, this paragraph contains Plaintiff's allegations against Co-Stine Juanita Traver Stine, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

102. As to Paragraph 102 of Plaintiff's Complaint, this paragraph contains Plaintiff's allegations against Co-Stine Juanita Traver Stine, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

103. As to Paragraph 103 of Plaintiff's Complaint, .this paragraph contains Plaintiff's allegations against Co-Stine Juanita Traver Stine, to which no response is required. To the extent a response is deemed required, Stine denies the allegations

104. As to Paragraph 104 of Plaintiff's Complaint, this paragraph contains Plaintiff's allegations against Co-Stine Juanita Traver Stine, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

**SEVENTH COUNT**

**[Declaratory Relief]**

**[Against Jacob Stine, Juanita Stine, and Alawi]**

105. As to Paragraph 105 of Plaintiff's Complaint, Stine incorporates his responses to each allegation contained in Plaintiffs' Complaint herein as if separately pleaded.

106. As to Paragraph 106 of Plaintiff's Complaint, this paragraph contains Plaintiff's conclusions of law, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

107. As to Paragraph 107 of Plaintiff's Complaint, Stine denies the allegations.

108. As to Paragraph 108 of Plaintiff's Complaint, Stine denies the allegations.

109. As to Paragraph 109 of Plaintiff's Complaint, Stine denies the allegations.

110. As to Paragraph 110 of Plaintiff's Complaint, Stine admits the allegations.

111. As to Paragraph 111 of Plaintiff's Complaint, Stine admits the allegations.

112. As to Paragraph 112 of Plaintiff's Complaint, Stine admits the allegations.

113. As to Paragraph 113 of Plaintiff's Complaint, this paragraph contains Plaintiff's prayer for relief request, to which no response is required. To the extent a response is deemed required, Stine denies the allegations.

## AFFIRMATIVE DEFENSES

Stine alleges the following separate affirmative defenses to the Complaint, and as to each alleged claim contained therein:

1. The Complaint, and each count thereunder, fails to state facts sufficient to constitute a cause of action.

2. Implicit has failed to mitigate its damages.

3. Stine is entitled to a credit or offset for any amounts that may be due to Implicit for any amounts due pursuant to his counterclaim.

4. Implicit would be unjustly enriched if allowed to recover the sums alleged in the Complaint.

5. All damages claimed to have been suffered by Implicit were caused by its own fault such that any recovery herein should be barred.

6. The computer system or systems that Defendants accessed do not constitute a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2).

7. Implicit's claim under California Penal Code § 502(c) fails to state a claim upon which relief can be granted because the complaint does not allege an "injury" as defined under §

502(b)(8).

8. The cause of action alleged in the Complaint based upon the Uniform Trade Secrets Act, Cal. Civil Code § § 3426 et seq., is barred to the extent Plaintiff has failed to undertake reasonable efforts to maintain the secrecy of its alleged trade secrets.

9. The cause of action alleged in the Complaint based upon the Uniform Trade Secrets Act, Cal. Civil Code §§ 3426 et seq., is barred because Defendants did not use the alleged trade secrets improperly.

10. The cause of action alleged in the Complaint based upon the Uniform Trade Secrets Act, Cal. Civil Code §§ 3426 et seq., is barred to the extent the alleged trade secrets are readily ascertainable.

11. Duties owed by Stine per contract, were prevented or excused, and as a result, the Complaint fails, in whole or in part.

12. Claims for attorney's fees and damages under the "Violation of the Computer Fraud and Abuse Act" may be barred as the Act does not permit recovery of attorney's fees or punitive damages under 18 U.S.C. § 1030.

13. Claims for attorney's fees and damages under "Trade Secrets Misappropriation Under Federal Defend Trade Secrets Act" may be barred due to a failure to meet the requirements of 18 U.S.C. § 1836.

14. The Complaint may be barred, in whole or in part, by the doctrine of unclean hands.

15. The Complaint may be barred, in whole or in part, by the doctrine of estoppel.

16. Each and every cause of action in the Complaint fails to allege facts sufficient to show recovery of punitive damages.

17. Implicit fails to define and fails to meet the definition of what constitutes a trade secret under the Trade Secrets Act, 18 U.S.C. § 1836. Furthermore, Implicit fails to specify which alleged trade secrets Stine allegedly utilized, if any, or any trade secrets that possess independent economic vale to invoke the protections of the Act.

18. Stine did not misappropriate any trade secrets. Stine did not acquire, disclose, or

use any trade secrets improperly or without authorization.

19. The information at issue does not qualify as a trade secret under the Trade Secrets Act, 18 U.S.C. § 1836, because Implicit did not take reasonable measures to keep it secret.

Stine acknowledges that he does not have sufficient knowledge or information from which to form a belief as to whether he may have additional, as yet unstated, affirmative defenses available. He therefore reserves the right to assert any additional affirmative defenses in the event that discovery indicates they would be appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Stine prays that:

A. That Implicit takes nothing by reason of its Complaint;

B. For all recoverable costs of suit incurred herein to the extent permitted by law;

C. For attorney fees incurred herein, under all applicable provisions of law;

D. For such other relief as the Court may deem just and proper.

**AMENDED COUNTERCLAIM**

Pursuant to the Federal Rules of Civil Procedure, Rule 13, Defendant and Counterclaimant Jacob Stine hereby alleges as follows:

**Parties, Jurisdiction, and Venue**

1. Stine is an individual residing in the State of California. `

2. Counterdefendant IMPLICIT CONVERSIONS, INC. ("Implicit") is a Delaware corporation.

3. Stine is informed and believes, and thereon alleges, that Counterdefendant ROBIN LAVALLEE ("Lavallee") is a resident of Pennsylvania.

4. The Court has subject matter jurisdiction over Stine's claims under 28 U.S.C. § 1367. The Counterclaim does not require any other independent basis of jurisdiction, including the addition of the additional party.

5. Venue is proper before this Court as Counterdefendant Implicit brought the Complaint before this Court and Stine does not dispute that venue is appropriate here pursuant

to 28 U.S.C. § 1391, as set forth in paragraph 11 of the Answer and Affirmative Defenses.

**General Allegations**

6. Stine and Robin Lavallee had been friends for years before they co-founded what would become Implicit Conversions, LLC in 2019 as 50/50 members. Implicit Conversions, LLC was then merged into Implicit Conversions, Inc. ("Implicit") in 2023. Stine and Lavallee were the only two members of Implicit's board of directors.

7. As Implicit is a small family-friendly business, both Stine and Lavallee invited their respective spouses to join Implicit. Lavallee's spouse, Isabelle Gagnon ("Gagnon") joined Implicit as its Communications Advisor, while Stine's spouse, Juanita Traver Stine ("Traver Stine") joined Implicit in early 2022 primarily as the Payroll Administrator, but her role was later expanded to include operating Human Resources for the company in or around April 2024.

8. At the time of Implicit's incorporation in 2023, Stine's home address and personal PO Box were used as Implicit's principal place of business and to receive and send official company correspondence. Additionally, Stine's home hosted one of the individual personal computers referred to as "Reynard" that Implicit used as a server.

9. Stine's strong suit is developing software and understanding the necessary computer science for Implicit to offer its services. Stine and Lavallee placed little value on corporate titles but agreed that Lavallee would serve as the outward-facing Chief Executive Officer as he was driving more of the administration side and his strong suits better suited him for the role as the public face of the company, while Stine would serve as the outward-facing Chief Technology Officer. Lavallee told Stine on or about April 28, 2022: "I am not your boss. You are not my boss. It just gives better responsibility for the people that we hire. They know who to look up to when they have questions, and that also means that you get to decide for tech questions. So let me know if that works or if that is a deal breaker." Stine agreed to this arrangement.

10. While Implicit had few corporate formalities, it did issue stock. Specifically, Implicit issued 4,250,000 shares of Common Stock to both Stine and Lavallee.

11. Implicit issued stock to other employees as well. Implicit issued 250,000 shares

of Common Stock to Mahmood Alawi ("Alawi"). Gagnon holds 541 shares of Implicit stock and Traver Stine holds 1,666 shares of Implicit stock, the later two exercised through options.

12. Stine and Lavallee would discuss Stine's traits that were consistent with traits of people with autism and neurodivergence, including Stine's internal struggles with social interactions.

13. Implicit was aware of Stine's neurodivergent traits consistent with traits of those with autism. Stine is informed and believes that Lavallee has family members with autism and both Lavallee and his wife, Gagnon, acknowledged that Stine's traits were consistent with the traits of their family members with autism.

14. Stine and Lavallee had an understanding that Stine could vent his personal stresses related to the workplace to Lavallee privately so that he was better able to perform his job. Lavallee and Stine would direct message each other about different workplace frustrations they each faced throughout their time working together. Stine never shared these comments with Implicit employees other than Lavallee.

15. On May 10, 2024, Stine suffered a medical crisis that required medical attention and resulted in Stine being placed on a medically advised leave of absence from work. The medical crisis stemmed from Stine and Lavallee having a communication breakdown.

16. Lavallee was well aware of Stine's medical crisis. The next week, Lavallee wrote to Traver Stine that "Jake has always been writing stuff like that on Slack (self harm, harm to others), in my private messages and I've learned to ignore it; I shouldn't have."

17. On May 28, 2024, while Stine was still out on medical leave, Lavallee sent Stine a letter requesting that Stine resign from Implicit by May 31, 2024. The letter requested "a meeting to determine the best path forward to transition you out of the company." It went on to state: "I am hopeful that we can reach an amicable resolution and parting of the ways, and that you are willing to work with the company in this regard."

18. Stine's counsel wrote to Lavallee on May 31, 2024 informing Lavallee that counsel had been retained, Stine remained on medical leave, and that further communication would be forthcoming. On June 7, 2024, counsel reached out to Lavallee again, informing him

that Stine would remain on medical leave and would respond to the letter requesting his resignation shortly. That same day, Stine's counsel then scheduled a future phone call with Implicit's corporate counsel (not current litigation counsel) to discuss the outstanding issues between Lavallee and Stine. Before the scheduled call took place, on June 14, 2024, Lavallee sent Stine a letter informing Stine that he had been terminated from Implicit.

19. Stine's final wages were not paid until June 19, 2024.

20. After Stine was purportedly terminated, he secured a majority of the stockholders of Implicit (Stine holding 4,250,000 and Alawi holding 250,000 shares) and signed a stockholder consent removing Lavallee from Implicit's Board of Directors and appointing Alawi and Traver Stine as Directors effective June 19, 2024. The Board of Directors then executed a Board Consent removing Lavallee as CEO effective June 20, 2024.

21. Lavallee signed a "Resolution Adopted by Written Consent of Stockholders in Lieu of Special Meeting" on June 17, 2024, purporting to remove Stine from the Board of Directors.

**<u>COUNTERCLAIM ONE</u>**

**[Promissory Estoppel]**

**[Counterdefendant Lavallee]**

22. Stine realleges and incorporates herein by reference all preceding paragraphs of this Counterclaim as though fully set forth herein.

23. In April 2022, Lavallee made Stine a proposal – let Lavallee use the CEO title, and assuming that was not a "dealbreaker," the two would continue to remain 50/50 partners in the company and not be each other's boss. Prior to that time, both had used the title "managing member" and the two made decisions about the company jointly.

24. Stine consented to this arrangement, and understood that in doing so, he was not giving up any rights. It was reasonable and foreseeable that Stine would rely upon Lavallee's proposed arrangement based upon their historical relationship.

25. In reliance on Lavallee's representations, Stine continued to work diligently with Lavallee to make Implicit successful. However, Lavallee broke his promise that the two of them

would remain 50/50 and Lavallee would not act as Stine's boss, as these promises would necessarily mean that Lavallee would not "fire" Stine or reduce his stockholdings, particularly in the midst of communications between counsel taking place while Stine was on medical leave.

26. Stine detrimentally relied on Lavallee's representations. Had he known that letting Lavallee use the CEO title would give Lavallee the ability to fire Stine and effectively remove him from Implicit, Stine would not have agreed to this arrangement. Stine would have expressly reserved rights he had at the time of Lavallee's representations, making sure that neither partner would have the ability to remove the other from Implicit without procedures in place. Stine would have further insisted that procedures be put in place in the event the two of them ever reached a future impasse. Stine would not have continued to work with Lavallee if Lavallee could have removed Stine from the company at any time.

27. Lavallee's termination of Stine harmed him, in an amount to be proven at trial.

**COUNTERCLAIM TWO**

**[Wrongful Termination Based On Membership In Protected Class (Disparate Treatment – Cal. Gov. Code § 12940(a))]**

**[Counterdefendant Implicit]**

28. Stine realleges and incorporates herein by reference all preceding paragraphs of this Counterclaim as though fully set forth herein.

29. Stine, a person perceived as having autism, was employed by Implicit from its founding through June 14, 2024, when Lavallee terminated his employment.

30. While Stine was employed at Implicit, Lavallee and other employees discussed Stine's perceived autism spectrum disorder. Stine struggled internally with social interactions and with Lavallee's permission, used Lavallee as a sounding board and confidant. Lavallee's growing animosity towards Stine was based on his perceived autistic traits. Lavallee wrote to Stine while Stine was on leave, requesting that Stine resign from Implicit. Lavallee's basis for requesting Stine resign rested upon Lavallee's inability to effectively communicate with Stine due to Stine's autistic traits. When Stine did not resign as Lavallee requested, Lavallee fired Stine.

31. Stine's perceived autism was a substantial motivating reason for his discharge. Lavallee requested Stine resign based on interactions that related to his perceived mental condition. Stine had not yet fully responded to Lavallee's resignation request before Lavallee terminated Stine, despite a pending phone call between Implicit's and Stine's counsel.

32. Stine received a right to sue letter from the California Civil Rights Department on July 29, 2024.

33. Stine has accordingly suffered damages in an amount to be proven at trial.

34. Implicit's actions were committed with oppression, fraud or malice such that an award of punitive damages is appropriate

35. Stine is additionally entitled to attorneys' fees and costs pursuant to Cal. Gov. Code § 12965.

**COUNTERCLAIM THREE**

**[Disability Discrimination - Failure to Engage in Interactive Process (Cal. Gov. Code § 12940(n))]**

**[Counterdefendant Implicit]**

36. Stine realleges and incorporates herein by reference all preceding paragraphs of this Counterclaim as though fully set forth herein.

37. Implicit treated Stine as if he had autism spectrum disorder and this was expressly acknowledged by both Lavallee and his wife, Gagnon, who was also an employee at Implicit. Implicit was aware of limitations Stine faced in his role based on his perceived autism, including Lavallee's inability to effectively communicate with Stine. It was obvious to Implicit that it needed to engage in the interactive process with Stine to find a reasonable accommodation for his autistic traits.

38. Stine was willing to participate in an interactive process to determine whether reasonable accommodations could be made so that he would be able to perform the essential job requirements, including effectively communicating with Lavallee. A reasonable accommodation was needed to assist Stine in his communications.

39. Implicit made no effort to engage in an interactive process with Stine when any

issues with his employment first arose. Implicit failed to participate in a timely good-faith interactive process with Stine to determine whether reasonable accommodations could be made. Instead, Lavallee directly requested that Stine resign from Implicit, pointing out specific communication limitations directly related to Stine's perceived autism.

40. Implicit's Human Resources attempted to engage Implicit in an interactive process to accommodate Stine's mental disability, but Lavallee failed to engage. Lavallee instead said that Stine would not be welcome back at Implicit, and terminated him while he was on leave.

41. Implicit's failure to engage in a good-faith interactive process was a substantial factor in causing Stine's harm, as Stine's termination could have been avoided.

42. Stine received a right to sue letter from the California Civil Rights Department on July 29, 2024.

43. Stine has accordingly suffered damages in an amount to be proven at trial.

44. Implicit's actions were committed with oppression, fraud or malice such that an award of punitive damages is appropriate

45. Stine is additionally entitled to attorneys' fees and costs pursuant to Cal. Gov. Code § 12965.

## COUNTERCLAIM FOUR

**[Failure to Provide Reasonable Accommodations – Cal. Gov. Code § 12940(m)]**

**[Counterdefendant Implicit]**

46. Counterclaimant realleges and incorporates herein by reference all preceding paragraphs of this Counterclaim as though fully set forth herein.

47. Stine was able to perform the essential duties of his position with Implicit with reasonable accommodation for his perceived autism spectrum disorder. For instance, Implicit's HR recommended communication training for both Stine and Lavallee.

48. Instead of offering Stine a reasonable accommodation, Lavallee terminated Stine. Had reasonable accommodations been offered or even discussed, Stine would not have suffered this harm.

49. Stine received a right to sue letter from the California Civil Rights Department on July 29, 2024.

50. Stine has accordingly suffered damages in an amount to be proven at trial.

51. Implicit's actions were committed with oppression, fraud or malice such that an award of punitive damages is appropriate.

52. Stine is additionally entitled to attorneys' fees and costs pursuant to Cal. Gov. Code § 12965.

**COUNTERCLAIM FIVE**

**[Waiting Time Penalties – Cal. Labor Code § 201, 203]**

**[Counterdefendants Implicit and Lavallee]**

53. Counterclaimant realleges and incorporates herein by reference all preceding paragraphs of this Counterclaim as though fully set forth herein.

54. At all relevant times, Implicit had a duty to comply with sections 201 and 203 of the California Labor Code.

55. Section 201 of the California Labor Code requires that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.

56. Section 203 of the California Labor Code provides that if an employer willfully fails to pay without abatement or reduction, any wages of an employee who is discharged or quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action thereof is commenced, but the wages shall not continue for more than 30 days per employee.

57. Section 558.1 of the California Labor Code also provides that individuals acting on behalf of the employer are personally liable for violations of Section 203.

58. Stine is informed and believes that Lavallee made the sole decision to terminate Stine. Implicit's only other employees who had access to payroll capabilities, Traver Stine and Bill Litshauer, reported to Stine that they had no prior knowledge of Stine's termination.

59. As the only other employee with knowledge of Stine's impending termination

and access to payroll functions, it was Lavallee's responsibility to ensure that Stine would be timely issued his final wages. Additionally, Lavallee communicated Stine's termination after Eastern Time business hours on a Friday. As such, it was impossible for Stine to be timely paid his final wages due to Lavallee's actions as there was no way to get payment to him that same day without there being preparation ahead of time.

60. Implicit and Lavallee did not pay Stine all his earned wages upon termination for a total of 5 days.

61. As a result of Implicit's and Lavallee's failure to timely pay all wages owed to Stine in accordance with Sections 201 and 203 of the Labor Code, Stine is entitled to recover waiting time penalties in the amount of $5,288.46.

62. Stine is additionally entitled to attorneys' fees and costs pursuant to Section 218.5 of the California Labor Code.

## COUNTERCLAIM SIX

**[Declaratory Relief]**

**[Counterdefendant Implicit]**

63. Counterclaimant realleges and incorporates herein by reference all preceding paragraphs of this Counterclaim as though fully set forth herein.

64. An actual controversy has arisen and now exists between Stine on the one hand, and Implicit and Lavallee on the other hand, concerning the matters set forth below.

65. On or about June 17, 2024, Lavallee executed a "Resolution Adopted by Written Consent of Stockholders in Lieu of Special Meeting" purporting to represent a majority of Implicit stockholders. In that resolution, Lavallee purported to remove Stine as an Implicit Board member.

66. However, at the time of Lavallee's resolution, Implicit had not made an attempted repurchase of Stine's unvested shares. Lavallee lacked the requisite votes to exercise a consent of stockholders at the time of this resolution.

67. Next, Stine secured the support of a majority of the stockholders by way of including Alawi. Together, Stine and Alawi executed a stockholder consent removing Lavallee

from the Board of Directors, and placing Alawi and Traver Stine on the Board of Directors.

68. Then, Alawi, Stine, and Traver Stine executed a Board consent to remove Lavallee as CEO and to place Stine as Implicit's temporary CEO.

69. As Lavallee and Implicit had no right to terminate Stine, his stock is not subject to repurchase by Implicit. Thus, any actions purportedly taken by Lavallee as the majority stockholder of Implicit are null and void.

70. Even if Implicit had the right to repurchase Stine's stock, which Stine disputes, Lavallee's attempt to repurchase Stine's stock was not effective because it was done unilaterally by Lavallee and not approved by the board of directors.

71. Lavallee's purported removal of Stine from Implicit's board of directors was also ineffective as it was attempted before any purported repurchase of Stine's stock.

72. Stine requests a judicial determination of the rights and duties of the parties as outlined above. A declaration as requested above is necessary to preserve and protect the parties' respective interests in Implicit.

**COUNTERCLAIM SEVEN**

**[Defamation]**

**[Against Lavallee]**

73. Stine realleges and incorporates herein by reference all preceding paragraphs of this Counterclaim as though fully set forth herein.

74. On June 14, 2024, Lavallee made statements to a 911 operator indicating that Stine may physically harm his wife. Lavallee knew this statement was false, or made it with reckless disregard for the trust or falsity of the report. In reality, Lavallee and Stine had not conversed in over a month.

75. The law enforcement personnel reasonably understood Lavallee's statements to be true. This was highly offensive to both Stine as an alleged abuser, and Traver Stine as an alleged victim. The Stines do not have a history of domestic abuse.

76. Lavallee did not believe the statements he made to law enforcement, particularly that there was concern for Traver Stine's safety, were true. He only made the 911 call as a flex

of power over Stine and Traver Stine because he was mad at Stine for blocking his computer access.

77. That the 911 call was not motivated out of any legitimate concern for the Stines' safety is further demonstrated by the fact that promptly after making the call, Lavallee sent an email to the female employees of Implicit and included a female external vendor informing them he had called 911 to perform a wellness check on Traver Stine at the Stines' home. There was absolutely no reason to do this; Lavalee's intention was to make a sexist display of hostility against Traver Stine and damage Stine's reputation.

78. Law enforcement visited the Stines' home at around 10:30pm on June 14, 2024.

79. Knowing that in the video game community there is a phenomenon called "SWATTING" which involves making false reports to police so that the SWAT team shows up to an unsuspecting victim's home, this was terrifying and traumatic to Stine.

80. At this point in time, Stine believed that Lavallee was in the middle of a crisis due to his impulsive termination of Stine and Stine was concerned about protecting Implicit's future. Stine was concerned that Lavallee had concocted a wild tale to law enforcement in order to further harass him and his wife at their home.

81. As a result of Lavallee's actions, Stine has suffered damages in an amount to be proven at trial.

82. Lavallee's actions were committed with oppression, fraud or malice such that an award of punitive damages is appropriate

**PRAYER FOR RELIEF**

WHEREFORE, Stine prays for a judgment as follows:

A. For damages in an amount according to proof at trial;

B. For punitive damages;

C. That the Court enter judgment dismissing the Complaint;

D. That the Court enter judgment in favor of Stine;

E. That Stine be awarded attorney's fees and costs incurred herein to the extent permitted by law;

F. That Stine be awarded such other and further relief as the Court may deem just.

**DEMAND FOR JURY TRIAL**

Defendant and Counterclaimant Jacob Stine hereby demands a jury trial.

Date: November 4, 2024

STRUCTURE LAW GROUP, LLP

By: /s/Jackie Ford

Jackie Ford, Esq.
Karen Rothschild, Esq.
Attorneys for Defendants and Counterclaimants JACOB STINE and JUANITA TRAVER STINE