GRELLAS SHAH LLP
DHAIVAT H. SHAH, ESQ. (SBN 196382)
(ds@grellas.com)
DAVID I. SIEGEL, ESQ. (SBN 264247)
(dsiegel@grellas.com)
JOSEPH B. PALMIERI, ESQ. (SBN 312725)
(jp@grellas.com)
VIVI T. LEE, ESQ. (SBN 247513)
(vl@grellas.com)
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA 95014
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

Attorneys for Counterdefendants
IMPLICIT CONVERSIONS, INC. and
ROBIN LAVALLEE

# UNITED STATES DISTRICT COURT

## NOTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IMPLICIT CONVERSIONS, INC, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JACOB STINE, an individual, JUANITA TRAVER STINE, an individual, SAYED MAHMOUD ALAWI, an individual, and DOES 1-10, inclusive,<br><br>Defendants.<br><br>JACOB STINE, an individual; JUANITA TRAVER STINE, an individual,<br><br>Counterclaimants,<br><br>vs.<br><br>IMPLICIT CONVERSIONS, INC, a Delaware Corporation; and ROBIN LAVALLEE, an individual,<br><br>Counterdefendants. | Case No.  3:24-cv-03744-WHO<br><br>**COUNTERDEFENDANTS IMPLICIT CONVERSIONS, INC. AND ROBIN LAVALLEE'S NOTICE OF MOTIONS AND MOTIONS TO STRIKE UNDER CAL. CODE CIV. PROC. § 425.16 AND DISMISS UNDER FED. R. CIV. PROC. 12(B) THE FIRST AMENDED COUNTERCLAIM OF JACOB STINE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  January 15, 2025<br>Time:            2:00 p.m.<br>Judge:           William H. Orrick<br>Courtroom:    2 - 17th Floor<br><br>Date Action Filed: June 21, 2024 |

IMPLICIT AND LAVALLEE'S MOTION TO STRIKE AND DISMISS STINE'S FIRST AMENDED COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

# **TABLE OF CONTENTS**

Page (s)

NOTICE OF MOTIONS AND MOTIONS ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

    I.    INTRODUCTION ...................................................................................... 2

    II.    STATEMENT OF ISSUES .......................................................................... 4

    III.    RELEVANT FACTUAL ALLEGATIONS .................................................... 7

    IV.    PROCEDURAL BACKGROUND ................................................................ 8

    V.    ARGUMENT ............................................................................................... 9

        A.    The Court Should Strike Counterclaim Seven And Award Lavallee His Attorneys' Fees And Costs .................................................. 9

        B.    The Court Should Dismiss Counterclaims One, Five, And Seven .......... 11

            1.    Legal Standard .................................................................... 11

            2.    Counterclaim One Fails To State A Claim For Promissory Estoppel ............................................................................ 11

            3.    Counterclaim Five Fails To State A Claim For Waiting Time Penalties .................................................................. 14

            4.    Counterclaim Seven Fails To State A Claim For Defamation ....... 15

    VI.   CONCLUSION ......................................................................................... 20

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

# TABLE OF AUTHORITIES

## CASES

Pages (s)

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................................11

*Barnhill v. Robert Saunders & Co.,*
    125 Cal. App. 3d 1 (1981)............................................................................14

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................................11

*Bustamante v. Intuit, Inc.,*
    141 Cal. App. 4th 199 (2006)......................................................................12

*Chabak v. Monroy,*
    154 Cal. App. 4th 1502 (2007)....................................................................10

*Christian Research Inst. v. Alnor,*
    148 Cal. App. 4th 71 (2007).................................................................16, 19

*Comstock v. Aber,*
    212 Cal. App. 4th 931 (2012)......................................................................10

*Garcia v. World Savings, FSB,*
    183 Cal. App. 4th 1031 (2010)....................................................................12

*Granadino v. Wells Fargo Bank, N.A.,*
    236 Cal. App. 4th 411 (2015)................................................................11, 13

*Herring Networks, Inc. v. Maddow,*
    8 F. 4th 1148 (9th Cir. 2021)...............................................................6, 9, 10

*John Doe 2 v. Sup. Ct.,*
    1 Cal. App. 5th 1300 (2016)...........................................................15, 16, 20

*Maloney v. T3Media, Inc.,*
    853 F.3d 1004 (9th Cir. 2017).......................................................................9

*McGarry v. Univ. of San Diego,*
    154 Cal. App. 4th 97 (2007).........................................................................16

*Metabolife Int'l, Inc. v. Wornick,*
    264 F.3d 832 (9th Cir. 2001).........................................................................9

*Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.,*
    12 Cal. App. 5th 200 (2017).........................................................................13

*Perez v. City of Los Angeles,*
    No. CV 22-8227 SVW (AS),
    2024 WL 3086668 (C.D. Cal. May 14, 2024) ...........................................16

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
    890 F. 3d 828 (9th Cir. 2018).......................................................................10

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

*Starr v. Baca,*
  633 F.3d 1191 (9th Cir. 2011)......................................................................................11

*Usher v. White,*
  64 Cal. App. 5th 883 (2021)........................................................................................14


**STATUTES**

Cal. Civ. Code:

  § 47.............................................................................................................................. 10

  § 47(b)(5) ............................................................................................................ 6, 16, 20

Cal. Civ. Proc. Code:

  § 425.16....................................................................................................................... 3

  § 425.16(b) ...........................................................................................................1, 2, 11

  § 425.16(b)(1) .........................................................................................................9, 10

  § 425.16(c) ..........................................................................................................1, 2, 10

Cal. Lab. Code:

  § 203...........................................................................................................................14, 15

  § 203(a) ...................................................................................................................14

  § 558.1......................................................................................................................14

  § 558.1(a) ................................................................................................................14, 15

Cal. Pen. Code:

  § 502(c) .....................................................................................................................8


**RULES**

Fed. R. Civ. Proc.:

  12(b)(6) ...................................................................................................................1, 2

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

## NOTICE OF MOTIONS AND MOTIONS

**TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 15, 2025, at 2:00 p.m., or as soon thereafter as may be heard, in Courtroom 2 on the 17th Floor of the above-entitled Court, counterdefendants Implicit Conversions, Inc. ("Implicit") and Robin Lavallee ("Lavallee") will and hereby move for an order (1) striking Counterclaim Seven of defendant and counterclaimant Jacob Stine's Answer to Complaint and Amended Counterclaim (the "Amended Counterclaim") (Dkt. No. 57) under section 425.16(b) of the California Code of Civil Procedure on the grounds that it arises from Lavallee's acts in furtherance of his rights of petition or free speech; (2) dismissing Counterclaims One, Five and Seven under Rule 12(b)(6) of the Federal Rules of Civil Procedure, with prejudice and without leave to amend, on the grounds that each counterclaim fails to state facts sufficient to state a claim for relief; and (3) for attorneys' fees and costs under section 425.16(c) of the California Code of Civil Procedure.

These Motions are based upon this Notice of Motions and Motions, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated:  December 3, 2024                    GRELLAS SHAH LLP

                                            By:   _/s/ Dhaivat H. Shah_____
                                                  Dhaivat H. Shah, Esq.
                                                  Attorneys for Counterdefendants
                                                  IMPLICIT CONVERSIONS, INC. and ROBIN
                                                  LAVALLEE

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

**MEMORANDUM OF POINTS AND AUTHORITIES**

Counterdefendants Implicit Conversions, Inc. ("Implicit") and Robin Lavallee ("Lavallee") respectfully request that the Court (1) strike Counterclaim Seven of defendant and counterclaimant Jacob Stine's ("Stine") Answer to Complaint and Amended Counterclaim (the "Amended Counterclaim") (Dkt. No. 57) under section 425.16(b) of the California Code of Civil Procedure; (2) dismiss Counterclaims One, Five and Seven of the Amended Counterclaim under Rule 12(b)(6) of the Federal Rules of Civil Procedure with prejudice and without leave to amend; and (3) award attorneys' fees and costs under section 425.16(c) of the California Code of Civil Procedure.

## I.    INTRODUCTION

Stine has concocted meritless claims against Implicit and its CEO, Lavallee, in retaliation for being sued by Implicit for computer crimes and trade secret violations. In his original counterclaim, Stine asserted a claim for breach of contract based on the contention that a statement allegedly made by Lavallee more than 8 months prior to Implicit's incorporation about Lavallee and Stine not being each other's "bosses" formed a binding contract precluding Implicit from ever firing Stine. In ruling on Lavallee's motion to dismiss, this Court held that the alleged statement was not sufficiently definite to form a contract not to fire Stine because it "provides no notice of the bounds of the supposed contract or the obligations of either party under such an agreement." Dkt. 55 ("MTD Order") 6:15-18. The Court also dismissed the claim for waiting time penalties against Lavallee because "[t]he pleadings fail to show that Lavallee 'caused' Stine to be paid late." *Id*. 7:10-11.

Stine makes no attempt to cure the indefiniteness problem. Instead, Stine's Amended Counterclaim, in Counterclaim One, takes the same deficient allegations that the Court previously found insufficiently definite to form a contract not to fire Stine and now contends that they are a clear and unambiguous promise not to fire Stine. Changing the legal label from breach of contract to promissory estoppel does not cure the problem.

The Court described Lavallee's alleged statement as "appear[ing] to have been a conversation about titles, not a binding contract in any way" (MTD Order 6:15-18), and the

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

Amended Counterclaim alleges that Stine did not understand that giving Lavallee the CEO title would allow Lavallee to fire Stine. The Amended Counterclaim further alleges that had Stine realized he could be fired, he would have "expressly" reserved his rights to ensure that neither he nor Lavallee could fire the other. ***The Amended Counterclaim therefore admits that there was no clear and unambiguous promise not to fire Stine.*** This requires that Counterclaim One for promissory estoppel be dismissed.

Counterclaim One also alleges that Stine relied on Lavallee's purported "promise" not to fire Stine in continuing to work for Implicit but neglects to mention that 8 months after the purported promise was made, Stine signed a written agreement with Implicit that acknowledged that Stine was an at-will employee and could thus be "terminat[ed] at any time for any reason or no reason." Any purported reliance by Stine on the supposed promise was therefore unreasonable, which also requires that the promissory estoppel claim be dismissed.

The Amended Counterclaim also fails to remedy the problems with the waiting time penalties claim in Counterclaim Five. The Amended Counterclaim alleges on information and belief that Lavallee made the sole decision to terminate Stine and that it was therefore Lavallee's responsibility to ensure Stine was timely paid, but it also alleges that Stine locked Lavallee out of Implicit's systems. And as the Court noted in its order granting the motion to dismiss, Stine also admitted to taking Implicit's computer systems offline. The Amended Counterclaim's allegations and Stine's admissions do not support a plausible inference that the failure to pay Stine timely was willful or that Lavallee caused the violation, which requires that the waiting time penalties claim be dismissed as to both Implicit and Lavallee.

Stine has also added a claim for defamation, Counterclaim Seven, based on Lavallee's request for a wellness check on Stine's wife, co-defendant Juanita Traver Stine ("Traver Stine"), following erratic and illegal behavior by Stine upon being terminated by Implicit. The defamation claim violates California's Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute under California Code of Civil Procedure § 425.16 and omits critical facts and relies on conclusory statements wholly at odds with the Amended Counterclaim's factual allegations.

The Amended Counterclaim alleges that Lavallee defamed Stine when Lavallee allegedly called 911 to request a wellness check on Traver Stine because Lavallee allegedly knew his statements to the 911 operator about concerns for Traver Stine's safety were false or made them with reckless disregard for their truth or falsity. Calls to law enforcement agencies are protected activities under California's anti-SLAPP statute. The defamation claim should be stricken, and Lavallee should be awarded his attorneys' fees and costs, because Stine has not presented a sufficient legal basis for his claim attacking Lavallee's protected activities. The Amended Counterclaim's factual allegations and Stine's admissions before this Court indicate that: 1) Stine had "always" made statements to Lavallee about self-harm or harm to others; 2) Stine had requested an extended leave of absence from Implicit because he had acted on his previous threats; 3) Lavallee informed Traver Stine the week after that he had previously ignored Stine's repeated threats of harm to himself and others but now realized he should not have; 4) Traver Stine did not correct Lavallee's stated concern in any way; and 5) four weeks after Stine's apparent crisis that caused him to go on medical leave, Stine engaged in erratic and unlawful behavior upon being fired, which included unauthorized use of Traver Stine's credentials to assault Implicit's computer systems at a time that Traver Stine herself had gone completely radio silent with Implicit.

These factual allegations and admissions do not support a plausible inference that Lavallee's alleged statement to the 911 operator was knowingly false or made with reckless disregard for its truth or falsity. Lavallee's concern that Stine may have done something to harm Traver Stine and seize her credentials was based on the totality of the information known to Lavallee and based on the belief that when it came to the safety and well-being of another human being, it was better to be safe than sorry. Lavallee's alleged statement to the 911 operator was therefore privileged, and the defamation claim must also be stricken and dismissed.

## II.    STATEMENT OF ISSUES

1.    A claim for promissory estoppel requires a clear and unambiguous promise. The Amended Counterclaim alleges that Lavallee said to Stine that they would not be each other's bosses at Implicit and that this "necessarily" included a promise not to fire Stine. The Court,

IMPLICIT AND LAVALLEE'S MOTION TO STRIKE AND DISMISS STINE'S FIRST AMENDED COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

however, has already held that the alleged statement is too indefinite to form a contract to not fire Stine because it "provides no notice of the bounds of the supposed contract or the obligations of either party under such an agreement." MTD Order 6:15-18. And the Amended Counterclaim concedes that the alleged statement was not a clear and unambiguous promise not to fire Stine because it alleges that Stine did not know that giving Lavallee the CEO title would allow Lavallee to fire Stine, and that had Stine been aware of that, "Stine would have expressly reserved rights he had at the time of Lavallee's representations, making sure that neither partner would have the ability to remove the other from Implicit without procedures in place." Amended Counterclaim ¶ 26. Should the Court dismiss Counterclaim One for failure to state a claim for promissory estoppel because the Amended Counterclaim does not plead a clear and unambiguous promise not to fire Stine?

2.    A claim for promissory estoppel also requires reasonable reliance on the promise. The Amended Counterclaim alleges that Stine relied on Lavallee's purported promise to never fire Stine by continuing to work for Implicit. Upon Implicit's incorporation approximately 8 months after Lavallee made the purported promise, however, Stine executed a written agreement with Implicit acknowledging that he was an at-will employee and could be fired by Implicit at any time for any reason or no reason. Should the Court dismiss Counterclaim One for failure to state a claim for promissory estoppel because the Amended Counterclaim does not plead reasonable reliance on the purported promise?

3.    Waiting time penalties may be recovered if an employer willfully fails to timely pay wages owed to a discharged employee. An officer of a company can only be personally liable for violation of California's wage statutes if the officer "caused" the violation. The Amended Counterclaim's allegations and Stine's admissions indicate that Stine disabled Lavallee's access to Implicit's computer systems and took Implicit's computer systems offline. Should the Court dismiss Counterclaim Five as to Implicit and Lavallee for failure to state a claim for waiting time penalties because the Amended Counterclaim does not plead facts supporting a plausible inference that Implicit intentionally failed to pay Stine?

4.    Claims arising from an act in furtherance of a defendant's constitutional rights to

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

free speech are subject to special motions to strike under California's anti-SLAPP statute. If the defendant makes a prima facie showing that the claim arises from protected activity, then the claim must be stricken, and the defendant must be awarded his attorneys' fees and costs, "if the plaintiff presents an insufficient legal basis for the claims or no reasonable jury could find for the plaintiff." *Herring Networks, Inc. v. Maddow*, 8 F. 4th 1148, 1155 (9th Cir. 2021) (citation and internal quotation marks omitted). Counterclaim Seven asserts a claim for defamation against Lavallee based on his call to 911 to request a wellness check on Traver Stine. Communications to the police are protected activity under California's anti-SLAPP statute. Should the Court strike Counterclaim Seven and award Lavallee his attorneys' fees and costs because the claim arises from protected activity and the Amended Counterclaim does not plausibly allege facts overcoming the conditional privilege for statements to police found in Cal. Civ. Code § 47(b)(5)?

5.     A communication between a person and a law enforcement agency is privileged unless "the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report." Cal. Civ. Code § 47(b)(5). The Amended Counterclaim alleges that Lavallee called 911 to request a wellness check on Traver Stine due to purported concerns that Stine may have harmed her but that Lavallee's statements to the 911 operator were knowingly false or made with reckless disregard for the truth or falsity of the statements. The Amended Counterclaim's factual allegations, however, contradict the conclusory assertions regarding Lavallee's state of mind and intent. The Amended Counterclaim's factual allegations indicate that Stine had often made threats of self-harm or harm to others and had recently acted on those threats; that Traver Stine did not correct Lavallee in any way when Lavallee informed her that he now realized that he needed to take Stine's previous threats seriously; that Stine had requested and remained on an extended leave of absence due to his recent behavior; and that Stine was suddenly engaged in erratic behavior immediately after his termination, including mysteriously using Travers Stine's credentials to commit computer crimes on Implicit's systems. A reasonable person in Lavallee's

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

position would be concerned that Travers Stine was in peril, at least enough to ask law enforcement to check on her well being. And the standard to overcome the privilege for law enforcement reports is far above the standard of care of a reasonable person but instead requires actual knowledge of falsity or a level of recklessness that goes beyond even gross negligence. Should the Court dismiss Counterclaim Seven for failure to state a claim for defamation because Lavallee's alleged statements were not knowingly false or made with reckless disregard for their truth or falsity, and were therefore privileged?

### III.    RELEVANT FACTUAL ALLEGATIONS

The Amended Counterclaim alleges that Stine and Lavallee were long-time friends who co-founded Implicit Conversions, LLC in 2019 as 50/50 members. Amended Counterclaim ¶ 6. Implicit was allegedly formed in 2023. *Id.* ¶ 8. Implicit Conversions, LLC allegedly merged into Implicit in 2023, with Implicit being the surviving entity. *Id.* ¶ 6. Implicit issued 4,250,000 shares of common stock to both Stine and Lavallee. *Id.* ¶ 10.

The Counterclaim alleges that Stine and Lavallee "placed little value on corporate titles" but agreed that Lavallee would serve as Implicit's Chief Executive Officer and Stine would serve as its Chief Technology Officer because those roles better suited each individual's skillset. *Id.* ¶ 9. On or about April 28, 2022, while both Lavallee and Stine were members of Implicit Conversions, LLC and over eight months before Implicit was allegedly formed, Lavallee allegedly told Stine: "'I am not your boss. You are not my boss. It just gives better responsibility for the people that we hire. They know who to look up to when they have questions, and that also means that you get to decide for tech questions. So let me know if that works or if that is a deal breaker.'" *Id.* Stine allegedly agreed to this arrangement. *Id.*

On May 10, 2024, Stine allegedly suffered a "medical crisis" that required medical attention and resulted in Stine's requesting an extended leave of absence from Implicit. *Id.* ¶ 15. The "medical crisis" was allegedly triggered by a breakdown in communications between Stine and Lavallee. Lavallee allegedly acknowledged Stine's "medical crisis" by writing to Traver Stine the following week, "'Jake has always been writing stuff like that on Slack (self harm, harm to others), in my private messages and I've learned to ignore it; I shouldn't have.'" *Id.*

¶ 16. On May 28, 2024, Implicit sent Stine a letter requesting that Stine resign from Implicit by May 31, 2024. *Id*. ¶ 17. Stine indicated that he remained on "medical" leave and declined to resign. *Id*. ¶ 18. On June 14, 2024, Implicit sent Stine a letter terminating Stine's employment. *Id*. ¶ 19. Later that same day, Stine used Traver Stine's credentials to breach Implicit's computer systems and block Lavallee's access to Implicit's computer systems. *Id*. ¶ 76. Upon realizing that Stine – who allegedly remained on "medical" leave due to his "medical crisis" – had been triggered by his termination to take the extreme action of committing computer fraud and implicating not just himself but also his wife in serious illegal activity, Lavallee allegedly called 911 to request a wellness check on Traver Stine. *Id*. ¶ 74. Stine allegedly received his final wages on June 19, 2024. *Id*. ¶ 19.

## IV.     PROCEDURAL BACKGROUND

On June 24, 2024, Implicit filed a complaint against Stine alleging claims for violation of the Computer Fraud and Abuse Act, violation of California Penal Code section 502(c), *et seq.*, violation of the Defend Trade Secrets Act, violation of the California Uniform Trade Secrets Act, and breach of contract relating to Stine's alleged post-termination acts of unauthorized access of Implicit's protected computers, Stine's damage to Implicit's protected computers, and Stine's unlawful access, possession and use of Implicit's confidential, proprietary, and trade secret information, among other things. Implicit also sought declaratory relief. This Court issued a preliminary injunction against Stine and Traver Stine on September 6, 2024.

On August 2, 2024, Stine filed his Answer to Implicit's complaint and his Counterclaim against Lavallee and Implicit. Lavallee moved to dismiss the two claims asserted against him – Counterclaim One for breach of contract and Counterclaim Five for waiting time penalties – on the grounds that each counterclaim failed to state facts sufficient to state a claim for relief. By order entered on October 15, 2024, the Court granted Lavallee's motion. The Court dismissed the breach of contract claim because Lavallee's alleged statement to Stine about not being each other's bosses was "insufficiently definite to plausibly state a claim for breach." MTD Order 6:10-11. The Court dismissed the waiting time penalties claim because the Counterclaim's

Grellas Shah LLP
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA 95014

allegations did not "show[] that Lavallee caused Stine's post-termination payout to be delayed." *Id*. 7:23-24.

Stine filed the Amended Counterclaim on November 4, 2024. Stine amended Counterclaim One to assert a claim for promissory estoppel based on the exact same purported factual allegations that the Court found insufficiently definite to plead the existence of a binding contract. Stine amended Counterclaim Five to allege on information and belief that Lavallee was the sole person who made the decision to terminate Stine and that Lavallee therefore was responsible for ensuring Stine was timely paid. Stine also added a count for defamation against Lavallee.

## V.   ARGUMENT

### A.   The Court Should Strike Counterclaim Seven And Award Lavallee His Attorneys' Fees And Costs

California's anti-SLAPP statute, Cal. Code. Civ. Proc. § 425.16, permits a defendant to file a "special motion to strike" a plaintiff's complaint. Cal. Civ. Proc. Code § 425.16(b)(1). An anti-SLAPP motion involves a two-step inquiry: "'To prevail on an anti-SLAPP motion, the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech.' [Citation.] If the defendant satisfies this requirement, '[t]he burden then shifts to the plaintiff ... to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal.'" *Herring*, 8 F. 4th at 1155 (citations omitted). A district court must grant the motion and strike the claims arising from the protected activity "if the plaintiff presents an insufficient legal basis for the claims or no reasonable jury could find for the plaintiff." *Id*. (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)) (internal quotation marks omitted). The anti-SLAPP statute is to be construed broadly "'to allow for early dismissal of meritless [F]irst [A]mendment cases aimed at chilling expression through costly, time-consuming litigation.'" *Herring*, 8 F. 4th at 1155 (quoting *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017)).

To avoid a collision between California's state procedural rules and the Federal Rules of

IMPLICIT AND LAVALLEE'S MOTION TO STRIKE AND DISMISS STINE'S FIRST AMENDED COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

Civil Procedure, district courts review anti-SLAPP motions under different standards depending on the basis of the motion. *See Planned Parenthood Fed'n of. Am., Inc. v. Ctr. for Med. Progress*, 890 F. 3d 828, 833 (9th Cir. 2018). If a defendant moves to strike "on purely legal arguments," then the motion is analyzed under Rules 8 and 12. *Herring*, 8 F. 4th at 1155. If the defendant asserts a "factual challenge," then the motion triggers discovery and is analyzed under the summary judgment standard. *Id*. at 1156. A defendant who prevails on an anti-SLAPP motion is entitled to recover his attorneys' fees and costs. *See* Cal. Code Civ. Proc. § 425.16(c); *Planned Parenthood*, 890 F. 3d at 833 (noting that section 425.16(c)'s fees and costs provision does not conflict with the Federal Rules and is therefore available for motions brought in federal court).

Counterclaim Seven, for defamation, arises from Lavallee's purported acts in furtherance of his right of petition or free speech, within the meaning of Cal. Code. Civ. Proc. § 425.16(b)(1). "The law is that communications to the police are within SLAPP." *Comstock v. Aber*, 212 Cal. App. 4th 931, 941-42 (2012) (collecting cases); *accord Chabak v. Monroy*, 154 Cal. App. 4th 1502, 1511 (2007) (holding that a claim for defamation arising from allegedly false reporting of child molestation to police "clearly" arose from defendants' petitioning activity and therefore satisfied first prong of anti-SLAPP motion). Counterclaim Seven alleges that Lavalle defamed Stine by making "statements to a 911 operator indicating that Stine may physically harm his wife." Amended Counterclaim ¶ 74. The Amended Counterclaim describes Lavallee's purported acts of defamation as statements to "law enforcement" and alleges that law enforcement visited Stine's home in response to Lavallee's expressed concerns. *Id.* ¶¶ 75, 78. The defamation claim therefore falls squarely within the ambit of Cal. Code. Civ. Proc. § 425.16(b)(1).

The burden therefore shifts to Stine to show that Counterclaim Seven has legal merit. Stine cannot satisfy his burden, however, because Counterclaim Seven fails to plausibly state a claim for defamation that overcomes the conditional privilege for statements to law enforcement under Cal. Civ. Code § 47, as is further detailed in Section V.B.4 below. Therefore, Counterclaim Seven must be stricken and Lavallee must be awarded his attorneys'

fees and costs.  *See* Cal. Code Civ. Proc. §§ 425.16(b)-(c).

### B.    The Court Should Dismiss Counterclaims One, Five And Seven

#### 1.    Legal Standard

A district court should grant a motion to dismiss if the counterclaimant has not pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 571 (2007).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  But "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545.  Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011).  The Counterclaim's allegations fail to plead facts sufficient to state claims for promissory estoppel and defamation against Lavallee.

#### 2.    Counterclaim One Fails To State A Claim For Promissory Estoppel

The Amended Counterclaim's attempt to recast the failed breach of contract claim as a claim for promissory estoppel is unavailing.  To state a claim for promissory estoppel, a complaint must allege "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Granadino v. Wells Fargo Bank, N.A.*, 236 Cal. App. 4th 411, 416 (2015) (citations and internal quotation marks omitted).  The Amended Counterclaim does not sufficiently allege the first or third elements.

Like the failed breach of contract claim, the promissory estoppel claim is based on the following alleged statement by Lavallee:  "I am not your boss.  You are not my boss.  It just

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

11

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

gives better responsibility for the people that we hire. They know who to look up to when they have questions, and that also means that you get to decide for tech questions. So let me know if that works or if that is a deal breaker." Amended Counterclaim ¶¶ 9, 23. The Amended Complaint alleges that this statement was "necessarily" a promise not to fire Stine. *Id*. ¶ 25. But this Court has already held that this alleged statement is too indefinite to form a binding contract to not fire Stine because it "provides no notice of the bounds of the supposed contract or the obligations of either party under such an agreement." MTD Order 6:15-18. If a statement is too indefinite to form a contract, then it is not a clear and unambiguous promise and is therefore also insufficient to support a claim for promissory estoppel. *See Garcia v. World Savings, FSB*, 183 Cal. App. 4th 1031, 1045 (2010) (explaining that a promise is only enforceable under promissory estoppel if it is "definite enough that a court can determine the scope of the duty" (quoting *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006)) (internal citations omitted)). Courts actually apply a more rigorous standard to determine whether a statement is binding for purposes of promissory estoppel than for purposes of breach of contract. While extrinsic evidence may be used to interpret an ambiguous statement in the breach of contract context, extrinsic evidence may not be used in the promissory estoppel context because "'if extrinsic evidence is needed to interpret a promise, then obviously the promise is not clear and unambiguous.'" *Garcia*, 183 Cal. App. 4th at 1045 (citation omitted).

The alleged statement about not being each other's bosses is not a clear and unambiguous promise to never fire Stine. As this Court previously explained, the alleged statement simply "appears to have been a conversation about titles, not a binding contract in any way." MTD Order 6:15-18. There is nothing in the alleged statement suggesting it has anything to do with the terms of Stine's employment with Implicit, much less a promise to employ Stine in perpetuity. The Amended Counterclaim's own allegations acknowledge that the alleged statement is unclear and ambiguous about Stine's rights with respect to his employment because Stine himself allegedly did not understand what the statement meant. The Amended Counterclaim alleges that Stine did not know that giving Lavallee the CEO title would allow Lavallee to fire Stine and that had Stine known, Stine "would have expressly reserved rights he

12

had at the time of Lavallee's representations, making sure that neither partner would have the ability to remove the other from Implicit without procedures in place." Amended Counterclaim ¶ 26. This acknowledgment is fatal to a claim for promissory estoppel. Because the Amended Counterclaim fails to plead a clear and unambiguous promise not to fire Stine, the promissory estoppel claim must be dismissed. *See Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 215 n.6 (2017) (noting that the demurrer to the promissory estoppel claim was properly sustained because the plaintiff "has not alleged a promise clear and unambiguous in its terms").

The promissory estoppel claim must also be dismissed because any purported reliance was not reasonable or foreseeable. "[A] party plaintiff's misguided belief or guileless action in relying on a statement on which no reasonable person would rely is not justifiable reliance . . . . If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, . . . he will be denied a recovery. [Citation.] A mere hopeful expectation [ ] cannot be equated with the necessary justifiable reliance." *Granadino*, 236 Cal. App. 4th at 418 (internal quotation marks omitted). Lavallee's "not your boss" statement was allegedly made in April 2022 – at least eight months prior to Implicit's incorporation in 2023 – in discussions regarding the titles Lavallee and Stine would hold upon Implicit's incorporation. Amended Counterclaim ¶ 9. Upon Implicit's incorporation, however, Stine executed a written agreement acknowledging that "except as may be otherwise explicitly provided in a separate written agreement between [Implicit] and me, my Relationship with [Implicit] is and shall continue to be at-will, as defined under applicable law, meaning that either I or [Implicit] may terminate the Relationship at any time for any reason or no reason." *See* Request for Judicial Notice, Ex. A at § 9. The Amended Counterclaim does not allege a separate written agreement between Implicit and Lavallee altering the at-will relationship. Thus, to the extent there was any reliance by Stine on Lavallee's alleged "not your boss" statement as a purported promise to never fire Stine, such reliance was manifestly unreasonable in light of the written agreement subsequently signed by Stine expressly providing otherwise. *See Granadino*, 236 Cal. App. 4th at 418 (finding that plaintiffs could not reasonably rely on defendant's alleged promise not to proceed

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

IMPLICIT AND LAVALLEE'S MOTION TO STRIKE AND DISMISS STINE'S FIRST AMENDED COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

with the foreclosure, where defendant informed plaintiffs orally and in writing one month after the alleged promise was made that the foreclosure was proceeding). The absence of reasonable reliance independently requires that the promissory estoppel claim be dismissed.

### 3. Counterclaim Five Fails To State A Claim For Waiting Time Penalties

Counterclaim Five purports to allege a claim for violation of sections 201 and 203 of the California Labor Code against Implicit and Lavallee. Waiting time penalties may only be recovered if the failure to pay was "willful." Cal. Lab. Code § 203(a). A failure to pay is willful if it is intentional. *See Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (1981). An individual can only be liable under section 203 if the person "causes" the violation. Cal. Labor Code § 558.1(a). Being an owner or an officer of a company is not sufficient to impose personal liability. Personal liability attaches only if "when acting on behalf of an employer, the [individual] has personal involvement in the enumerated violations in section 558.1; or, absent personal involvement, has sufficient participation in the activities of the employer—including, for example, over those responsible for the alleged wage and hour violations—such that the [individual] may be deemed to have contributed to, and thus have 'cause[d]' such violations." *Usher v. White*, 64 Cal. App. 5th 883, 886 (2021).

In granting the previous motion to dismiss, the Court held that "the counterclaim does not allege any facts that would give rise to personal liability for Lavallee." MTD Order 6:27-28. The Court noted that Stine's only support for personal liability is that "Lavallee was the 'outward-facing Chief Executive Officer,' *see* Stine Counter Compl. ¶ 9, and that Lavallee 'willfully failed to pay Stine all his earned wages upon termination for a total of 5 days,' *id.* ¶ 55." MTD Order 7:19-21. The Court explained that "[t]he former allegation is too vague to support the kind of personal liability Stine is trying to show, and the latter is conclusory." *Id.* 7:-21-22. The Amended Counterclaim does not remedy these pleading problems.

The Amended Counterclaim alleges on information and belief that "Lavallee made the sole decision to terminate Stine" and that "Implicit's only other employees who had access to payroll capabilities, Traver Stine and Bill Litshauer, reported to Stine that they had no prior

14
IMPLICIT AND LAVALLEE'S MOTION TO STRIKE AND DISMISS STINE'S FIRST AMENDED
COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

knowledge of Stine's termination." Amended Counterclaim ¶ 58. The Amended Counterclaim alleges that it was therefore "Lavallee's responsibility to ensure that Stine would be timely issued his final wages." *Id*. ¶ 59. The Amended Counterclaim also asserts that because "Lavallee communicated Stine's termination after Eastern Time business hours on a Friday . . . it was impossible for Stine to be timely paid his final wages due to Lavallee's actions as there was no way to get payment to him that same day without there being preparation ahead of time." *Id*. The Amended Counterclaim does not address the Court's finding that the willfulness allegation in the original counterclaim was conclusory. Instead of adding factual allegations to support the assertion that Implicit and Lavallee acted willfully, the Amended Counterclaim removes the allegation entirely and does not allege that the delay in payment was willful as required by the statute. *See id*. ¶ 60.

Stine has admitted that he seized control of Implicit's computer systems upon being terminated and even touted in the Amended Counterclaim that he blocked Lavallee's access that same day. *See* MTD Order 8:15-27; Amended Counterclaim ¶ 76. The Amended Counterclaim does not plausibly allege that the delay in payment was an intentional act by Implicit as opposed to having been caused by Stine's takeover of Implicit's computer systems. The removal of the willfulness allegation appears to be a recognition by Stine that he caused the delay, not Implicit or Lavallee. Because the Amended Counterclaim does not allege that the delay was willful, Counterclaim Five against Implicit must be dismissed. *See* Cal. Lab. Code § 203. Without an underlying violation of the Labor Code, the claim against Lavallee must also be dismissed. *See* Cal. Labor Code § 558.1(a).

### 4. Counterclaim Seven Fails To State A Claim For Defamation

The Amended Counterclaim's defamation claim is based on misleading omissions of key facts and conclusory assertions that contradict the Amended Counterclaim's factual allegations and admissions made by Stine before this Court. To state a claim for defamation, a complaint must allege "'(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.'" *John Doe 2 v. Sup. Ct.*, 1 Cal. App. 5th 1300, 1312 (2016) (citation omitted). "The defamatory statement must specifically refer to, or

be of and concerning, the plaintiff." *Id.* (citation and internal quotation marks omitted).

A communication between a person and a law enforcement agency is privileged unless "the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report." Cal. Civ. Code § 47(b)(5).[1] "The reckless disregard test is not a negligence test measured by [what] a reasonably prudent person would have [done]" but instead "must permit the conclusion that the defendant actually had a high degree of awareness of . . . probable falsity." *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 114 (2007) (citations and internal quotation marks omitted). The allegations must "permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Lack of due care is not the measure of liability, nor is gross or even extreme negligence." *Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71, 90 (2007) (citations and internal quotation marks omitted). "[T]he failure to investigate must fairly be characterized as demonstrating the speaker purposefully avoided the truth or deliberately decided not to acquire knowledge of facts that might confirm the probable falsity of charges." *McGarry*, 154 Cal. App. 4th at 114. Despite Stine's attempts to obscure escalating concerns about his behavior, the circumstances of his purported "medical crisis," and his erratic actions upon being termination from Implicit, the Amended Counterclaim's allegations reveal that Lavallee's request for a wellness check on Traver Stine was well-founded based on the information known to Lavallee and therefore not knowingly false or made with reckless disregard for the truth or falsity of the request. The alleged defamatory statement was therefore privileged, and the defamation claim must be dismissed.

The Amended Counterclaim alleges that on the evening of June 14, 2024, after Stine had been terminated and after Stine had breached Implicit's computer systems, disabled Lavallee's

---

[1] Prior to 2021, all communications with law enforcement agencies were privileged even if made with malice, *i.e.* with knowledge of falsity or with reckless disregard for the truth or falsity. The statute was amended in 2021 to qualify the privilege upon a showing of malice like a public figure must show to support a claim for defamation. *See, e.g.*, *Perez v. City of Los Angeles*, No. CV 22-8227 SVW (AS), 2024 WL 3086668, at *6 (C.D. Cal. May 14, 2024).

16

IMPLICIT AND LAVALLEE'S MOTION TO STRIKE AND DISMISS STINE'S FIRST AMENDED
COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

Case 3:24-cv-03744-WHO   Document 62   Filed 12/03/24   Page 20 of 24

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

access to Implicit's computer systems, and taken Implicit's systems offline, Lavallee "made statements to a 911 operator indicating that Stine may physically harm his wife." Amended Counterclaim ¶ 74. Lavallee allegedly "knew this statement was false, or made it with reckless disregard for the trust or falsity of the report." *Id*. Lavallee allegedly "only made the 911 call as a flex of power over Stine and Traver Stine because he was mad at Stine for blocking his computer access." *Id*. ¶ 76. Lavallee then allegedly informed certain female Implicit employees and a female vendor that he had requested a wellness check on Traver Stine "to make a sexist display of hostility against Traver Stine and damage Stine's reputation." *Id*. ¶ 77. Stine purportedly "believed that Lavallee was in the middle of a crisis due to his impulsive termination of Stine" and was purportedly "concerned that Lavallee had concocted a wild tale to law enforcement in order to further harass him and his wife at their home." *Id*. ¶ 80. The conclusory allegations regarding Lavallee's state of mind and intentions are directly contradicted by the Amended Counterclaim's other allegations and the admissions made by Stine before this Court.

The Amended Counterclaim repeatedly refers to Stine's purported "medical crisis" but evasively attempts to hide what actually happened and describes it only as "stemm[ing] from Stine and Lavallee having a communication breakdown." Amended Counterclaim ¶ 15. But the Amended Counterclaim alleges that Lavallee was aware of Stine's "medical crisis" because he sent Traver Stine an email the following week stating, "'Jake has always been writing stuff like that on Slack (self harm, harm to others), in my private messages and I've learned to ignore it; I shouldn't have.'" *Id*. ¶ 16. The "medical crisis" thus involved either self-harm or harm to others – threats regularly made by Stine that Lavallee had previously ignored but now realized he should not have because the threats had materialized into actions so severe that they required medical attention and an extended leave of absence from Implicit. Traver Stine's Amended Counterclaim alleges that these messages had been sent "months" ago as purported evidence that Lavallee could not have believed that Traver Stine was in danger. *See* Dkt. 56 ("Traver Stine Amended Counterclaim") ¶ 16. But the Amended Counterclaim does not allege that Traver Stine corrected Lavallee's assertion Stine had "always" made threats of harm to himself and others or that Lavallee needed to take Stine's threats seriously in light of Stine's acting out

Grellas Shah LLP
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA 95014

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

on his previous threats. Instead, to support its contention that Implicit should not have taken any actions against Stine given his precarious mental state, Stine's Amended Counterclaim cites Lavallee's email as ***evidence that Lavallee was aware of Stine's ongoing "medical crisis," i.e. that Lavallee was aware that Stine had requested to remain on leave from Implicit due to the on-going risk that Stine could again harm himself or others***. *See* Amended Counterclaim ¶ 16.

The Amended Counterclaim alleges that Stine's actions that resulted in the "medical crisis" were triggered by a "communication breakdown" between Stine and Lavallee. *Id*. ¶ 15. The Amended Counterclaim further alleges that "on May 28, 2024, while Stine was still out on medical leave, Lavallee sent Stine a letter requesting that Stine resign from Implicit by May 31, 2024." *Id*. ¶ 17. Because Stine declined to resign, Implicit terminated Stine on June 14, 2024. *Id*. ¶ 18. Stine's termination was not "impulsive," as the Amended Counterclaim asserts, but rather the natural outcome given Stine's refusal to resign. Apparently triggered by notice of his termination, Stine immediately engaged in extreme and erratic behavior. Immediately after being notified of his termination, Stine committed computer fraud by breaching Implicit's computer systems using the credentials of another Implicit employee (his wife, Traver Stine), locking out Lavallee, sending an email to all Implicit employees touting his takeover of Implicit and its computer systems, and taking Implicit's computer systems offline. *See* Amended Counterclaim 4:3-12, 4:19-22,[2] ¶ 76.

Lavallee knew Traver Stine's credentials had been used, but he did not know whether Traver Stine had willingly joined her husband in committing computer fraud against her employer or whether the news of his termination had triggered Stine to act violently again and do something to Traver Stine to obtain her credentials to exact revenge on Implicit and Lavallee. Because Lavallee had not expected Traver Stine to voluntarily commit crimes against Implicit, he feared for her well-being.

The assertion that Lavallee informed the female employees of Implicit and a female vendor about his request for a wellness check on Traver Stine as "a sexist display of hostility

---

[2] These page and line references are to the answer portion of the Amended Counterclaim where Stine admits to certain allegations in Implicit's complaint.

18

against Traver Stine and [to] damage Stine's reputation" (*id*. ¶ 77) is highly misleading and completely baseless. The Amended Counterclaim misleadingly suggests that Lavallee sent a targeted email just to female employees and a female vendor just to inform them that he had requested a wellness check on Traver Stine. *See id*. But the email Lavallee sent was to ***Stine*** asking Stine to restore Lavallee's access and to remove himself from Implicit's computer systems before Stine committed any further computer fraud. Lavallee mentioned his request for a wellness check at the end of the email. *See* RJN, Ex. B. Lavallee copied numerous people on the email who were assisting with Stine's offboarding process and were trying to address Stine's breach of Implicit's computer systems: "Noah" from the law firm Premack Rogers, Implicit's outside counsel; Bill Litshauer, Implicit's Chief Operating Officer; "Mouse" (Sarah), who was managing Implicit's internal and external communications; "Sylvia," the "female external vendor" who was helping Lavallee with access to Implicit's finances; and Traver Stine. He blind copied "Sadie," a female employee who was concerned about Traver Stine and asked Lavallee about Traver Stine's well-being. *See id.* None of these people had heard from Traver Stine since Stine began his takeover of Implicit's computer systems using Traver Stine's credentials. There was nothing remotely suspicious about the email. Stine knew who all these people were and why Lavallee copied them on the email. The Amended Counterclaim is only able to suggest otherwise by omitting the true nature of the email and to whom it was sent.

The Amended Counterclaim's factual allegations indicate that Lavallee's action was based on his knowledge of Stine's recent violent behavior that Stine had "always" threatened in the past, the on-going concerns about Stine that were the purported basis of his continued leave from Implicit, and the extreme and illegal acts of retaliation committed by Stine upon learning of his termination that required Traver Stine to be either an active, willing accomplice to the illegal activity or a victim unable to prevent her volatile husband from engaging in serious crimes that implicated her in the process. Lavallee's request to the police for a wellness check on Traver Stine was not knowingly false or made with reckless disregard for the truth or falsity of his alleged concern. *See Christian Research Inst.*, 148 Cal. App. 4th at 85-93 (finding that false statement was not made with actual malice, *i.e.* reckless disregarding for truth or falsity, where

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

IMPLICIT AND LAVALLEE'S MOTION TO STRIKE AND DISMISS STINE'S FIRST AMENDED
COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

basis of defendant's statement was not fabricated and purported evidence of actual knowledge of falsity was merely speculative).  The Amended Counterclaim's factual allegations do not support a plausible inference otherwise.  Lavallee's alleged actions were therefore privileged, which requires that the defamation claim be dismissed.  *See* Cal. Civ. Code § 47(b)(5); *John Doe 2*, 1 Cal. App. 5th at 1312.

## VI. **CONCLUSION**

Based on the foregoing, Implicit and Lavallee respectfully request that the Court strike Counterclaim Seven; dismiss Counterclaims One, Five and Seven with prejudice; and award Lavallee his attorneys' fees and costs.

Respectfully submitted,

Dated: December 3, 2024                    GRELLAS SHAH LLP

By:   /s/ *Dhaivat H. Shah*
            Dhaivat H. Shah, Esq.
            Attorneys for Counterdefendants
            IMPLICIT CONVERSIONS, INC. and ROBIN
            LAVALLEE

IMPLICIT AND LAVALLEE'S MOTION TO STRIKE AND DISMISS STINE'S FIRST AMENDED COUNTERCLAIM – Case No. 3:24-cv-03744-WHO