Jackie M. Ford, Esq. (SBN: 272641)
*jford@structurelaw.com*
Karen F. Rothschild, Esq. (SBN: 346949)
*krothschild@structurelaw.com*
Christopher E. Williams, Esq. (SBN: 330713)
*cwilliams@structurelaw.com*
STRUCTURE LAW GROUP, LLP
1754 Technology Drive, Suite 135
San Jose, California 95110
Telephone: (408) 441-7500
Facsimile: (408) 441-7501

Attorneys for Defendants and Counterclaimants
JACOB STINE and JUANITA TRAVER STINE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPLICIT CONVERSIONS, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JACOB STINE, an individual, JUANITA TRAVER STINE, an individual, SAYED MAHMOOD ALAWI, an individual, and DOES 1-10, inclusive,<br><br>Defendants.<br><hr>JACOB STINE, an individual; and JUANITA TRAVER STINE, an individual,<br><br>Counterclaimants,<br><br>v.<br><br>IMPLICIT CONVERSIONS, INC., a Delaware Corporation; and ROBIN LAVALLEE, an individual,<br><br>Counterdefendants. | Case No. 3:24-cv-03744-WHO<br><br>**JACOB STINE'S OPPOSITION TO IMPLICIT CONVERSIONS, INC. AND ROBIN LAVALLEE'S MOTION TO STRIKE UNDER CAL. CODE CIV. PROC. § 425.16 AND DISMISS UNDER FED. R. CIV. PROC. 12(b) THE FIRST AMENDED COUNTERCLAIM OF JACOB STINE**<br><br>Date:     January 15, 2025<br>Time:     2:00 p.m.<br>Judge:    Hon. William H. Orrick |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.    STATEMENT OF ISSUES ......................................................................................1

III.   RELEVANT FACTUAL ALLEGATIONS ..............................................................1

IV.   ARGUMENT...........................................................................................................3

      A.   The Court Should Deny Lavallee's Motion to Strike As There is No Applicable Privilege.....................................................................................................................3

           i.     Legal Standard On a Special Motion To Strike Pursuant To Code of Civil Procedure § 425.16........................................................................................3

           ii.    Lavallee Fails to Demonstrate the First Prong of the Two-Step Inquiry Because He Cannot Make a Threshold Showing That the Challenged Cause of Action is One Arising From Protected Activity .......................................................4

           iii.   Stine Satisfies the Second Prong of the Test as the Amended Counterclaim Sufficiently Establishes a Probability on Prevailing as to the Defamation Cause of Action ............................................................................................................8

      B.   Stine Has Adequately Pleaded Counterclaims One, Five, and Seven Such That the Court Should Not Dismiss the Claims ...........................................................................10

           i.     Legal Standard.....................................................................................10

           ii.    Counterclaim One Adequately States a Claim for Promissory Estoppel as the Promise to be Equals Within Implicit was Clear and Unambiguous and Stine Reasonably Relied on that Promise When Allowing Lavallee to Take the Role as CEO.........................................................................................................11

           iii.   Counterclaim Five Adequately States a Claim for Waiting Time Penalties Against Lavallee as Lavallee Unilaterally Fired Stine and then Swiftly Revoked the Payroll (duties/abilities) of Implicit's Payroll Administrator, then Failed to Initiate the Payment to Stine, Leaving Stine without Pay ..................................13

           iv.   Counterclaim Seven Adequately States a Claim for Defamation as Lavallee Made an Unprivileged Statement to a Law Enforcement Agency ......15

JACOB STINE'S OPPOSITION TO IMPLICIT CONVERSIONS, INC. AND ROBIN LAVALLEE'S MOTION TO STRIKE AND DISMISS THE FIRST AMENDED COUNTERCLAIM OF JACOB STINE
CASE NO. 3:24-CV-03744-WHO

C.    Implicit's Request for Judicial Notice Fails as the Authenticity of the CIIAA is in Dispute ........................................................................................................................... 17

V.        CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568 ........................................................4

*A–C Co. v. Security Pacific Nat. Bank* (1985) 173 Cal.App.3d 462 ...............................................11

*Ashcroft v. Iqbal* (2009) 556 U.S. 662 ..........................................................................................10

*Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544 ..........................................................................10

*Branch v. Tunnell* (9th Cir. 1994) 14 F.3d 449 ...............................................................................10

*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1 ......................................11

*Condit v. National Enquirer, Inc.* (E.D. Cal. 2002) 248 F.Supp.2d 945 ....................................8, 15

*Davis v. HSBC Bank Nevada, N.A.* (9th Cir. 2012) 691 F.3d 1152 ................................................17

*Davis v. Morris* (1940) 37 Cal.App.2d 269......................................................................................14

*Galbraith v. County of Santa Clara* (9th Cir. 2002) 307 F.3d 1119 ..............................................10

*Harris v. County of Orange* (9th Cir. 2012) 682 F.3d 1126.............................................................11

*Herring Networks, Inc. v. Maddow* (9th Cir. 2021) 8 F.4th 1148 ................................................3, 4

*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728 .............................................................4

*John Doe 2 v. Superior Court* (2016) 1 Cal.App.5th 1300. ..........................................................8, 15

*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305 ....................................................................................................................................11

*Laks v. Coast Federal Savings & Loan Assn.* (1976) 60 Cal.App.3d 885 ......................................11

*Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696 ...........................................................................5

*May v. New York Motion Picture Corporation*, 45 Cal.App. 396....................................................14

*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97.................................................7, 16

*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 ......................................................................4, 5, 8, 10

*Rescuecom Corp. v. Google Inc.* (2009) 562 F.3d 123 ...............................................................10, 15

*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887 ..............................................11

*Usher v. White* (2021) 64 Cal.App.5th 883 .....................................................................................14

*Van Buskirk v. Cable News Network, Inc.* (9th Cir. 2002) 284 F.3d 977.......................................17

//

**Statutes**

California Civil Code § 47 ...................................................................................................6, 15

Code of Civil Procedure § 425.16 .............................................................................................3

Federal Rules of Civil Procedure, Rule 12 ...............................................................................14

Labor Code § 201 .....................................................................................................................15

Labor Code § 203 .....................................................................................................................14

Labor Code § 558.1 ..................................................................................................................14

**Other Authorities**

2019 California Assembly Bill No. 1775, California 2019-2020. ..................................................7

CA LEGIS 327 (2020), 2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775)............................6, 7, 16, 17

## I.    INTRODUCTION

Counterclaimant Jacob Stine ("Stine") hereby opposes Counterdefendants Implicit Conversions, Inc. and Robin Lavallee's ("Counterdefendants") Motion to Strike Under Cal. Code Civ. Proc. § 425.16 and Dismiss Under Fed. R. Civ. Proc. 12(B) the First Amended Counterclaim of Jacob Stine.

## II.    STATEMENT OF ISSUES

1. Has Stine demonstrated that the false or reckless 911 "wellness check" Lavallee made was not protected speech, such that Lavallee's asserted anti-SLAPP fails to shift the burden onto Stine?

2. In the alternative if Lavallee's false or reckless "wellness check" was to be found to be protected speech, has Stine met his burden to establish probability to support his claim for defamation?

3. Has Stine demonstrated a plausibility of success on the merits to demonstrate a claim for promissory estoppel regarding the clear and unambiguous statement that Stine and Lavallee would be equals within Implicit?

4. Has Stine demonstrated a plausibility of success on the merits that Lavallee has personal involvement in the failure to timely pay Stine his final wages, considering Lavallee was one of three people with payroll access and unilaterally fired Stine without informing the other employees with payroll access?

5. Has Stine demonstrated a plausibility of success on the merits with respect to his defamation claim, when Lavallee touted the fact that he had called 911 on the Stines to select Implicit employees, including the female employees?

## III.    RELEVANT FACTUAL ALLEGATIONS

By now the court is familiar with the factual allegations of this lawsuit. In summary, Stine and Lavallee, as co-founders of Implicit, "agreed that Lavallee would serve as the outward-facing Chief Executive Officer as he was driving more of the administration side and his strong suits better suited him for the role as the public face of the company, while Stine would serve as the outward-facing Chief Technology Officer. Lavallee told Stine on or about April 28, 2022: "I am

- 1 -

not your boss.  are not my boss. It just gives better responsibility for the people that we hire. They know who to look up to when they have questions, and that also means that you get to decide for tech questions. So let me know if that works or if that is a deal breaker." Stine agreed to this arrangement." (Amended Counterclaim, ¶ 9.)  Stine agreed to have Lavallee listed as the company's CEO with the agreement that the two would be equal, and as Stine understood it, his role was secure and he was not at risk of Lavallee abusing the title of "CEO" to terminate Stine and usurp the company for his own personal benefits. See *Id.* Stine and Lavallee operated the company this way, as equals, for many months, until Lavallee and Stine began having interpersonal issues. See *Id.* at ¶¶ 14, 15. These interpersonal issues led to Lavallee demanding that Stine resign from Implicit in a letter. *Id.* at ¶ 17. Counsel for Stine acknowledged receipt of a letter to Lavallee and let him know a formal response was coming. *Id.* at ¶ 18. However, before Implicit's counsel was able to speak with Stine's counsel, Lavallee terminated Stine's employment. *Id.*

Lavallee terminated Stine Eastern Business hours on a Friday, Lavallee then elected not to initiate the payroll to Stine, as Lavallee was the only one who had access to Implicit's payroll that had forewarning about Stine's termination. *Id.* at ¶ 59. Stine received his final wages on June 19, 2024. *Id.* at ¶ 19.

After Stine's termination and revocation of his Google Admin account access, Stine restored his own access then disabled the admin rights of Lavallee as a temporary precautionary measure out of concern for Implicit's future. See *Id.* at ¶ 80.

On the evening of Stine's termination, Lavallee called law enforcement to the Stines' home indicating that Stine may harm his wife. *Id.* at ¶ 74. Lavallee, who had not spoken to Stine in over a month, made this call after Stine removed Lavallee's access to the Google Admin account. See *Id.* Lavallee  retaliated against Stine and his wife for an action that made him mad, having his Google Admin access removed, by unlawfully alleging Stine was a perpetrator of intimate partner violence. Lavallee's unfounded 911 call, which brought up messages sent months before, led to a late night police encounter at the Stine's home. *Id.* at ¶ 78.

Further demonstrating the frivolous nature of the call and the intent to harass and

embarrass the Stines, Lavallee needlessly touted the fact that he had called 911 to the Stines' home in an email to several Implicit employees, notably including the female employees and a female outside vendor. *Id.* at ¶ 77.

## IV.   ARGUMENT

### A. The Court Should Deny Lavallee's Motion To Strike as There Is No Applicable Privilege

#### i. Legal Standard on a Special Motion to Strike Pursuant to Code of Civil Procedure § 425.16

A special motion to strike pursuant to Code of Civil Procedure § 425.16 or an anti-SLAPP motion, was enacted as a response to an increase of lawsuits brought "to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," and to protect those rights from the abuse of the judicial process. (*See* Code Civ. Proc., § 425.16(a).) Pursuant to subdivision (b)(1) of section 425.16 of the Code of Civil Procedure:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a **probability** that the plaintiff will prevail on the claim.

(Code Civ. Proc., § 425.16(b)(1).) (emphasis added.)

The anti-SLAPP statute set forth guidance for what constitutes "act[s] in furtherance of a person's right of petition of free speech" which includes:

> (1)   statements made before a legislative, executive, judicial or any other proceeding authorized by law;
> (2)   statements made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or other official proceeding;
> (3)   a statement made in public in connection with an issue of public interest; or
> (4)   other conduct in furtherance of the exercise of the constitutional right to petition or of free speech in connection with an issue of public interest.

(Code Civ. Proc., § 425.16(e).)

Whether an anti-SLAPP motion is appropriate depends upon a two-step inquiry (See *Herring Networks, Inc. v. Maddow* (9th Cir. 2021) 8 F.4th 1148, 1155.). In *Navellier v. Sletten* (2002) 29 Cal.4th 82, the California Supreme Court provides guidance on this two-step process:

> First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. A defendant meets this burden by demonstrating that the act underlying the

- 3 -

plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e). If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim.

(*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) (internal citations omitted.) In order to establish a probability of prevailing on the claim, a plaintiff must show the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment of the evidence submitted by the plaintiff is credited. (Id. at 88-89; see also *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 740–741 ["holding that the Legislature's detailed anti-SLAPP scheme ensures that claims with the requisite minimal merit may proceed."].) Only a cause of action that satisfies both prongs is subject to be stricken down by the anti-SLAPP statute. (*Navellier, supra,* 29 Cal.4th at 89.)

Furthermore, California courts recognize that the court need not weigh the credibility or persuasiveness of the evidence, instead the defendant's evidence is considered with a view toward whether it defeats the plaintiff's showing as a matter of law, such as by establishing a defense or the absence of a necessary element. (See *1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585.)

As outlined below, Stine clearly meets this burden. Based on the facts contained in Stine's first amended counterclaim, Stine submits that Lavallee cannot meet his burden under the anti-SLAPP statute whereas Stine satisfies his burden as to the defamation cause of action.

### ii. Lavallee Fails to Demonstrate the First Prong of the Two-Step Inquiry Because He Cannot Make a Threshold Showing That the Challenged Cause of Action is One Arising From Protected Activity

As stated above, there is a two-step inquiry in determining the appropriateness of an anti-SLAPP motion. (See *Herring Networks, Inc., supra*, 8 F.4th at 1155.) The first step is that the Defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (As recognized by the California Supreme Court in *Navellier*:

> the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. Moreover, that a cause of action arguably may have been "triggered" by protected activity does not entail it is one arising from such. In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.

- 4 -

(*Navellier, supra*, 29 Cal.4th at 88.) (internal citations omitted.) "In deciding whether the initial "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based. (*Id.*)

Lavallee's moving papers, in conclusory fashion, simply alleges that Stine's defamation cause of action arises is subject to an anti-SLAPP motion since the "amended counterclaim describes Lavallee's purported acts of defamation as statements to law enforcement and alleges that law enforcement visited Stine's home in response to Lavallee's expressed concerns. (Counter-defendants' motion to strike and motion to dismiss ("Moving Papers") p. 10:17-23.) On this basis, Lavallee contends he satisfies the first prong outlined in Code of Civil Procedure section 425.16.

The California Court of Appeal held the anti-SLAPP statute is not implicated, and cannot be invoked by a defendant, unless the defendant's conduct underpinning a plaintiff's cause of action involved an act in furtherance of the defendant's "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (*Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 703.) The court noted that defendant's act of making a false police report was not an act in furtherance of her constitutional right of petition or free speech, thus, the anti-SLAPP statute "never came into play." (Id. at 703.) The court further held:

> Neither the federal nor the state constitutional right of petition or free speech encompass a right to file a false crime report. Indeed, if the right of petition or free speech encompasses a right to file a false criminal report, then laws criminalizing such reports would be inherently unconstitutional.

(*Id.*)

Furthermore, the amended counterclaim alleges that separate and apart from Lavallee's false reporting to law enforcement, Lavallee gloated about the fact that he had called 911 on Stine. This sufficiently alleges that there is evidence of an ulterior motivation for Lavallee's actions.

As alleged in paragraph 77 of the amended counterclaim:

> That the 911 call was not motivated out of any legitimate concern for the

- 5 -

> Stines' safety is further demonstrated by the fact that promptly after making the call, Lavallee sent an email to the female employees of Implicit and included a female external vendor informing them he had called 911 to perform a wellness check on Traver Stine at the Stines' home. There was absolutely no reason to do this; Lavalee's intention was to make a sexist display of hostility against Traver Stine and damage Stine's reputation.

(Amended counterclaim, ¶77.)

With the relatively new enactment of California Civil Code § 47(b)(5) as of January 1, 2021, a false or reckless report to law enforcement is decidedly not an act in furtherance of free speech:

> This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report.

(Civ. Code, § 47(b)(5).)

As articulated in the Legislative reports leading up to the enactment of the new subdivision, the rationale behind Assembly Bill 1775 was to end instances of 911 emergency system calls that are aimed at violating the rights of individuals based upon race, religion, sex, gender expression, or any other protected class. (CA LEGIS 327 (2020), 2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775).) The Legislative reports further note existing law on false police reporting does not address the growing number of cases in which peace officers are summoned to violate the rights of individuals. (Id.) Additionally, the Legislative report states: "[T]his act will allow those who have been subject to unfair and prejudicial 911 emergency system calls to regain their agency by seeking justice and restitution through the criminal and civil court system." (Id.) (emphasis added.)

Lavelle's anti-SLAPP motion as to Stine's cause of action for defamation fails because Stine has sufficiently pled sufficient facts establishing the plausibility of Lavelle's false or reckless reporting of a crime against Stine. As correctly pointed out in counter-defendants' moving papers, the reckless disregard standard simply requires a showing that defendant actually had a "high degree of awareness of ... probable falsity." (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 114.)

Stine's amended counterclaim states on the evening of Stine's termination, Lavallee called

- 6 -

the police to the Stine's home indicating that Stine may harm his wife. (Amended Counterclaim, ¶74.) The amended counterclaim further states Lavallee, who had not spoken to Stine in over a month, made this call after Stine removed Lavallee's access to the Google Admin account. (See Id.) To this end, the amended counterclaim pleads Lavallee retaliated against Stine and Traver Stine out of anger, having his Google Admin access removed, by unlawfully alleging Stine is a perpetrator of intimate partner violence.

Further demonstrating the frivolous nature of the call and the intent to harass and embarrass the Stines, Lavallee needlessly included this information about making the 911 call in an email to several Implicit employees, including several female employees and a female outside vendor. (Id. at ¶77.) Taken together and accepting the factual allegations as true, the amended counterclaim sufficiently state facts establishing that Lavelle contacted law enforcement with reckless disregard for the truth or falsity of the report. Lavelle's conduct specifically falls squarely in line with the conduct that Assembly Bill 1775 seeks to prevent. As recognized by the California Legislature, "All Californians . . . should have the liberty to live their lives, and to go about their business, without living under the threat or fear of being confronted by police. (CA LEGIS 327 (2020), 2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775).)

As noted by author of Assembly Bill 1775, Assembly Bill 1775 is important to prevent individuals from using emergency services as their "personal concierge" to harass others. (2019 California Assembly Bill No. 1775, California 2019-2020 Regular Session.) Stine's amended counterclaim alleges that Lavelle contacted law enforcement in response to having his Google Admin access removed. Thus, Lavelle's contact of law enforcement was retaliatory conduct for the sole purpose of harassing Stine. Thus, it is clear the Legislature sought to give victims of false police reporting, such as Stine, relief through the court system.

Lavallee somehow equates the fact that Stine locked Lavallee out of the Google Admin account with the fact that Stine was at risk of harming his wife.  He uses this to try to persuade this court that he was in the right about his phone call.  There are allegations made without any support – specifically the implication that Stine had ever hurt others (which is categorically denied) or that "Traver Stine herself had gone completely radio silent" (Motion at 4:16-17.)

- 7 -

While that is Lavallee's contention, there is another side of the story. Stine and his wife felt that Lavallee used law enforcement as his personal concierge to harass them and then gloat about it. This issue is not appropriate for disposal on an anti-SLAPP basis.

### iii. Stine Satisfies the Second Prong of the Test as the Amended Counterclaim Sufficiently Establishes a Probability on Prevailing As to the Defamation Cause of Action

Assuming the second prong of the test is reached, a plaintiff may defeat an anti-SLAPP motion by establishing a probability of prevailing on the claim. (*Navellier*, *supra*, 29 Cal.4th at 95.) To state a claim for defamation, a complaint must allege "'(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.'" (*John Doe 2 v. Superior Court* (2016) 1 Cal.App.5th 1300, 1312.) "It is error for a court to rule that a publication cannot be defamatory on its face when by any reasonable interpretation the language is susceptible of a defamatory meaning."(*Condit v. National Enquirer, Inc.* (E.D. Cal. 2002) 248 F.Supp.2d 945, 964.)

The facts supporting Stine's defamation cause of action are as follows:

73. Stine realleges and incorporates herein by reference all preceding paragraphs of this Counterclaim as though fully set forth herein.

74. On June 14, 2024, Lavallee made statements to a 911 operator indicating that Stine may physically harm his wife. Lavallee knew this statement was false, or made it with reckless disregard for the trust or falsity of the report. In reality, Lavallee and Stine had not conversed in over a month.

75. The law enforcement personnel reasonably understood Lavallee's statements to be true. This was highly offensive to both Stine as an alleged abuser, and Traver Stine as an alleged victim. The Stines do not have a history of domestic abuse.

76. Lavallee did not believe the statements he made to law enforcement, particularly that there was concern for Traver Stine's safety, were true. He only made the 911 call as a flex of power over Stine and Traver Stine because he was mad at Stine for blocking his computer access.

77. That the 911 call was not motivated out of any legitimate concern for the Stines' safety is further demonstrated by the fact that promptly after making the call, Lavallee sent an email to

- 8 -

the female employees of Implicit and included a female external vendor informing them he had called 911 to perform a wellness check on Traver Stine at the Stines' home. There was absolutely no reason to do this; Lavalee's intention was to make a sexist display of hostility against Traver Stine and damage Stine's reputation.

78. Law enforcement visited the Stines' home at around 10:30pm on June 14, 2024.

79. Knowing that in the video game community there is a phenomenon called "SWATTING" which involves making false reports to police so that the SWAT team shows up to an unsuspecting victim's home, this was terrifying and traumatic to Stine.

80. At this point in time, Stine believed that Lavallee was in the middle of a crisis due to his impulsive termination of Stine and Stine was concerned about protecting Implicit's future. Stine was concerned that Lavallee had concocted a wild tale to law enforcement in order to further harass him and his wife at their home.

81. As a result of Lavallee's actions, Stine has suffered damages in an amount to be proven at trial.

82. Lavallee's actions were committed with oppression, fraud or malice such that an award of punitive damages is appropriate.

(Amended Counterclaim, pp. 24:15-25:20.)

Accepting the allegations as true at the pleading stages, the amended counterclaim establishes that Lavallee sent a publication, in this matter a call to law enforcement, indicating that Stine may physically harm his wife. The amended counterclaim further alleges that Lavallee knew this statement was false or made with reckless disregard for the truth or falsity of the report as Lavallee and Stine had not conversed in over a month and because the Stines have no history of domestic abuse. This call to law enforcement, as alleged in the amended counterclaim, was not out of concern for the well-being of Traver Stine but as a retaliatory act after his Google Admin access removed.

Furthermore, the amended counterclaim alleges that Lavallee's email promptly after making the call to law enforcement to the female employees of Implicit and included a female external vendor informing them he had called 911 to perform a wellness check on Traver Stine

- 9 -

at the Stines' home, further evidences that the call to law enforcement was not about a wellness check on Traver Stine at all and was falsely made out of anger. As acknowledged by this court "It is not obvious why Lavallee would decide to inform other members of the company team that he made such a call." (Order, at 10:14-15.)  The fact that this email was sent certainly makes it probable  that As a result of those communications, Stine was damaged.

Thus, the amended counterclaim pleads all the elements of a defamation cause of action and establishes a probability that Stine would prevail on his defamation cause of action. (See *Navellier, supra*, 29 Cal.4th at 95.) Based on the foregoing, Stine respectfully requests that this Court denies counter-defendants' anti-SLAPP motion as to the defamation cause of action.

**B. Stine Has Adequately Pleaded Counterclaims One, Five, and Seven Such That the Court Should Not Dismiss the Claims**

**i.  Legal Standard**

A federal complaint requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must allege sufficient facts to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). However, a "heightened fact pleadings of specifics" is not required and a mere statement of facts adequate to "raise a right to relief above the speculative level" is sufficient. Twombly, 550 U.S. at 550.

When ruling on a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2009). Generally, only material in the pleadings may be considered when ruling on a Rule 12(b)(6) motion. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (overruled on other grounds, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Although, matters subject to judicial notice may also be considered in ruling on a motion to dismiss. See *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

//

### ii. Counterclaim One Adequately States a Claim for Promissory Estoppel as the Promise to be Equals Within Implicit was Clear and Unambiguous and Stine Reasonably Relied on that Promise When Allowing Lavallee to Take the Role as CEO

"California has adopted the Restatement's view on promissory estoppel claims. (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310, (Kajima ).) The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3)[the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.' (*Laks v. Coast Federal Savings & Loan Assn.* (1976) 60 Cal.App.3d 885, 890.)" ((*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901.)

"Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' [Citation.]" (*Kajima, supra*, 23 Cal.4th at p. 310.) Because promissory estoppel is an equitable doctrine to allow enforcement of a promise that would otherwise be unenforceable, courts are given wide discretion in its application. (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 7–8; see also *A–C Co. v. Security Pacific Nat. Bank* (1985) 173 Cal.App.3d 462, 472, ["Promissory estoppel has been characterized as a 'peculiarly equitable doctrine designed to deal with situations which, in total impact, necessarily call into play discretionary powers' "].)" (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901-902.)

As for the first element, that a promise be clear and unambiguous in its terms, the facts alleged do show that the promise was clear and unambiguous to both Lavallee and Stine. "Lavallee told Stine on or about April 28, 2022: 'I am not your boss. You are not my boss. It just gives better responsibility for the people that we hire. They know who to look up to when they have questions, and that also means that you get to decide for tech questions. So let me know if that works or if that is a deal breaker." (Amended Counterclaim 9.) The two would continue to remain 50/50 partners in the company. (Amended Counterclaim 23.) Prior to that time, both had used the title 'managing member' and the two made decisions about the company

- 11 -

jointly." (Amended CC, 23.) This forms the basis of Stine's claim for promissory estoppel. Lavallee's statements must be placed within the context of the history of Stine and Lavallee's relationship. In the context of Stine and Lavallee having a history of being 50/50 partners and making decisions about the company they cofounded together, meant that nothing would effectively change between the two men. Lavallee's words, that he would not be Stine's "boss," and that "[i]t just gives better responsibility for the people that we hire," communicates that Lavallee does not have authority over Stine, because the title CEO would allow Lavallee to have better responsibility over new hires. It is also clear that Lavallee knew exactly what he was promising Stine by his inclusion of the phrase "deal breaker." While Stine acknowledges and respects this court's decision that this phrase does not make a binding contract, the facts alleged are sufficient to indicate there was a clear understanding between Lavallee and Stine that the management of the business would continue on as it had – with the two co-founders being 50/50 with respect to the Implicit.

Stine does not allege that this court should look at "extrinsic evidence" to determine the meaning of an ambiguous phrase. To the contrary, Stine alleges that both of them knew exactly what Lavallee meant when he said they would not be each other's bosses. Lavallee knew exactly what the statement meant – and so did Stine. Why else would Lavallee ask Stine if it was a "deal breaker" and represent that it would be helpful for new hires going forward? What Stine did not know, in that moment, is that Lavallee would later renege on this promise. Firing Stine necessarily meant that CEO title did not "just give[] better responsibility for the people that we hire" as Lavallee stated on April 28, 2022.

The second element of promissory estoppel, which requires reliance by the party to whom the promise is made, it met by Stine's allegations that he would have done things differently had he known "that letting Lavallee use the CEO title would give Lavallee the ability to fire Stine and effectively remove him from Implicit." Specifically, he "would not have agreed to this arrangement. Stine would have expressly reserved rights he had at the time of Lavallee's representations, making sure that neither partner would have the ability to remove the other without procedures in place." (Amended CC, 26.) Because of the specific language that

- 12 -

Lavallee used, there was no reason for Stine to reserve any rights.

As for the third element, that such reliance is reasonable and foreseeable, it is certainly reasonable and foreseeable that Stine would rely on Lavallee's statements. Stine would have no reason to continue doing business with Lavallee if he knew he would renege on his promise to remain 50/50 in the company he founded. In support of the argument against this point, Lavallee asks the court to take Judicial Notice of a contract Stine allegedly signed. Judicial Notice is improper here, for the reasons stated in Section IV.C. below. However, even if not improper, the language Lavallee points to, that "my Relationship with [Implicit] is and shall continue to be at-will . . ." emphasizes Stine's position that assuming the CIIAA was in fact signed by Stine (the document has no indication of its authenticity as it just contains a typed signature on it), as he could allege in a further amended counterclaim, that there were documents Stine felt Lavallee pressured him to just "click" through at times because they were needed for corporate formalities. Stine can allege that he told Lavallee the process of signing documents through the Stripe Atlas was overwhelming and that never highlighted for him that to the extent any documents were purportedly signed by him, which is not conceded.

> ### iii. Counterclaim Five Adequately States a Claim for Waiting Time Penalties Against Lavallee as Lavallee Unilaterally Fired Stine and then Swiftly Revoked the Payroll (duties/abilities) of Implicit's Payroll Administrator, then Failed to Initiate the Payment to Stine, Leaving Stine without Pay

The additional facts alleged in Stine's Amended Counterclaim demonstrate that the actions taken by Lavallee were "willful" – namely that (a) Lavallee made the sole decision to terminate Stine and (b) the other employees with access to payroll told Stine that they did not know about his termination before it happened, and (c) at the time of the termination, it would have impossible to have wages issued to Stine in a timely manner. (Amended Counterclaim at 58, 59.) While the moving papers' position that there is a failure to allege such conduct is willful, these allegations indicate otherwise.

"The definition of "willful" for purposes of Labor Code section 203 does not mean that the refusal to pay wages must necessarily be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due, in order to subject him to the penalty. . .

" 'In civil cases, the word "willful," as ordinarily used in courts of law, does not necessarily imply anything blamable, or any malice or wrong toward the other party, or perverseness or moral delinquency, but merely that the thing done or omitted to be done was done or omitted intentionally. It amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent.' (*Davis v. Morris* (1940) 37 Cal.App.2d 269, 274, quoting *May v. New York Motion Picture Corporation*, 45 Cal.App. 396, 404.)   The California Division of Labor Standards Enforcement Policies and Interpretations Manual further provides that "The civil penalty assessed under Labor Code § 203 does not require that the employer intended the action; merely that the action occurred and it was within the employer's control." (See section 4.2.2.1 at https://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf.)

Because Lavallee made the sole decision to terminate Stine, and did not report that information ahead of time to the other employees with payroll access, the failure to pay Stine his final wages was a willful act committed by Lavallee on Implicit's behalf.

Lavallee's conduct also demonstrates that he had the personal involvement required to impose liability under Labor Code § 558.1.   As acknowledged by the moving papers, when an individual has "personal involvement" or "sufficient participation in the in the activities of the employer – including for example, over those responsible for the alleged wage and hour violations," he "may be deemed to have contributed to, and thus have 'cause[d]' such violations." (*Usher v. White* (2021) 64 Cal.App.5th 883, 886.)

The current motion further expands its reach as to the waiting time penalties claim to both Lavallee and Implicit, whereas last time the issue was only raised as to Lavallee.  However, there are no new allegations in Stine's Amended Answer and Counterclaim that would warrant expanding the motion as to Implicit as well as Lavallee.   In the context of a motion under Rule 12(b)(6), "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." (FRCP, Rule 12(g)(2).)  Thus, having not raised this issue on behalf of Implicit in the original moving papers attacking the original counterclaim, those arguments are now waived.

The moving papers further argue for the first time that it is not plausible that Implicit

- 14 -

intentionally acted as opposed to be caused by Stine's take over the "computer systems." However, there was never any takeover of Implicit's "computer systems." The original Answer and the Amended Answer do acknowledge that Stine accessed Implicit's Google Admin system. (Amended answer at 25, 26.) The reference in this court's previous order to "computer system" access cites to the original Answer's reference to the Google Admin system. There is no allegation anywhere that Stine did anything to access anything related to Implicit's payroll capabilities or system.

Additionally, a discharged employee be paid wages "immediately." (Labor Code § 201(a).) Clearly neither Lavallee nor anyone else at Implicit initiated the payment of Stine's wages at the time of his termination.

### iv. Counterclaim Seven Adequately States a Claim for Defamation as Lavallee Made an Unprivileged Statement to a Law Enforcement Agency

As stated above, to state a claim for defamation, a complaint must allege "'(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.'" (*John Doe 2, supra*, 1 Cal.App.5th at 1312.) Furthermore, it is an error for a court to rule that a publication cannot be defamatory on its face when by any reasonable interpretation the language is susceptible of a defamatory meaning."(*Condit, supra*, 248 F.Supp.2d at 964.) Additionally, when ruling on a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations as true and draw all reasonable inferences in favor of the nonmoving party. (*Rescuecom Corp., supra*, 562 F.3d at 127.)

As argued above, Stine has demonstrated that Lavallee's motion to dismiss fails for two reasons. First, Lavallee's false reporting of an alleged crime committed by Stine as to Traver Stine is not subject to any applicable privileges based upon California Civil Code § 47(b)(5). The plain language of the statute, as well as the Legislative reports surrounding the necessity of the enactment of this provision establishes that there is no absolute privilege of any communication between a person and law enforcement in which the person makes a false report that another person has committed a crime. (See Civ. Code, § 47(b)(5).)

Second, after establishing that Lavallee's conduct is not privileged, Stine sufficiently

- 15 -

argued above the amended counterclaim pleads all the necessary facts that sets forth a cause of action for defamation. Accepting the factual allegations as true, the amended counterclaim adequately states a claim for defamation against Lavallee.

As articulated in the Legislative reports leading up to the enactment of the new subdivision, the rationale behind Assembly Bill 1775 was to end instances of 911 emergency system calls that are aimed at violating the rights of individuals based upon race, religion, sex, gender expression, or any other protected class. (CA LEGIS 327 (2020), 2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775).) The Legislative reports further note existing law on false police reporting does not address the growing number of cases in which peace officers are summoned to violate the rights of individuals. (Id.) Additionally, the Legislative report states: "[T]his act will allow those who have been subject to unfair and prejudicial 911 emergency system calls to regain their agency by seeking justice and restitution through the criminal and civil court system."  (Id.) (emphasis added.)

Lavelle's anti-SLAPP motion as to Stine's cause of action for defamation fails because Stine has sufficiently pled sufficient facts establishing the plausibility of Lavelle's false reporting of a crime against Stine. As correctly pointed out in counter-defendants' moving papers, the reckless disregard standard simply requires a showing that defendant actually had a "high degree of awareness of ... probable falsity." (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 114.)

Stine's amended counterclaim states on the evening of Stine's termination, Lavallee called the police to the Stine's home indicating that Stine may harm his wife. (Amended Counterclaim, ¶74.) The amended counterclaim further states Lavallee, who had not spoken to Stine in over a month, made this call after Stine removed Lavallee's access to the Google Admin account. (See Id.) To this end, the amended counterclaim pleads Lavallee retaliated against Stine and Traver Stine out of anger, having his Google Admin access removed, by unlawfully alleging Stine is a perpetrator of intimate partner violence.

Further demonstrating the frivolous nature of the call and the intent to harass and embarrass the Stines, Lavallee needlessly included this information about making the 911 call in

- 16 -

an email to several Implicit employees, including several female employees and a female outside vendor. (Id. at ¶77.) Taken together and accepting the factual allegations as true, the amended counterclaim sufficiently state facts establishing that Lavelle contacted law enforcement with reckless disregard for the truth or falsity of the report. Lavelle's conduct specifically falls squarely in line with the conduct that Assembly Bill 1775 seeks to prevent. As recognized by the California Legislature, "All Californians . . . should have the liberty to live their lives, and to go about their business, without living under the threat or fear of being confronted by police. (CA LEGIS 327 (2020), 2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775).)

### C. Implicit's Request for Judicial Notice Fails as It Goes Beyond The Counterclaim And The Authenticity of the CIIAA is in Dispute

While a court ordinarily only looks at the face of a complaint when ruling on a motion to dismiss, a court may consider documents beyond the pleadings under the "incorporation by reference" doctrine without converting the 12(b)(6) to a summary judgment. See *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002). Incorporation by reference generally occurs when the content of the proffered document is alleged in the complaint. *See Id.* In *Van Buskirk*, the court considered documents that were "referenced extensively in the complaint" under the doctrine of incorporation by reference. *Id*. For a document to be judicially noticed and its contents treated as true, the court considers whether the content of the document is alleged in the complaint and whether the authenticity of the document has been called into question by either party. See *Davis v. HSBC Bank Nevada, N.A*., 691 F.3d 1152, 1160 (9th Cir. 2012).

Here, however, Implicit has failed to establish that the content of the CIIAA it requests to have judicially noticed was alleged in the Counterclaim. Stine has not alleged the content of the supposed CIIAA in his Counterclaim, in fact, Stine disputes both the authenticity of and the terms within the CIIAA as dictating his employment. Further, even if the content of an agreement regarding Stine's employment was found to be alleged in the Counterclaim, the authenticity of the CIIAA has been called in to question by Stine such that its inclusion in a ruling on a 12(b)(6) motion would not be appropriate. Here, Stine has called into question the accuracy of the CIIAA

- 17 -

as the operative employment agreement, as he does not recall entering the CIIAA and disputes the accuracy of its terms with respect to his employment. As this document is squarely outside the alleged content of his First Amended Counterclaim, and the authenticity of the document itself has been called into question, Implicit's request for judicial notice should be denied as to the inclusion of the CIIAA.

### V.    CONCLUSION

For the foregoing reasons, Stine respectfully requests that this Court deny Counter-defendants' motion.  In the event the motion is granted, Stine requests a further chance to amend the counterclaims.

Date:  December 17, 2024                    STRUCTURE LAW GROUP, LLP


By:  _____
         Jackie Ford, Esq.
         Karen Rothschild, Esq.
         Attorneys for Counterclaimants JACOB
         STINE and JUANITA TRAVER STINE