Jackie M. Ford, Esq. (SBN: 272641)
*jford@structurelaw.com*
Karen F. Rothschild, Esq. (SBN: 346949)
*krothschild@structurelaw.com*
Christopher E. Williams, Esq. (SBN: 330713)
*cwilliams@structurelaw.com*
STRUCTURE LAW GROUP, LLP
1754 Technology Drive, Suite 135
San Jose, California 95110
Telephone: (408) 441-7500
Facsimile: (408) 441-7501

Attorneys for Defendants and Counterclaimants
JACOB STINE and JUANITA TRAVER STINE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPLICIT CONVERSIONS, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JACOB STINE, an individual, JUANITA TRAVER STINE, an individual, SAYED MAHMOOD ALAWI, an individual, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 3:24-cv-03744-WHO<br><br>**JUANITA TRAVER STINE'S OPPOSITION TO IMPLICIT CONVERSIONS, INC. AND ROBIN LAVALLEE'S MOTION TO STRIKE UNDER CAL. CODE CIV. PROC. § 425.16 AND DISMISS UNDER FED. R. CIV. PROC. 12(b) THE FIRST AMENDED COUNTERCLAIM OF JUANITA TRAVER STINE**<br><br>Date: January 15, 2025<br>Time: 2:00 p.m.<br>Judge: Hon. William H. Orrick |
| JACOB STINE, an individual; and JUANITA TRAVER STINE, an individual,<br><br>Counterclaimants,<br><br>v.<br><br>IMPLICIT CONVERSIONS, INC., a Delaware Corporation; and ROBIN LAVALLEE, an individual,<br><br>Counterdefendants. | |

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUES ..... 1

III. FACTS ..... 1

IV. LEGAL AUTHORITY AND ANALYSIS ..... 3

A. The Court Should Deny Lavallee's Motion to Strike as There is No Applicable Privilege ..... 3

i. Legal Standard on a Special Motion to Strike Pursuant to Code of Civil Procedure § 425.16 ..... 3

ii. Lavallee Fails to Demonstrate the First Prong of the Two-Step Inquiry Because He Cannot Make a Threshold Showing That the Challenged Cause of Action is One Arising From Protected Activity ..... 4

iii. Traver Stine Satisfies the Second Prong of the Test as the Amended Counterclaim Sufficiently Establishes a Probability on Prevailing as to the Defamation Cause of Action ..... 8

a. The Counterclaim Adequately Alleges Damages Per Se ..... 10

B. Legal Standard- Motion to Dismiss ..... 11

i. Traver Stine's Demotion and Removal of Significant Job Responsibilities that Was Effective Immediately Was an Adverse Employment Action ..... 12

ii. Traver Stine has Stated Facts Sufficient to Allege She Suffered Damage by way of the Adverse Employment Action Because She Suffered Emotional Distress to do the Diminution of Her Job Responsibilities and Demotion of Her Job Title ..... 13

iii. Traver Stine's Counterclaim for Adverse Employment Action Based On Association with a Member of A FEHA-Protected Class States a Plausible Claim as Implicit Demoted Traver Stine Based on Her Husband's Disability ..... 13

iv. Traver Stine's Counterclaim for Adverse Employment Action

Based On A Violation Of Public Policy States A Plausible Claim as Implicit Demoted Traver Stine As Part Of Her Husband's Unlawful Termination ........ 15

v. Traver Stine's Third Counterclaim for Defamation States a Plausible Claim 15

V. CONCLUSION ........ 16

## TABLE OF AUTHORITIES

**Cases**


*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568 .................... 9

*Albertini v. Schaefer* (1979) 97 Cal.App.3d 822 .................... 15, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................... 16

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) .................... 16

*Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976 .................... 18

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) .................... 17

*Castro-Ramirez v. Dependable Highway Express, Inc.*, 2 Cal. App. 5th 1028 (2016) .................... 19

*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301 .................... 11

*Colucci v. T-Mobile USA, Inc.* (2020) 48 Cal.App.5th 442 .................... 18

*Condit v. National Enquirer, Inc.* (E.D. Cal. 2002) 248 F.Supp.2d 945 .................... 13

*Crady v. Liberty Nat. Bank and Trust Co*., 993 F.2d 132 (7th Cir. 1993) .................... 17

*Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) .................... 17

*Harris v. City of Santa Monica,* 56 Cal.4th 203 (2013) .................... 19

*Harris v. County of Orange*, 682 F.3d 1126 (9th Cir. 2012) .................... 17

*Herring Networks, Inc. v. Maddow* (9th Cir. 2021) 8 F.4th 1148 .................... 8, 9

*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728 .................... 9

*John Doe 2 v. Superior Court* (2016) 1 Cal.App.5th 1300 .................... 13

*Lakin v. Watkins Associated Indus.* (1993) 6 Cal.4th 644 .................... 18

*Larimer v. International Business Machines Corp.*, 370 F.3d 698 (7th Cir. 2004) .................... 19

*Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696 .................... 10

*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97 .................... 12

*Navellier v. Sletten* (2002) 29 Cal.4th 82 .................... 8, 9, 10, 13

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658 .................... 6

*Rescuecom Corp. v. Google Inc.,* 562 F.3d 123 (2009) .................... 17

*Thomas v. Dept. of Corr.,* 77 Cal. App. 4th 507 (2000) .................... 17

**Statutes**

Cal. Code Civ. Proc. ("CCP") § 425.16 .......... 6, 8, 10

CCP § 425.16(a) .......... 8

CCP § 425.16(b)(1) .......... 8

California Civil Code section ("Civ. Code") 47(b)(5) .......... 11

Civ. Code, § 44 .......... 15

Civ. Code, § 46 .......... 15

Civ. Code, § 46(1) .......... 15

Fed. R. Civ. Proc. 12(b) .......... 1, 5, 6, 16, 17

Labor Code § 230(f)(7)(D) .......... 16

**Other Authorities**

2019 California Assembly Bill No. 1775, California 2019-2020 Regular Session .......... 12

CA LEGIS 327 (2020), 2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775) .......... 11, 12

Judicial Council of California Civil Jury Instructions (CACI) No. 2547 .......... 19

## I. INTRODUCTION

Defendant and Counterclaimant Juanita Traver Stine ("Traver Stine") hereby opposes Plaintiff and Counterdefendants Implicit Conversions, Inc. and Robin Lavallee's ("Counterdefendants") Motion to Strike Under Cal. Code Civ. Proc. § 425.16 and Dismiss Under Fed. R. Civ. Proc. 12(b) the First Amended Counterclaim of Juanita Traver Stine.

## II. STATEMENT OF ISSUES

Has Traver Stine demonstrated that the false or reckless 911 "wellness check" Lavallee made was not protected speech, such that Lavallee's asserted anti-SLAPP fails to shift the burden onto Traver Stine?

In the alternative if Lavallee's false or reckless "wellness check" was to be found to be protected speech, has Traver Stine met her burden to establish probability to support her claim for defamation, including damages per se?

Did Implicit cause Traver Stine to suffer an Adverse Employment Action when she was demoted and told her responsibilities would be reduced, particularly when she had no number of guaranteed hours?

Has Traver Stine stated sufficient facts to demonstrate she suffered emotional distress when her responsibilities and therefore hours were reduced?

Has Traver Stine stated a plausible claim for Adverse Employment Action Based On Association with a Member of A FEHA-Protected Class based on the fact that an adverse employment action was taken against her in connection with her husband's termination?

Has Traver Stine stated a plausible claim for Adverse Employment Action based on the fact that an adverse employment action was taken against her in connection with her husband's termination?

Has Stine demonstrated a plausibility of success on the merits with respect to his defamation claim, when Lavallee touted the fact that he had called 911 on the Stines to select Implicit employees, including the female employees?

## III. FACTS

Traver Stine joined Implicit in 2022 as payroll administrator and her role later expanded

to human resources. Amended Counterclaim ¶ 6. Traver Stine's husband, a co-founder of Implicit exhibited autistic traits that Implicit was aware of. *Id.* at ¶ 7. These autistic traits led to communication breakdown between Stine and Lavallee, Implicit's CEO. See *Id.* Traver Stine met with Stine to discuss communication issues in her HR capacity; this led to Stine having a medical crisis which required him to take a medical leave of absence from Implicit. *Id.* at ¶ 8, 9.

During Stine's leave, Traver Stine advocated for an interactive process to determine accommodations to support Stine's return to work. *Id.* at ¶ 11. However, instead of addressing the interactive process, Lavallee and another Implicit manager informed Traver Stine that Stine would not return to Implicit. *Id.* at ¶ 12. On June 14, 2024, Lavallee terminated Stine. *Id.* at ¶ 13. The same day, Traver Stine had her role as HR and her payroll and financial duties removed based upon alleged HR "failures." *Id.* at ¶14. However, the reasons cited for the these supposed failures were either inconsistent with previous representations made by management, or were not explained at all. *Id.* at ¶19.

Stine later accessed Implicit's Google Admin account and blocked Lavallee's access emailed Implicit employees to explain that Lavallee improperly terminated Stine's employment. See *Id.* at ¶ 15. In retaliation, Lavallee called the police to the Stine's home falsely indicating that Stine may harm Traver Stine, and that Traver Stine was a victim, or potential victim, of domestic violence. *Id.* at ¶ 16. Lavallee, who had not spoken to Stine in over a month, supposedly told the 911 operator that Stine had sent disturbing messages months prior. *Id.* Lavallee acted with reckless disregard for the truth or falsity of the statements, as the call was evidently in response to Lavallee's account access having been removed. See *Id.* Lavallee called the police to allege that Traver Stine was a victim, or potential victim, of domestic violence at the hands of her husband, yet there is no logical connection between Stine's action of removing Lavallee's access to the Google Admin account to some sort of impending violence against Stine's wife. See *Id.* at ¶ 42. Lavallee then announced having called the police to the Stines' home in an email to Implicit female staff and an outside female vendor, demonstrating the frivolous nature of his call and his intent to harass and embarrass the Stines. *Id.* at ¶ 18.

///

## IV. LEGAL AUTHORITY AND ANALYSIS

### A. The Court Should Deny Lavallee's Motion to Strike as There is No Applicable Privilege

#### i. Legal Standard on a Special Motion to Strike Pursuant to Code of Civil Procedure § 425.16

A special motion to strike pursuant to Code of Civil Procedure section 425.16 or an anti-SLAPP motion, was enacted as a response to an increase of lawsuits brought "to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances," and to protect those rights from the abuse of the judicial process. (*See* Code Civ. Proc., § 425.16(a).) Pursuant to subdivision (b)(1) of section 425.16 of the Code of Civil Procedure,

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a **probability** that the plaintiff will prevail on the claim.

(Code Civ. Proc., § 425.16(b)(1).) (emphasis added.)

The anti-SLAPP statute set forth guidance for what constitutes "act[s] in furtherance of a person's right of petition of free speech" which includes:

> (1) statements made before a legislative, executive, judicial or any other proceeding authorized by law;
> (2) statements made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or other official proceeding;
> (3) a statement made in public in connection with an issue of public interest; or
> (4) other conduct in furtherance of the exercise of the constitutional right to petition or of free speech in connection with an issue of public interest.

(Code Civ. Proc., § 425.16(e).)

Whether an anti-SLAPP motion is appropriate depends upon a two-step inquiry. (*See Herring Networks, Inc. v. Maddow* (9th Cir. 2021) 8 F.4th 1148, 1155.) In *Navellier v. Sletten* (2002) 29 Cal.4th 82, the California Supreme Court provides guidance on this two-step process:

> First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e). If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim.

(*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88, internal citations omitted.) In order to establish a probability of prevailing on the claim, a plaintiff must show the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment of the evidence submitted by the plaintiff is credited. (*Id.* at 88-89; *see also Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 740–741 [“holding that the Legislature’s detailed anti-SLAPP scheme ensures that claims with the requisite minimal merit may proceed.”].) Only a cause of action that satisfies *both* prongs is subject to be stricken down by the anti-SLAPP statute. (*Navellier*, *supra*, 29 Cal.4th at 89.)

Furthermore, California courts recognize that the court need not weigh the credibility or persuasiveness of the evidence, instead the defendant's evidence is considered with a view toward whether it defeats the plaintiff’s showing as a matter of law, such as by establishing a defense or the absence of a necessary element. (*See 1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585.)

As outlined below, Traver Stine meets this burden. Based on the facts contained in Traver Stine’s first amended counterclaim, Traver Stine submits that Lavallee cannot meet his burden under the anti-SLAPP statute and that she satisfies her burden as to the probability defamation cause of action.

**ii. Lavallee Fails to Demonstrate the First Prong of the Two-Step Inquiry Because He Cannot Make a Threshold Showing that the Challenged Cause of Action is One Arising from Protected Activity**

As stated above, there is a two-step inquiry in determining the appropriateness of an anti-SLAPP motion. (See *Herring Networks*, Inc., supra, 8 F.4th at 1155.) As recognized by the California Supreme Court in Navellier:

> ...the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. Moreover, that a cause of action arguably may have been “triggered” by protected activity does not entail it is one arising from such. In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.

(*Navellier*, *supra*, 29 Cal.4th at 89, internal citations omitted.) "In deciding whether the initial "arising from" requirement is met, a court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (*Id*.)

Lavallee's moving papers, in conclusory fashion, alleges that Traver Stine's defamation cause of action is subject to an anti-SLAPP motion since the "amended counterclaim describes Lavallee's purported acts of defamation as statements to law enforcement and alleges that law enforcement visited Stines' home in response to Lavallee's expressed concerns. (Counter-defendants' motion to strike and motion to dismiss ("Moving Papers") p. 10:3-6.) On this basis, Lavallee contends he satisfies the first prong outlined in Code of Civil Procedure section 425.16.

The California Court of Appeal held the anti-SLAPP statute is not implicated, and cannot be invoked by a defendant, unless the defendant's conduct underpinning a plaintiff's cause of action involved an act in furtherance of the defendant's "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (*Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 703.) The court noted that a defendant's act of making a false police report was not an act in furtherance of her constitutional right of petition or free speech, thus, the anti-SLAPP statute "never came into play." (Id. at 703.) The court further held:

> Neither the federal nor the state constitutional right of petition or free speech encompass a right to file a false crime report. Indeed, if the right of petition or free speech encompasses a right to file a false criminal report, then laws criminalizing such reports would be inherently unconstitutional.

(*Id*.)

Furthermore, the amended counterclaim alleges that separate and apart from Lavallee's false reporting to law enforcement, Lavallee gloated about the fact that he had called 911 on Stine. This sufficiently alleges that there is evidence of an ulterior motivation for Lavallee's actions.

As alleged in paragraph 44 of the amended counterclaim:

> That the 911 call was not motivated out of any legitimate concern for the Stines' safety is further demonstrated by the fact that promptly after making the call, Lavallee sent an email to the female employees of Implicit

> and included a female external vendor informing them he had called 911 to perform a wellness check on Traver Stine at the Stines' home. There was absolutely no reason to do this; Lavalee's intention was to make a sexist display of hostility against Traver Stine and damage Stine's reputation.

(Amended counterclaim, ¶77.) The fact that Lavallee's alleged protected activity i.e. contact with law enforcement, is incidental to Traver Stine's defamation cause of action, does not justify dismissal of the claim via an anti-SLAPP motion. (*See Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672, [holding that 'if the allegations of protected activity are only incidental to a cause of action based essentially on nonprotected activity, the mere mention of the protected activity does not subject the cause of action to an anti-SLAPP motion.'."; *see also City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1307, ["the mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purpose of the anti-SLAPP statute."].)

With the relatively new enactment of California Civil Code section 47(b)(5) as of January 1, 2021, a false report to law enforcement is decidedly *not* an act in furtherance of free speech:

> This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report.

(Civ. Code, § 47(b)(5).)

As articulated in the Legislative reports leading up to the enactment of the new subdivision, the rationale behind Assembly Bill 1775 was to end instances of 911 emergency system calls that are aimed at violating the rights of individuals based upon race, religion, sex, gender expression, or any other protected class. (CA LEGIS 327 (2020), 2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775).) The Legislative reports further note existing law on false police reporting does not address the growing number of cases in which peace officers are summoned to violate the rights of individuals. (*Id.*) Additionally, the Legislative report states: "[T]his act will allow those who have been subject to unfair and prejudicial 911 emergency system calls to regain their

agency by **seeking justice and restitution through the criminal and civil court system**." (*Id.*) (emphasis added.)

Lavelle's anti-SLAPP motion as to Traver Stine's cause of action for defamation fails because she has sufficiently pled sufficient facts establishing the plausibility of Lavelle's false reporting of a crime against Stine, of which Traver Stine was alleged to be the victim. As correctly pointed out in counter-defendants' moving papers, the reckless disregard standard simply requires a showing that defendant actually had a "high degree of awareness of ... probable falsity." (*McGarry v. University of San Diego* (2007) 154 Cal.App.4th 97, 114.)

Traver Stine's amended counterclaim states on the evening of Stine's termination, Lavallee called the police to the Stine's home indicating that Stine may harm Traver Stine. (Amended Counterclaim, ¶41.) The amended counterclaim further states Lavallee, who had not spoken to Stine in over a month, made this call after Stine removed Lavallee's access to the Google Admin account. (See Id.) To this end, the amended counterclaim pleads Lavallee retaliated against Stine and Traver Stine out of anger, having his Google Admin access removed, by unlawfully alleging Stine is a perpetrator of intimate partner violence.

Further demonstrating the frivolous nature of the call and the intent to harass and embarrass the Stines, Lavallee needlessly included this information about making the 911 call in an email to several Implicit employees, including several female employees and a female outside vendor. (Id. at ¶77.) Taken together and accepting the factual allegations as true, the amended counterclaim sufficiently state facts establishing that Lavelle contacted law enforcement with reckless disregard for the truth or falsity of the report. Lavelle's conduct specifically falls squarely in line with the conduct that Assembly Bill 1775 seeks to prevent. As recognized by the California Legislature, "All Californians . . . should have the liberty to live their lives, and to go about their business, without living under the threat or fear of being confronted by police. (CA LEGIS 327 (2020), 2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775).)

As noted by author of Assembly Bill 1775, Assembly Bill 1775 is important to prevent individuals from using emergency services as their "personal concierge" to harass others. (2019 California Assembly Bill No. 1775, California 2019-2020 Regular Session.) Traver Stine's

amended counterclaim alleges that Lavelle contacted law enforcement in response to having his Google Admin access removed. Thus, Lavelle's contact of law enforcement was retaliatory conduct for the sole purpose of harassing Stine and Traver Stine. It is clear the Legislature sought to give victims of false police reporting, such as Traver Stine, relief through the court system.

### iii. Traver Stine Satisfies the Second Prong of the Test as the Amended Counterclaim Sufficiently Establishes a Probability on Prevailing as to the Defamation Cause of Action

A plaintiff may defeat an anti-SLAPP motion by establishing a probability of prevailing on the claim. (*Navellier*, *supra*, 29 Cal.4th at 95.) To state a claim for defamation, a complaint must allege "'(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.'" (*John Doe 2 v. Superior Court* (2016) 1 Cal.App.5th 1300, 1312.) "It is error for a court to rule that a publication cannot be defamatory on its face when by any reasonable interpretation the language is susceptible of a defamatory meaning."(*Condit v. National Enquirer, Inc.* (E.D. Cal. 2002) 248 F.Supp.2d 945, 964.)

The facts supporting Traver Stine's defamation cause of action are as follows:

40. Traver Stine realleges and incorporates herein by reference all preceding paragraphs of this Counterclaim as though fully set forth herein.

41. On June 14, 2024, Lavallee made statements to a 911 operator indicating that Stine Traver Stine was the victim or potential victim of domestic violence at the hands of her husband. Lavallee knew this statement was false, or made it with reckless disregard for the trust or falsity of the report. In reality, Lavallee and Stine had not conversed in over a month.

42. The law enforcement personnel reasonably understood Lavallee's statements to be true. This was highly offensive to both Stine as an alleged abuser, and Traver Stine as an alleged victim. The Stines do not have a history of domestic abuse.

43. Lavallee did not believe the statements he made to law enforcement, particularly that there was concern for Traver Stine's safety, were true. He only made the 911 call as a flex of power over Stine and Traver Stine because he was mad at Stine for blocking his computer access.

44. That the 911 call was not motivated out of any legitimate concern for the Stines'

safety is further demonstrated by the fact that promptly after making the call, Lavallee sent an email to the female employees of Implicit and included a female external vendor informing them he had called 911 to perform a wellness check on Traver Stine at the Stines' home. There was absolutely no reason to do this; Lavalee's intention was to make a sexist display of hostility against Traver Stine and damage Stine's reputation.

45. Law enforcement visited the Stines' home at around 10:30pm on June 14, 2024.

46. Knowing that in the video game community there is a phenomenon called "SWATTING" which involves making false reports to police so that the SWAT team shows up to an unsuspecting victim's home, this was terrifying and traumatic to Stine.

47. At this point in time, Stine believed that Lavallee was in the middle of a crisis due to his impulsive termination of Stine and Stine was concerned about protecting Implicit's future. Stine was concerned that Lavallee had concocted a wild tale to law enforcement in order to further harass him and his wife at their home.

48. As a result of Lavallee's actions, Stine has suffered damages in an amount to be proven at trial.

49. Lavallee's actions were committed with oppression, fraud or malice such that an award of punitive damages is appropriate.

(Amended Counterclaim, pp. 21:20-22:23.)

Accepting the allegations as true at the pleading stages, the amended counterclaim establishes that Lavallee sent a publication, in this matter a call to law enforcement, indicating that Traver Stine was the victim or potential victim of domestic violence at the hands of her husband. The amended counterclaim further alleges that Lavallee knew this statement was false or made with reckless disregard for the truth or falsity of the report as Lavallee and Stine had not conversed in over a month and because the Stines have no history of domestic abuse. This call to law enforcement, as alleged in the amended counterclaim, was not out of concern for the well-being of Traver Stine but as a retaliatory act after his Google Admin access removed.

Furthermore, the amended counterclaim alleges that Lavallee's email promptly after making the call to law enforcement to the female employees of Implicit and included a female

external vendor informing them he had called 911 to perform a wellness check on Traver Stine at the Stines' home, further evidences that the call to law enforcement was not about a wellness check on Traver Stine at all and was falsely made out of anger. This action alone shows that Lavallee did not act with good intentions when he called law enforcement. Lavallee does not deny that he sent this email, as demonstrated by his asking this court to take judicial notice of it. As a result of those communications, Traver Stine was harmed.

**a. The Counterclaim Adequately Alleges Damages Per Se**

Section 44 of the California Civil Code recognizes that defamation is effected by either libel or slander. (Civ. Code, § 44.) As recognized by the Civil Code, Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means. (Civ. Code, § 46.) Slander is expressly limited to the following categories outlined in the Civil Code:

> 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;
>
> 2. Imputes in him the present existence of an infectious, contagious, or loathsome disease;
>
> 3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;
>
> 4. Imputes to him impotence or a want of chastity; or
>
> 5. Which, by natural consequence, causes actual damage.

(Civ. Code, § 46.) "Words which fall within the purview of Civil Code section 46 are deemed to constitute slander per se . . . with the effect that the utterance of such words is actionable without proof of special damage. (*Albertini v. Schaefer* (1979) 97 Cal.App.3d 822, 829.)

Lavallee incorrectly alleges that Traver Stine's defamation cause of action does not fall within the slander per se categories. Category 1 expressly states that a claim of slander per se can be found where a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which charges ***any*** person with crime, gives rise to a claim for slander. (*See* Civ. Code, § 46(1), emphasis added.) Thus, by the plain meaning of the

statute, Traver Stine has a viable slander per se claim as Lavallee's false and unprivileged statement to law enforcement indicating that Traver Stine was the victim of domestic violence at the hands of her husband charges Stine with a crime of which Traver Stine is the alleged victim. Lavallee's statements to law enforcement were not privileged as outlined above.

Additionally, Lavallee's broadcasting of the fact that he called 911 to report Traver Stine as the victim of a crime to the other Implicit female employees indicates that he intended for the statement to disqualify Traver Stine somehow with respect to her profession and amongst her colleagues. This is a topic that should be subject to discovery as to Notably, embedded in California law is the idea that a victim's crime status should be protected by an employer. (See, e.g., Labor Code § 230(f)(7)(D): "Any verbal or written statement, police or court record, or other documentation provided to an employer identifying an employee as a victim shall be maintained as confidential by the employer and shall not be disclosed by the employer except as required by federal or state law or as necessary to protect the employee's safety in the workplace.")

Since Lavallee's statements fall within the purview of Civil Code section 46, Traver Stine is not required to prove special damages. (*See Albertini*, *supra*, 97 Cal.App.3d at 829.) Based on the foregoing, Traver Stine respectfully requests that the Court denies Lavallee's motion to dismiss as to the defamation cause of action.

**B. Legal Standard- Motion to Dismiss**

A federal complaint requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The plaintiff must allege sufficient facts to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citation omitted). However, a "heightened fact pleadings of specifics" is not required and a mere statement of facts adequate to "raise a right to relief above the speculative level" is sufficient. *Twombly*, 550 U.S. at 550.

When ruling on a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations as true and draw all reasonable inferences in favor of the nonmoving party.

*Rescuecom Corp. v. Google Inc.,* 562 F.3d 123, 127 (2009). Generally, only material in the pleadings may be considered when ruling on a Rule 12(b)(6) motion. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) (overruled on other grounds, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Although, matters subject to judicial notice may also be considered in ruling on a motion to dismiss. See *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

**i. Traver Stine's Demotion and Removal of Significant Job Responsibilities that Was Effective Immediately Was an Adverse Employment Action**

The current motion alleges that Implicit's removal of Traver Stine's job duties and responsibilities was not an adverse employment action, however, the case law Implicit cites lays out that a demotion evidenced by a less distinguished title or significantly diminished material responsibilities is sufficient to indicate a materially adverse change. *Thomas v. Dept. of Corr.,* 77 Cal. App. 4th 507, 511 (2000) (citing *Crady v. Liberty Nat. Bank and Trust Co*., 993 F.2d 132, 136 (7th Cir. 1993)). Here, Implicit demoted Traver Stine when Lavallee sent her the performance review by removing the HR part of her role as well as removing the payroll and financial aspect of her role, a significant blow for an hourly employee employed as Human Resources and Payroll Administrator. Traver Stine's material responsibilities, HR and payroll, had been removed from her in one swift go at the same time her disabled husband was terminated. Notably, Traver Stine was not guaranteed any number of hours, meaning that her compensation would necessarily be reduced. (Amended Counterclaim, ¶ 26.)

While the current motion alleges that Implicit never had the chance to implement the removal of job duties, the removal was stated as effective immediately, thereby the adverse employment action had occurred the moment Traver Stine received the email sending her the prefatory negative performance review with a reduction of hours.

///

///

///

///

**ii. Traver Stine has Stated Facts Sufficient to Allege She Suffered Damage by way of the Adverse Employment Action Because She Suffered Emotional Distress to do the Diminution of Her Job Responsibilities and Demotion of Her Job Title**

Traver Stine received an email that the material responsibilities of her job were being removed. As an hourly employee not guaranteed a full 40-hour work week, Traver Stine was left feeling the distress and anticipation of the reduction of hours and pay. This diminution of responsibilities and likely wages, stacked upon the economic turmoil the Stines' were already facing as Stine's employment was concurrently terminated, and Stine and Implicit were already engaged in a legal conflict. Traver Stine was emotionally distressed when she received the pretextual negative performance review, a clear coverup of the underlying animosity rooted in discrimination, this distress continued as Traver Stine realized the implications of her demotion. Such actions entitle Traver Stine to emotional distress damages, and are separate from any special damages, should the remaining elements of her claims ultimately be proved. (See e.g., *Colucci v. T-Mobile USA, Inc.* (2020) 48 Cal.App.5th 442, 460-461, (affirming jury award of emotional distress damages); *Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 997, (disapproved on other grounds by *Lakin v. Watkins Associated Indus.* (1993) 6 Cal.4th 644, 664) (affirming award of emotional distress damages.) At a minimum, Traver Stine has pled facts which would entitle her to garden-variety emotional distress damages for having gone through an adverse employment action.

**iii. Traver Stine's Counterclaim for Adverse Employment Action Based On Association with a Member of A FEHA-Protected Class States a Plausible Claim as Implicit Demoted Traver Stine Based on Her Husband's Disability**

The counterclaim alleges that Implicit demoted Traver Stine, an hourly employee not guaranteed a set number of hours, by removing her core job responsibilities, based upon her association with her husband, Stine, a person qualifying as being a member of a protected class under FEHA. Implicit employed Stine, a person perceived as being autistic, until June 14, 2024, the same day that Implicit demoted Traver Stine. Traver Stine's worked as Implicit's HR Generalist and payroll administrator before her demotion. Implicit demonstrated growing

animosity toward Stine's perceived autism by way of demanding that he resign and forcing Stine to accommodate the needs of others, rather than Implicit work to accommodate his needs. Traver Stine advocated for her husband's disability and for an interactive process to assist in his return. Traver Stine's advocacy efforts were cut short, first as Implicit decided Stine would not return, then as Implicit elected not to follow through with the interactive process, and finally, as the HR part of her job was removed from her based on the alleged failure to adequately manage her husband despite direct communications to the contrary previously made by upper management.

Where a plaintiff's association with a person with a mental condition is a "substantial motivating reason" for an employer's decision to terminate an employee, a claim for disability-based associational discrimination will lie. *See* Directions to Judicial Council of California Civil Jury Instructions (CACI) No. 2547 (Disability-Based Associational Discrimination – Essential Factual Elements; citing *Harris v. City of Santa Monica,* 56 Cal.4th 203, 232 (2013).

While disability-based associational discrimination typically arises in the context of "expense," "disability by association," or "distraction," these categories are "illustrative rather than an exhaustive, list of the kind of circumstances in which we might find associational discrimination. The common thread among the [] categories is simply that they are instances in which the 'employer has a motive to discriminate against a nondisabled employee who is merely associated with a disabled person.' [Citation.] As we discuss above, this is an element of a plaintiff's prima facie case—that the plaintiff's association with a disabled person was a substantial motivating factor for the employer's adverse employment action." *Castro-Ramirez v. Dependable Highway Express, Inc.*, 2 Cal. App. 5th 1028, 1042 (2016), quoting *Larimer v. International Business Machines Corp.*, 370 F.3d 698, 702 (7th Cir. 2004). In *Castro-Ramirez*, the court recognized that "Our facts do not fit neatly within one of the *Larimer* categories either, but a jury could reasonably infer the requisite discriminatory motive." *Id.*

Traver Stine's meritless negative performance review which was leveled at her failure to do something about her husband, when she had been specifically told not to take action regarding the specific identified items related to her husband's autistic traits, suggest that Implicit had a substantial motivating reason to discipline Traver Stine due to her association with her husband,

who had been fired the same day due to his perceived mental condition. Whether her termination was due to her advocacy for Stine, or for her failure to control him, or for something else, should be for a trier of fact to determine.

**iv. Traver Stine's Counterclaim for Adverse Employment Action Based On A Violation Of Public Policy States A Plausible Claim as Implicit Demoted Traver Stine As Part Of Her Husband's Unlawful Termination**

Traver Stine's counterclaim also alleges facts sufficient to support a plausible inference that the adverse employment action against her was taken because Lavallee was unwilling to continue to work with Stine despite him needing FEHA accommodations. Because Traver Stine was married to Stine, Lavallee found it fitting to take action against her at the same time he fired Stine, as an extension of his animus. "This was done in violation of public policy, as Stine was a protected employee under FEHA. Lavallee suddenly became hostile against Traver Stine for both her attempting to seek accommodations for Stine, and for failing to control Stine's alleged workplace communications, which were tied to his autistic traits. This was despite previously telling Traver Stine not to be concerned with any potential communication issues related to Stine's relationship with [the employees mentioned in the performance review]. (Amended Counterclaim, ¶ 25.) As the actions taken against Stine were adequately alleged to violate FEHA, so too this claim should survive as the adverse employment action against Traver Stine was done in tandem with the termination taken against Stine.

**v. Traver Stine's Third Counterclaim for Defamation States a Plausible Claim**

For the reasons stated in section IV.A.2. above that Traver Stine's claim for defamation is probable, by definition, it must be plausible as well. Specifically, Lavallee's decision to gloat about calling 911 to Traver Stine's home to the female employees of Implicit demonstrate a probability that Lavallee did not have good intentions when he called 911 on June 14, 2024.

///

///

///

## V. CONCLUSION

For the foregoing reasons, Traver Stine respectfully requests that this Court deny Counterdefendants' motion. In the event the motion is granted, Traver Stine requests a further chance to amend the counterclaims.

Date: December 17, 2024

STRUCTURE LAW GROUP, LLP

By: ______________________________
Jackie Ford, Esq.
Karen Rothschild, Esq.
Attorneys for Defendants and Counterclaimants JACOB STINE and JUANITA TRAVER STINE