GRELLAS SHAH LLP
DHAIVAT H. SHAH, ESQ. (SBN 196382)
(ds@grellas.com)
DAVID I. SIEGEL, ESQ. (SBN 264247)
(dsiegel@grellas.com)
JOSEPH B. PALMIERI, ESQ. (SBN 312725)
(jp@grellas.com)
VIVI T. LEE, ESQ. (SBN 247513)
(vl@grellas.com)
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA 95014
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

Attorneys for Counterdefendants
IMPLICIT CONVERSIONS, INC. and
ROBIN LAVALLEE

# UNITED STATES DISTRICT COURT

## NOTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IMPLICIT CONVERSIONS, INC, a Delaware Corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>JACOB STINE, an individual, JUANITA TRAVER STINE, an individual, SAYED MAHMOUD ALAWI, an individual, and DOES 1-10, inclusive,<br><br>　　　　Defendants.<br><br>JACOB STINE, an individual; JUANITA TRAVER STINE, an individual,<br><br>　　　　Counterclaimants,<br><br>　　vs.<br><br>IMPLICIT CONVERSIONS, INC, a Delaware Corporation; and ROBIN LAVALLEE, an individual,<br><br>　　　　Counterdefendants. | Case No.  3:24-cv-03744-WHO<br><br>**COUNTERDEFENDANTS IMPLICIT CONVERSIONS, INC. AND ROBIN LAVALLEE'S REPLY IN SUPPORT OF MOTIONS TO STRIKE UNDER CAL. CODE CIV. PROC. § 425.16 AND DISMISS UNDER FED. R. CIV. PROC. 12(B) THE FIRST AMENDED COUNTERCLAIM OF JACOB STINE**<br><br>Hearing Date:　January 15, 2025<br>Time:　　　　　2:00 p.m.<br>Judge:　　　　　William H. Orrick<br>Courtroom:　　2 - 17th Floor<br><br>Date Action Filed: June 21, 2024 |

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

## TABLE OF CONTENTS

Page (s)

I. INTRODUCTION .................................................................................................... 1

II. ARGUMENT ........................................................................................................... 3

    A. Counterclaim Seven Violates California's Anti-SLAPP Statute And Must Be Stricken ................................................................................................ 3

    B. The Court Should Dismiss Counterclaims One, Five And Seven ............. 5

        1. Counterclaim One Fails To State A Claim for Promissory Estoppel ..................................................................................................... 5

        2. Counterclaim Five Fails To State A Claim for Waiting Time Penalties ................................................................................................... 8

        3. Counterclaim Seven Fails To State A Claim for Defamation .............. 10

    C. Stine's Confidential Information And Invention Assignment Agreement (the "CIIAA") Is Properly Subject To Judicial Notice ............ 14

III. CONCLUSION ...................................................................................................... 14

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

IMPLICIT AND LAVALLEE'S REPLY ISO MOTION TO STRIKE AND DISMISS STINE'S FIRST
AMENDED COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

**TABLE OF AUTHORITIES**

**CASES**                                                                Pages (s)

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...........................................................................9, 11

*Barnhill v. Robert Saunders & Co.,*
    125 Cal. App. 3d 1 (1981)..................................................................8, 10

*Brookwood v. Bank of Am.,*
    45 Cal. App. 4th 1667 (1996).................................................................8

*Chabak v. Monroy,*
    154 Cal. App. 4th 1502 (2007)..............................................................3

*Christian Research Inst. v. Alnor,*
    148 Cal. App. 4th 71 ......................................................................11, 12

*Comstock v. Aber,*
    212 Cal. App. 4th 931 (2012).................................................................3

*Flatley v. Mauro,*
    39 Cal. 4th 299 (2006) ..........................................................................4

*Garcia v. World Savings, FSB,*
    183 Cal. App. 4th 1031 (2010)..............................................................6

*Garrick v. Garrick,*
    No. 22-cv-04549-JST,
    2023 WL 4109694 (N.D. Cal. June 21, 2023) ......................................4

*Granadino v. Wells Fargo Bank, N.A.,*
    236 Cal. App. 4th 411 (2015)............................................................5, 8

*Herring Networks, Inc. v. Maddow,*
    8 F. 4th 1148 (9th Cir. 2021)................................................................3

*John Doe 2 v. Sup. Ct.,*
    1 Cal. App. 5th 1300 (2016)..................................................................5

*Kenne v. Stennis,*
    230 Cal. App. 4th 953 (2014)................................................................4

*Lefebvre v. Lefebvre,*
    199 Cal. App. 4th 696 (2011)........................................................3, 4, 5

*Lugo v. Pixior, LLC,*
    101 Cal. App. 5th 511 (2024)................................................................4

*Madden v. Kaiser Foundation Hospitals,*
    17 Cal. 3d 699 (1976) ...........................................................................8

*McGarry v. Univ. of San Diego,*
    154 Cal. App. 4th 97 (2007)............................................................11, 12

IMPLICIT AND LAVALLEE'S REPLY ISO MOTION TO STRIKE AND DISMISS STINE'S FIRST
AMENDED COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

*Moore v. Rodriguez*,
No. 20-cv-01481-BAS-BGS,
2021 WL 2222590 (S.D. Cal. June 2, 2021)..................................................................4

*Planned Parenthood Fed'n of. Am., Inc. v. Ctr. for Med. Progress*,
890 F. 3d 828 (9th Cir. 2018)......................................................................................5

*Rivera v. Uniqlo Cal., Inc.*,
No. LA CV17-02848 JAK (JPRx),
2017 WL 6539016 (C.D. Cal. Sep. 8, 2017)................................................................8

*Shruhan v. Apple Inc.*,
No. 5:22-cv-05498-EJD,
2023 WL 6391497 (N.D. Cal. Sep. 29, 2023)...........................................................14

**STATUTES**

California Civil Code:

§ 47(b)(5) ...........................................................................................................10, 13

California Code of Civil Procedure:

§ 425.16..................................................................................................................1, 4

§ 425.16(b) ...........................................................................................................1, 13

§ 425.16(b)(1) ...........................................................................................................3

§ 425.16(c) ...........................................................................................................5, 13

California Labor Code:

§ 203(a) ................................................................................................................8, 10

**RULES**

Federal Rules of Evidence:

§ 201(b) ...................................................................................................................14

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

## I.   <u>INTRODUCTION</u>

Defendant and counterclaimant Jacob Stine's ("Stine") opposition (the "Opposition" or "Opp.") to Implicit Conversions, Inc. ("Implicit") and Robin Lavallee's ("Lavallee") motion to strike and dismiss (the "Motion" or "Mot.") Stine's Amended Counterclaim (the "Amended Counterclaim") misapplies basic legal principles and case law, ignores factual allegations and admissions before this Court, and fails to identify factual allegations that would state a claim for Counterclaims One, Five or Seven.

After the Court dismissed the intrusion into the private affairs counterclaim filed by Stine's wife and co-defendant, Juanita Traver Stine ("Traver Stine"), Stine and Traver Stine both amended their counterclaims to allege claims for defamation against Lavallee based on that same 911 call. But Lavallee's request for a wellness check was based on the information available to him at that time, including Stine's repeated threats of harm to himself and others; Stine's recent violent actions upon hearing unfavorable information regarding his job performance; Traver Stine's apparent agreement with Lavallee's statement to her that Lavallee now realized that he needed to take Stine's previous threats seriously now that Stine had acted on them; Traver Stine's unexplained radio silence on the evening of June 14, 2024; and Traver Stine's credentials being used to trespass into and harm Implicit's computer systems.

Lavallee's alleged statements to law enforcement regarding his concern for Traver Stine's safety arise from his right of petition and free speech under California Code of Civil Procedure § 425.16. That the Amended Counterclaim contains a conclusory assertion that Lavallee's alleged statement to law enforcement was false does not bring the alleged statement outside the scope of the anti-SLAPP statute. Because Counterclaim Seven arises from protected activity and the Amended Counterclaim fails to sufficiently plead a claim for defamation, the claim must be stricken under Cal. Code Civ. Proc. § 425.16(b).

Counterclaim Seven fails to state a claim for defamation because Lavallee's communications to law enforcement were privileged. The Opposition argues that the privilege does not apply because the Court must accept as true the Amended Counterclaim's conclusory assertion that Lavallee's actions were intended to harass Stine and Traver Stine. The Amended

IMPLICIT AND LAVALLEE'S REPLY ISO MOTION TO STRIKE AND DISMISS STINE'S FIRST
AMENDED COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

Counterclaim is devoid of factual allegations plausibly alleging that Lavallee's statements to law enforcement were deliberately false or made with reckless disregard for the truth or falsity of the statements.

Counterclaim One for promissory estoppel is similarly meritless. The Court has already found that Lavallee's alleged statement to Stine that they would not be each other's "bosses" was not sufficiently definite to form a binding contact not to fire Stine because it provides no notice of the bounds of either party's obligations. This claim fares no better when transmogrified into a claim for promissory estoppel, which requires that the plaintiff receive a clear and unambiguous promise, and detrimentally rely on it. The Amended Counterclaim itself admits that Stine did not know what the alleged statement meant and what either individual's rights with respect to the other were. This is fatal to a promissory estoppel claim. Moreover, because Stine signed a written agreement with Implicit eight months after the "not your boss" statement that expressly acknowledged and affirmed his status as an at-will employee, any reliance on the prior promise was manifestly unreasonable.

Counterclaim Five, for waiting time penalties, improperly seeks to hold Implicit and Lavallee responsible for problems Stine himself caused. After this Court granted the prior motion to dismiss this claim, the Amended Counterclaim deleted the allegation that any failure to timely pay wages was willful. This, however, is a required element of the claim. The Opposition contends that although it did not allege that Implicit and Lavallee's conduct was willful, the amended allegations support an inference of willfulness. But the identified allegations do no such thing. The facts and admissions before the Court show that Stine's takeover of Implicit's computer systems prevented Implicit and Lavallee from conducting any business, including the processing of paychecks. The Opposition's assertion that Stine admitted to locking Lavallee out of all of Implicit's Google Admin system, including Lavallee's email, but has not admitted to tampering with the payroll system, does not save the claim. Stine's takeover of Implicit's computer systems paralyzed the company and prevented it from conducting any normal business activity as it attempted to regain control from Stine and deal with potential harm to its computer systems caused by Stine. Stine admittedly caused the delay,

not Lavallee or Implicit.

Counterclaims One, Five and Seven must be dismissed under rule 12(b)(6). Counterclaim Seven must be stricken under the anti-SLAPP statute. And Stine must be ordered to reimburse Lavallee for Lavallee's attorneys' fees and costs.

## II.    ARGUMENT

### A.    Counterclaim Seven Violates California's Anti-SLAPP Statute And Must Be Stricken

The Motion showed that Counterclaim Seven alleged that Lavallee defamed Stine by making statements to law enforcement. *See* Mot. 10:11-23 (citing Amended Counterclaim ¶¶ 74, 75, 78). Communications with law enforcement, like those allegedly made by Lavallee in Counterclaim Seven, are unquestionably acts in furtherance of the right of petition or free speech within the meaning of Cal. Code. Civ. Proc. § 425.16(b)(1). *See Comstock v. Aber*, 212 Cal. App. 4th 931, 941-42 (2012) (collecting cases); *Chabak v. Monroy*, 154 Cal. App. 4th 1502, 1511 (2007). This is sufficient to satisfy Lavallee's burden of making a prima facie showing that Counterclaim Seven arises from an act in furtherance of Lavallee's right of free speech or petition. *See Herring Networks, Inc. v. Maddow*, 8 F. 4th 1148, 1155 (9th Cir. 2021) (describing movant's burden in an anti-SLAPP motion).

The Opposition cites *Lefebvre v. Lefebvre*, 199 Cal. App. 4th 696 (2011), for the proposition that Lavallee's alleged statement to law enforcement does not come within the anti-SLAPP statute because it was purportedly a "false police report." Opp. 5:11-22, 6:22-27. But *Lefebvre* is both factually distinguishable and legally inapposite.

In *Lefebvre*, the defendant wife had conspired with another person to file false police reports against her husband to have him arrested to gain an advantage in their divorce proceedings. After the husband was tried and acquitted of charges stemming from the false police reports and obtained a factual finding of innocence, he sued the wife and her accomplice for malicious prosecution and false arrest, among other things. *See Lefebvre*, 199 Cal. App. 4th at 700-701. The trial court denied the defendants' anti-SLAPP motion because "the record 'conclusively' established that [the defendants'] statements to the police were 'illegal activity'

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

under Penal Code section 148.5, and, as such, not 'protected activity' within the meaning of the anti-SLAPP statute." *Id*. at 701. The appellate court affirmed, concluding that there was no constitutional right to file false police reports. *Id.* at 703.

Subsequent courts have explained that *Lefebvre* involved admittedly illegal conduct and have limited the *Lefebvre* exemption to cases where there is no dispute that the police report is false and that the filing of it constitutes an illegal act. *See, e.g.*, *Kenne v. Stennis*, 230 Cal. App. 4th 953, 966-67 (2014); *Lugo v. Pixior, LLC*, 101 Cal. App. 5th 511, 514 (2024). "[W]hen allegations of making false reports are controverted, [however,] they are insufficient to render that alleged conduct unlawful as a matter of law and outside the protection of section 425.16." *Kenne*, 230 Cal. App. 4th at 967; *see also Moore v. Rodriguez*, No. 20-cv-01481-BAS-BGS, 2021 WL 2222590, at *8 (S.D. Cal. June 2, 2021) (explaining that "California courts construing *Lefebvre* have clarified that if the litigant disputes the falsity of the police report, the *Lefebvre* exemption does not apply to bring the police report outside the scope of protection of the anti-SLAPP statute"); *accord Flatley v. Mauro*, 39 Cal. 4th 299, 320 (2006) (holding that a "defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action" only where the "defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law"). Because Lavallee disputes the falsity of his alleged statement to law enforcement, and contends that he was genuinely concerned for Traver Stine's well-being, the statement remains within the protections of the anti-SLAPP statute. Lavallee has thus satisfied his burden under the first prong of the test. *See, e.g.*, *Kenne*, 230 Cal. App. 4th at 968; *Moore*, 2021 WL 2222590 at *9; *accord Garrick v. Garrick*, No. 22-cv-04549-JST, 2023 WL 4109694, at *4 & n.2 (N.D. Cal. June 21, 2023) (finding that the defendant's "communications with the police clearly fall within the ambit of the anti-SLAPP statute" to satisfy the first prong, and rejecting the plaintiff's reliance on *Lefebvre* because there was no conclusive record that the defendant's statements constituted illegal activity but "merely a conclusory allegation that [the defendant] made a false statement to the police").

The Opposition also states that "the amended counterclaim alleges that separate and apart from Lavallee's false reporting to law enforcement, Lavallee gloated about the fact that he had

4

IMPLICIT AND LAVALLEE'S REPLY ISO MOTION TO STRIKE AND DISMISS STINE'S FIRST AMENDED COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

called 911 on Stine." Opp. 5:23-25. But this mischaracterizes Lavallee's statements. Lavallee never stated that "he had called 911 on Stine." Lavallee only stated that he had called 911 to request a wellness check on Traver Stine. *See* Amended Counterclaim ¶ 77; Request for Judicial Notice ("RJN") (Dkt. 63), Ex. B. These alleged statements do not even give rise to an inference that Lavallee engaged in illegal activity. And an inference is not enough. The *Lefebvre* exception applies only if it is uncontroverted that the defendant was engaged in illegal activity or such activity was illegal as a matter of law.

If the Opposition is also arguing that Lavallee's alleged subsequent statement to certain Implicit personnel was itself unprotected defamatory speech because it was not made to law enforcement, this argument is without merit. First, the Amended Counterclaim does not allege that the defamation claim is based on the subsequent statement. *See* Amended Counterclaim ¶¶ 74-80 (alleging Lavallee's statements to law enforcement as the basis of the defamation claim). Second, Lavallee's statement that he requested a wellness check on Traver Stine cannot be defamatory because it not false, *i.e.*, Lavallee did call 911 for a wellness check on Traver Stine. *See John Doe 2 v. Sup. Ct.*, 1 Cal. App. 5th 1300, 1312 (2016) (noting that a defamation claim requires a "provably false assertion of actual fact").

The defamation claim arises from Lavallee's act in furtherance of his constitutional right to free speech and petition. As demonstrated in the Motion and below, the Opposition does not satisfy Stine's burden of showing that the Amended Counterclaim pleads a plausible claim for defamation, much less establish a reasonable probability that it will prevail on its claim. Counterclaim Seven must be stricken, and the Court must order Stine to reimburse Lavallee for Lavallee's attorneys' fees and costs. *See* Cal. Code Civ. Proc. § 425.16(c); *Planned Parenthood Fed'n of. Am., Inc. v. Ctr. for Med. Progress*, 890 F. 3d 828, 833 (9th Cir. 2018).

**B.      The Court Should Dismiss Counterclaims One, Five And Seven**

**1.      Counterclaim One Fails To State A Claim For Promissory Estoppel**

The promissory estoppel claim must be dismissed because (1) the Amended Counterclaim does not plead a clear and unambiguous promise to never fire Stine, and (2) any reliance by Stine on a purported promise to never fire him was not reasonable. *See Granadino*

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

*v. Wells Fargo Bank, N.A.*, 236 Cal. App. 4th 411, 416 (2015). The Court has already found that Lavallee's alleged statement about not being each other's bosses is not sufficiently definitely to form a binding contract because it "provides no notice of the bounds of the supposed contract or the obligations of either party under such an agreement." Dkt, 55 ("MTD Order") 6:15-18; Opp. 12:9-13. The Opposition nevertheless asserts that the Court should look beyond the words of the actual statement and consider "the context of the history of Stine and Lavallee's relationship" which it then purports to describe. *Id*. 12:2-9, 12:14-15. The Opposition argues that if this context is considered, then the actual statements can be interpreted as "a clear understanding between Lavallee and Stine that the management of the business would continue on as it had – with the two co-founders being 50/50 with respect to the [sic] Implicit." Opp. 12:9-13. But this is not how promissory estoppel works.

As explained in the Motion, courts essentially apply the same standard to determine whether a statement is sufficiently definite to form a binding contract for purposes of breach of contract as they do to determine whether a statement is clear and unambiguous for purposes of promissory estoppel, but the promissory estoppel standard is more rigorous because extrinsic evidence may not be used. *See* Mot. 12:7-18. The Amended Counterclaim repeats the original counterclaim's breach of contract allegations but relabels the claim "promissory estoppel." The Amended Counterclaim adds a conclusory recitation of the elements of a promissory estoppel claim but adds no new factual allegations. The Court thus had the purported "context" before it when it determined that the statement was not sufficiently definite to form a binding contract not to fire Stine. If the alleged statement was not sufficiently definite even considering the purported "context," *i.e.* extrinsic evidence, then the alleged statement cannot be clear and unambiguous when the extrinsic evidence is excluded as required in considering a promissory estoppel claim. *See Garcia v. World Savings, FSB*, 183 Cal. App. 4th 1031, 1045 (2010) (explaining that "'if extrinsic evidence is needed to interpret a promise, then obviously the promise is not clear and unambiguous'" (citation omitted)).

As the Court has already explained, the alleged statement simply "appears to have been a conversation about titles, not a binding contract in any way." MTD Order 6:15-18. The

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

Amended Counterclaim itself admits that Stine **did not understand what the alleged "agreement" not to be each other's bosses and for Lavallee to be CEO meant** and thus admits that the alleged statement was not a clear and unambiguous promise not to fire Stine. As noted in the Motion, the Amended Counterclaim alleges that Stine did not know that "letting Lavallee use the CEO title would give Lavallee the ability to fire Stine" and that had Stine known, "Stine would have expressly reserved rights he had at the time of Lavallee's representations, making sure that neither partner would have the ability to remove the other from Implicit without procedures in place." Amended Counterclaim ¶ 26.

The Opposition's assertion that "there was no reason for Stine to reserve any rights" because of the "specific language" Lavallee purportedly used (Opp. 12:22-13:1), completely misses the point. It does not matter what Stine subjectively believed. The allegations in Paragraph 26 of the Amended Counterclaim are a concession that there was no clear and unambiguous promise not to fire Stine. This requires that Counterclaim One for promissory estoppel be dismissed.

The promissory estoppel claim must also be dismissed because any reliance was not reasonable. Upon Implicit's incorporation eight months after the alleged "not your boss" statement, Stine executed a written agreement acknowledging that "except as may be otherwise explicitly provided in a separate written agreement between [Implicit] and me, my Relationship with [Implicit] is and shall continue to be at-will, as defined under applicable law, meaning that either I or [Implicit] may terminate the Relationship at any time for any reason or no reason." *See* RJN, Ex. A at § 9. The Amended Counterclaim does not (because it cannot) allege the existence of a separate written agreement between Implicit and Stine altering the at-will relationship.

The Opposition asserts that Stine should not be bound by the written agreement because he does not recall signing it and would just click through documents because he found the process of signing documents through Stripe Atlas "overwhelming." Opp. 13:7-15. The Opposition also appears to assert that Stine should not be bound because something – it is unclear what – was "never highlighted for him." *Id*. These arguments are without merit. "[O]ne

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

who assents to a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument." *Madden v. Kaiser Foundation Hospitals*, 17 Cal. 3d 699, 710 (1976); *see also Rivera v. Uniqlo Cal., Inc.*, No. LA CV17-02848 JAK (JPRx), 2017 WL 6539016, at *6 (C.D. Cal. Sep. 8, 2017) (explaining that a party's failure to read or understand a contract he signs does not excuse him from the terms of the contract). To the extent the Opposition is asserting that Implicit or Lavallee should have "highlighted" the terms for Stine, that argument is also baseless. *See Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667, 1674 (1996) (explaining that "'[n]o law requires that parties dealing at arm's length have a duty to explain to each other the terms of a written contract'" (citation omitted)). The written contract expressly states Stine's status as an at-will employee who can be terminated at any time for any reason or no reason. *See* RJN, Ex. A at § 9. Any purported reliance on an alleged prior promise otherwise is manifestly unreasonable. *See Granadino*, 236 Cal. App. 4th at 418. Counterclaim One for promissory estoppel must be dismissed.

### 2. Counterclaim Five Fails To State A Claim For Waiting Time Penalties

Waiting time penalties may only be recovered if the failure to pay was "willful." Cal. Lab. Code § 203(a). A failure to pay is willful if it is intentional. *See Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (1981). In dismissing the original counterclaim's claim for waiting time penalties against Lavallee, the Court held that the counterclaim's allegation that Lavallee was the "outward-facing Chief Executive Officer" of Implicit was "too vague to support the kind of personal liability Stine is trying to show," and that the allegation that Lavallee "willfully failed to pay Stine all his earned wages upon termination for a total of 5 days" was conclusory. MTD Order 7:19-24. The Amended Counterclaim attempts to address Lavallee's involvement in the payroll process but does not address the conclusory assertion of willfulness at all. In fact, the Amended Counterclaim actually deletes the willfulness allegation entirely as to Lavallee ***and*** Implicit and thus fails to state a claim for waiting time penalties against either. *See* Cal. Lab. Code § 203(a).

The Opposition asserts that the deletion of the willfulness allegation is immaterial

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

because the Amended Counterclaim's factual allegations "demonstrate that the actions taken by Lavallee were 'willful.'" Opp. 13:19-25. The Opposition identifies three allegations that purportedly establish willfulness: "(a) Lavallee made the sole decision to terminate Stine and (b) the other employees with access to payroll told Stine that they did not know about his termination before it happened, and (c) at the time of the termination, it would have impossible [sic] to have wages issued to Stine in a timely manner." *Id.* The first two allegations at most support an inference that Lavallee had some involvement in the payment process but have no bearing on whether the alleged failure to timely pay Stine was intentional. The third allegation is conclusory and must be disregarded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The Amended Counterclaim alleges that because Stine was terminated "after Eastern Time business hours on a Friday[, . . .] it was impossible for Stine to be timely paid his final wages due to Lavallee's actions as there was no way to get payment to him that same day without there being preparation ahead of time." The Amended Counterclaim contains no factual allegations supporting this assertion. Stine was allegedly terminated some time after 5pm Eastern Time, *i.e.* after 2pm Pacific Time. Implicit therefore had up to 10 hours to complete the payment to Stine. During those 10 hours, however, Stine seized control of Implicit's computer systems, locked Lavallee out, and took Implicit's computer systems offline. *See* MTD Order 8:15-19.

The Opposition attempts to downplay Stine's responsibility for the alleged delay in his final paycheck by asserting that Stine has admitted to seizing control of Implicit's Google Admin system and locking Lavallee out of that system completely but that Stine has not admitted to tampering with Implicit's payroll capabilities or systems. *See* Opp. 14:28-15:7. Stine's actions, however, caused Implicit to descend into chaos and precluded Lavallee and Implicit from conducting any business activities. Lavallee had no access to his Implicit email account or any Implicit files to conduct any business on Implicit's behalf, including processing a payment to Stine. Implicit did not know what Stine was doing to its computer systems or the extent of the damage Stine had caused during Stine's takeover. The email Lavallee sent to Stine from Lavallee's personal email account asking Stine to restore Lavallee's access and to stop committing any further computer fraud reflects a company completely paralyzed by Stine's

actions. Lavallee's late evening email copied all Implicit personnel who were assisting with Stine's offboarding process and were trying to address Stine's breach of Implicit's computer systems. *See* RJN, Ex. B.

The Opposition essentially contends that Stine should still be entitled to recover from Implicit and Lavallee despite Stine's illegal activity because Implicit and Lavallee should have found a way around Stine's takeover over of Implicit's computer systems and disabling of Lavallee's access to ensure Stine was timely paid. This contention is nonsensical and unsupported by the law. Waiting time penalties only attach if the failure to pay is willful, *i.e.* intentional. *See* Cal. Lab. Code § 203(a); *Barnhill*, 125 Cal. App. 3d at 7. Waiting time penalties are not available if the terminated employee takes actions that prevent the company from making the payment. Counterclaim Five must be dismissed as to Lavallee and Implicit.[1] *See* Cal. Labor Code §§ 203(a), 558.1(a).

### 3. Counterclaim Seven Fails To State A Claim For Defamation

The Amended Counterclaim's defamation claim is based on misleading omissions of key facts and conclusory assertions that contradict the Amended Counterclaim's factual allegations, as well as Stine's own admissions. *See* Mot. 15:22-19:5.

The Amended Counterclaim alleges that Lavallee "made statements to a 911 operator indicating that Stine may physically harm his wife." Amended Counterclaim ¶ 74. A communication between a person and a law enforcement agency is privileged, however, unless "the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report." Cal. Civ. Code § 47(b)(5).

The Amended Counterclaim's factual allegations indicate that Stine had often made

---

[1] Implicit did not move to dismiss the waiting time penalty claim in the original counterclaim because the allegations, though conclusory, were potentially sufficient to state a claim against Implicit. By entirely deleting the willfulness assertion in the Amended Counterclaim and not adding any facts supporting a finding of willfulness, however, Stine effectively concedes that he cannot plead an element of the claim against Lavallee or Implicit. Implicit therefore joined Lavallee in this Motion.

IMPLICIT AND LAVALLEE'S REPLY ISO MOTION TO STRIKE AND DISMISS STINE'S FIRST AMENDED COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

threats of self-harm or harm to others and had recently acted on those threats; that Traver Stine did not correct Lavallee in any way when Lavallee informed her that he now realized that he needed to take Stine's previous threats seriously; that Stine had requested and remained on an extended leave of absence due to his recent behavior; that Stine was suddenly engaged in erratic behavior immediately after his termination; and that Traver Stine's credentials were being used to commit computer crimes against Implicit's systems while Traver Stine herself was radio silent and unreachable. *See* Mot. 15:22-19:5. Lavallee's request for a wellness check on Traver Stine was thus well-founded based on the information known to Lavallee and therefore not knowingly false or made with reckless disregard for the truth or falsity of the request. *See McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 114 (2007) (explaining the reckless disregard standard for defamation claims); *Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71, 90 (2007) (same).

The Opposition does not address these facts at all. It instead simply block quotes every single allegation in the Amended Counterclaim's defamation claim (most of which are conclusory and inconsistent with the actual facts and Stine's admissions), repeatedly states that the Court must accept the allegations as true, concludes that Lavallee acted with reckless disregard for truth or falsity, and declares that the Amended Counterclaim has plausibly pled a claim for defamation. *See* Opp. 8:14-9:25, 15:28-17:8. But as the Supreme Court has explained, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663.

The Opposition's only tangential response to the facts and admissions identified in the Motion regarding the basis of Lavallee's concern for Traver Stine's safety is a mischaracterization of the Motion's description of the events on the evening of June 14, 2024. The Opposition asserts that "Lavallee somehow equates the fact that Stine locked Lavallee out of the Google Admin account with the fact that Stine was at risk of harming his wife." Opp. 7:24-26. The "somehow" is clearly explained in the Motion and entirely ignored by the Opposition. *See* Mot. 17:14-20:5. The Amended Counterclaim alleges that Stine had "always" made threats of self harm and harm to others but that Lavallee had ignored the threats. Amended

11

Counterclaim ¶ 16. On May 10, 2024, however, in response to negative feedback Traver Stine had provided to Stine regarding his behavior toward other employees, Stine acted on those threats and suffered a purported "medical crisis" that required medical attention. *Id.* ¶ 15. Lavallee then emailed Traver Stine the following week and informed her that he now realized that he needed to take Stine's previous threats of self harm and harm to others seriously. *Id.* ¶ 16. The Amended Counterclaim does not allege that Traver Stine corrected Lavallee's assessment of the ongoing risk of Stine's harming himself or others in any way. Instead, the Amended Counterclaim alleges that Stine remained on an extended "medical leave" from Implicit due to his ongoing "medical crisis." *Id.* ¶¶ 17-18. Immediately after being notified of his termination just one month later and while still on leave due to the "medical crisis," Stine began behaving erratically and used Traver Stine's credentials to breach Implicit's computer systems, restore Stine's access, lock Lavallee out, and tout his takeover of Implicit and its computer systems to all Implicit employees. *Id.* 4:3-12, 4:19-22, ¶ 76. As no one had heard from Traver Stine, Lavallee was concerned that the negative employment news had again triggered Stine to act on his previous violent ideations and feared for Traver Stine's safety.

The Opposition asserts that Lavallee's assessment of the situation is just "Lavallee's contention" but that "Stine and his wife felt that Lavallee used law enforcement as his personal concierge to harass them and then gloat about it." Opp. 8:1-2. ***But all that matters is what Lavallee himself subjectively believed.*** The reckless disregard test is an extremely high standard. The allegations must "permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Lack of due care is not the measure of liability, nor is gross or even extreme negligence." *Christian Research Inst.*, 148 Cal. App. 4th at 90 (citations and internal quotation marks omitted). "The reckless disregard test is not a negligence test measured by [what] a reasonably prudent person would have [done]" but instead "must permit the conclusion that the defendant actually had a high degree of awareness of . . . probable falsity." *McGarry*, 154 Cal. App. 4th at 114 (citations and internal quotation marks omitted). The actual facts and admissions before this Court provide ample support for Lavallee's subjective belief that Traver Stine's safety was at risk.

Grellas Shah LLP
20400 Stevens Creek Blvd, Suite 280
Cupertino, CA 95014

12

Moreover, the Opposition's assertion that "Stine and his wife felt that Lavallee used law enforcement as his personal concierge to harass them" (Opp. 8:1-2) is contradicted by statements Traver Stine made to Implicit on June 16, 2024 – just two days **after** the wellness check. Traver Stine accused Lavallee of "knowingly and neglectfully put[ting] [her] safety and emotional well-being at risk" by requesting that she provide performance feedback to her own husband in her role as Implicit's HR manager on May 10, 2024 – the event that precipitated Stine's purported "medical crisis" and violent actions – because Lavallee was aware that the meeting would be in person. Reply Request for Judicial Notice ("Reply RJN"), Ex. 1 at 4. She asserted that "Robin was aware of the things Jake was saying and did not let me know ahead of time of any safety concerns for Jake or myself while still requesting that I conduct the performance feedback." *Id*. She further asserted that "[a]s the employer, Robin has a duty of care to ensure a safe working environment for the employees. It was his responsibility to take any appropriate action. Robin did not take any steps to mitigate this risk and instead put me at risk." *Id*. Traver Stine thus admitted in the immediate aftermath of Stine's termination and Lavallee's request for a wellness check that she believed Stine posed a risk to her safety in light of his previous threats of harm to others and that Lavallee should have anticipated that Stine's response to negative information regarding his employment could be volatile and violent. These statements and accusations are wholly inconsistent with the Opposition's assertion that Stine and Traver Stine believed Lavallee's request for a wellness check was solely to harass them and that Lavallee had acted with reckless disregard for the truth or falsity of his alleged statements to the 911 operator. Traver Stine's statements validate that Lavallee's fears for her safety that motivated the wellness check request were reasonable because they mirror her own purported fear of her husband.

The Amended Counterclaim does not and cannot plead a defamation claim against Lavallee because Lavallee's statements to law enforcement were well-founded based on the information before him and thus privileged. *See* Cal. Civ. Code § 47(b)(5). Counterclaim Seven must therefore be dismissed. Moreover, because Counterclaim Seven arises from an act in furtherance of Lavallee's right to petition and free speech (*see supra* § II.A), the claim must be stricken under California's anti-SLAPP statute and Stine must be ordered to pay Lavallee's

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

13

IMPLICIT AND LAVALLEE'S REPLY ISO MOTION TO STRIKE AND DISMISS STINE'S FIRST
AMENDED COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

attorneys' fees and costs. *See* Cal. Code Civ. Proc. §§ 425.16(b)-(c).

**C.     Stine's Confidential Information And Invention Assignment Agreement (the "CIIAA") Is Properly Subject To Judicial Notice**

Courts may take judicial notice of any matter not subject to reasonable dispute because it "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot ***reasonably*** be questioned." Fed. R. Evid. 201(b) (emphasis added). The Opposition's challenge to the request for judicial notice of the CIIAA (*see* Opp. 17:11-18:5) reflects a misunderstanding of the law.

The CIIAA may be considered in ruling on the motion to dismiss even if it is not referenced in the Amended Counterclaim. *See Shruhan v. Apple Inc*., No. 5:22-cv-05498-EJD, 2023 WL 6391497, at *3 (N.D. Cal. Sep. 29, 2023) (explaining that in ruling on a motion to dismiss, a court may consider not just documents incorporated by reference into a complaint but also matters which are subject to judicial notice). Moreover, Stine's purported challenge to the authenticity of the CIIAA is not sufficient to overcome the request for judicial notice because his challenge does not ***reasonably*** call into question the authenticity of the CIAA. *See* Fed. R. Evid. 201(b). The CIIAA is already in the Court's files and has been authenticated by Lavallee as the CEO of Implicit. *See* Dkt. 17-2, Ex. E. And in its Order Granting Preliminary Injunction, the Court found Stine's assertion that he did not recall signing the CIIAA "unpersuasive" and held that Implicit is likely to prevail on its claim against Stine for breach of the CIIAA. *See* Dkt. 43 at 17:4-18:16. Indeed, Stine concedes in the Opposition that he may have signed the document but does not know because he found the process of signing documents through Stripe Atlas "overwhelming" and would just click through the documents. *See* Opp. 13:7-15. Because the CIIAA's accuracy is not subject to reasonable dispute and the CIIAA is highly relevant to the matter before this Court, it can and should be considered in ruling on the motion to dismiss. *See Shruhan*, 2023 WL 6391497 at *3.

**III.    CONCLUSION**

Based on the foregoing, Implicit and Lavallee respectfully request that the Court strike Counterclaim Seven; dismiss Counterclaims One, Five and Seven with prejudice; and award

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014

14

Lavallee his attorneys' fees and costs.

Respectfully submitted,

Dated: December 24, 2024                    GRELLAS SHAH LLP


                                  By:  /s/ *Dhaivat H. Shah*
                                       Dhaivat H. Shah, Esq.
                                       Attorneys for Counterdefendants
                                       IMPLICIT CONVERSIONS, INC. and ROBIN
                                       LAVALLEE

IMPLICIT AND LAVALLEE'S REPLY ISO MOTION TO STRIKE AND DISMISS STINE'S FIRST
AMENDED COUNTERCLAIM – Case No. 3:24-cv-03744-WHO

GRELLAS SHAH LLP
20400 STEVENS CREEK BLVD, SUITE 280
CUPERTINO, CA 95014