UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPLICIT CONVERSIONS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>JACOB STINE, et al.,<br><br>    Defendants. | Case No. 24-cv-03744-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 100 |

Plaintiff Implicit Conversions Inc. ("Implicit") asserts several claims against defendants Jacob Stine and Juanita Traver Stine (who are married), and a newly added defendant, Project Crayon (which is a business jointly owned by the married couple). Among them are a claim for violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq*. ("CUTSA") (against all defendants), a claim for Tortious Interference with Prospective Economic Advantage (against Stine and Project Crayon), and a claim for violation of California's unfair competition law, California Business and Professions Code § 17200 ("UCL") (against only Project Crayon). Stine and Project Crayon have moved to dismiss the tortious interference and UCL claims as preempted by the CUTSA claim. The tortious interference claim is only preempted in part. The UCL claim, as pleaded, is entirely preempted. The motion is GRANTED in part and DENIED in part. Implicit may amend its pleadings consistent with the Order below.[1]

**BACKGROUND**

The factual background of this case is well-trod ground. I incorporate by reference the

---

[1] After considering the parties' submissions, I determined that this issue was suitable for resolution without oral argument and vacated the hearing previously set for August 13, 2025, per Civ. L. R. 7-1(b).

more complete background laid out in prior orders. Dkt. No. 55 (Order Granting Motion to Dismiss), Dkt. No. 74 (Order Granting in Part and Denying in Part Motions to Dismiss and Denying Motions to Strike). The crux of Implicit's allegations are that Stine, with the assistance of his wife, Traver Stine, attacked the couple's former employer, Implicit, after Stine was released from the company following increasingly erratic behavior. After his termination (which led to his exclusion from Implicit's accounts), Stine used Traver Stine's login credentials to access Implicit's computer systems without authorization and downloaded "vast quantities of Implicit's trade secrets," "deleted information from Implicit's computer system, and tampered with other systems which caused them to go offline." First Amended Complaint ("FAC") [Dkt. No. 93] ¶ 30.

The FAC asserts some new allegations and adds a new defendant, Project Crayon, which is a company that Stine and Traver Stine apparently founded shortly after their split from Implicit. In the FAC, Implicit adds that Stine's unauthorized access to Implicit's computer systems and the actions he took "created a security event which caused Sony Interactive Entertainment ('SIE'), Implicit's then-largest customer, to develop concerns about Implicit's ability to maintain the security of SIE's proprietary and confidential information." FAC ¶ 49. Implicit says that this "seriously interfered with Implicit's commercial relationship with SIE." *Id.* Stine and Project Crayon, his "newly-formed company" that provides similar services to Implicit, *see* FAC ¶ 3, "subsequently solicited SIE by, in part, exploiting SIE's concerns about Implicit's computer security caused by Stine's own unlawful trespass, to persuade SIE to non-renew its contract with Implicit and transfer its business to Project Crayon." FAC ¶ 51. SIE did not renew its contract with Implicit and instead contracted with Project Crayon for the "same services" it once received from Implicit. *Id.* ¶¶ 48, 53. Implicit claims that this cost it revenue. *Id.* ¶ 155.

Stine and Project Crayon have moved to dismiss Implicit's claims for tortious interference with prospective economic advantage and unfair competition in violation of California's Business and Professions Code § 17200 because they are preempted by Implicit's CUTSA claim.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim for which relief may be granted. Rule 12(b)(6) requires dismissal when a

complaint lacks either a "cognizable legal theory" or "sufficient facts alleged" under such a theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

When evaluating a motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "allegations in a complaint ... may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (citations omitted). The Court may dismiss a claim "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

## DISCUSSION

Defendants argue that Implicit's tortious interference and UCL claims are preempted by CUTSA because they are predicated on the same core factual allegations underlying Implicit's CUTSA claim. As pleaded, the tortious interference claim is partly preempted, and the UCL claim is entirely preempted.

### A. CUTSA

The California Uniform Trade Secrets Act ("CUTSA") was intended "to occupy the field of trade secret liability to the exclusion of other civil remedies." *Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19-CV-05611-PJH, 2020 WL 513287, at *14 (N.D. Cal. Jan. 31, 2020) (citing *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 234 (2010)). It "preempts common law claims that are 'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.' " *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App.

3

4th 939, 958 (2009) (citation omitted).

CUTSA supersedes other claims even when they seek "something more" or "require[] proof of additional elements not necessary to a trade-secret misappropriation claim." *EchoSpan, Inc. v. Medallia, Inc.*, No. 22-CV-1732-NC, 2022 WL 18539352, at *2 (N.D. Cal. July 19, 2022) (citing *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 958). "If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA claim preempts the other claim." *Arthur J.*, 498 F.Supp.3d at 1174 (citation omitted). The "determination of whether a claim is based on trade secret misappropriation is largely factual." *K.C. Multimedia*, 171 Cal. App. 4th at 954.[2]

Courts in this District have repeatedly found that they may decide the issue of supersession at the pleading stage. *See EchoSpan*, 2022 WL 18539352, at *2; *Acorn Bay v. CamelBack Products, LLC*, No. 20-cv-05214-WHA, 2020 WL 7664450, at *2 (N.D. Cal., Dec. 24, 2020); *Five Star Gourmet Foods*, 2020 WL 513287, at *14. "At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017). In other words, "[t]o survive preemption, [a plaintiff's] claims must 'allege wrongdoing that is materially distinct from the wrongdoing alleged in a CUTSA claim.'" *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018) (citation omitted).

### B. Implicit's claims

#### 1. CUTSA claim (against all defendants)

In the CUTSA charge, Implicit claims that after Stine was terminated, with Traver Stine's help he accessed, used, and disclosed its trade secrets, that Project Crayon misappropriated the same trade secrets by acquiring and using them, and that Stine took advantage of that misappropriation to "induce SIE to non-renew its contract with Implicit and enter into a new

---

[2] In *K.C. Multimedia, Inc.*, the California Court of Appeal held that unfair competition law and tortious interference claims were superseded where "the gravamen of the wrongful conduct asserted here is the misappropriation of trade secrets." *Id.* at 960-62.

4

1  contract with Project Crayon." FAC ¶ 103. Implicit contends that this inducement came about
2  because Stine's misappropriation of Implicit's Trade Secrets "created a security event that
3  seriously interfered with Implicit's relationship with SIE by creating concerns for SIE about
4  Implicit's ability to maintain the security of SIE's proprietary and confidential information." *Id.* ¶
5  104.

### 2. Tortious Interference (against Stine and Project Crayon)

In the Tortious Interference with Prospective Economic Advantage charge, Implicit claims that Implicit and SIE were in an economic relationship through which Implicit provided services to SIE for retro videogame emulators. *Id.* ¶ 135. It alleges that "Stine's unauthorized and unlawful access to Implicit's protected computer systems and misappropriation of Trade Secrets created a security event that seriously interfered with Implicit's relationship with SIE by creating concerns for SIE about Implicit's ability to maintain the security of SIE's proprietary and confidential information." *Id.* ¶ 142. Further, Implicit claims that "Stine exploited SIE's concerns over Implicit's computer security in order to further degrade the relationship between Implicit and SIE resulting in SIE's decision to not renew its contract with Implicit and to instead, through Stine's solicitation, contract with Project Crayon," and that "Stine and Project Crayon also intentionally and wrongfully interfered with Implicit's prospective economic advantage from its commercial relationship with SIE by using the Trade Secrets in the bidding process to obtain the contract with SIE." *Id.* ¶¶ 143-144.

To the extent that Implicit alleges that "Stine's unauthorized and unlawful access to Implicit's protected computer system" "created a security event that seriously interfered with Implicit's relationship with SIE," and that Stine then "exploited SIE's concerns" over that security breach to "degrade" the relationship between SIE and his former employer, and poach that business for his new company, Project Crayon, the tortious interference claim is not preempted. This asserts wrongdoing separate from Implicit's CUTSA claim.

CUTSA preempts common law claims that "are based on the same nucleus of facts as the misappropriation of trade secrets claim." *Digital Envoy*, 370 F. Supp. 2d at 1035; *see also Chang v. Biosuccess Biotech Co., Ltd.*, 76 F. Supp. 3d 1022, 1041 (C.D. Cal. 2014) ("[Section] 3426.7

implicitly preempts alternative civil remedies based on trade secret misappropriation."). Thus, the "supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Waymo*, 256 F. Supp. 3d at 1062. A cause of action for intentional interference with prospective economic advantage requires:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendants knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*First Advantage Background Services Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 934 (N.D. Cal. 2008).

In *Aavid Thermalloy LLC v. Cooler Master Co., Ltd.*, the court held that CUTSA did not preempt a common law claim for tortious interference because counter-plaintiff Cooler Master alleged wrongful acts both that amounted to misappropriation of trade secrets information, but also that were distinct from such misappropriation. No. 17-CV-05363-JSW, 2018 WL 11348438, at *3 (N.D. Cal. June 15, 2018). That case is instructive.

There, Cooler Master asserted counterclaims under the CUTSA, the UCL, and for tortious interference. Cooler Master alleged that its competitor, Aavid, provides "thermal management solutions and independent testing services" to determine whether products comply with certain industry standards to third party customers. In 2016, a third-party customer of Cooler Master hired Aavid to conduct performance testing of "vapor chamber" product samples, including prototypes that Cooler Master had made. While conducting the testing, Aavid "performed unauthorized X-Ray imaging of the product samples, which allowed Aavid to obtain pictures of the samples' internal designs and architecture"; this was a problem because the product samples contained trade-secret information. *Aavid*, at *1. Later, Aavid acquired and recorded patents at issue in the case with the U.S. Patent and Trademark Office, and sent Cooler Master a warning letter. It then "informed Third-Party Customer, other customers, and potential customers of Cooler Master that its products infringed on Aavid's newly acquired patents." *Id.* Cooler Master alleged that "Aavid's allegations of patent infringement were designed to disrupt the demand for

6

Cooler Master's products and to interfere with Cooler Master's commercial relationships with Third-Party Customer and other customers in the market." *Id.*

Aavid moved to dismiss Cooler Master's tortious interference and UCL claims as preempted by its CUTSA claim, arguing that all three claims arose out of the same nucleus of fact. The Hon. Jeffrey S. White held that the counter-plaintiff's CUTSA claim did not preempt their tortious interference claim because "Cooler Master alleges wrongful acts, including unauthorized X-Ray imaging, that amount to misappropriation of trade secret information, but also alleges wrongful acts distinct from such misappropriation." *Id.* at *3. Judge White explained that "once the Court removes the factual allegations showing that Aavid conducted unauthorized X-ray imaging thereby misappropriating confidential information, the Court must ascertain whether the remaining factual allegations can support other causes of action." *Id.* (citing *Waymo*, 256 F. Supp. 3d at 1062). In *Aavid*, in addition to alleging that Aavid misappropriated its trade secret information, Cooler Master also alleged that Aavid "made 'allegations to the Third-Party Customer and to other customers and potential customers of Cooler Master that its products infringed Aavid's newly-acquired patents-in-suit ... although untrue ... which has caused substantial economic harm to Cooler Master[.]'" *Id.* (quoting Counter-Claim). Judge White also found that those independent allegations regarding Aavid's false statements to third parties about patent infringement were "distinct from the allegations that Aavid misappropriated trade secret information," *id.*, meaning that Cooler Master's claim for violation of CUTSA did not preempt its tortious interference claim.

Here, as in *Aavid*, Implicit alleges wrongful acts that amount to misappropriation of trade secret information, which would be preempted, and also alleges wrongful acts independent from that misappropriation, which are not. It alleges that "Stine's unauthorized and unlawful access to Implicit's protected computer systems *and* misappropriation of trade Secrets created a security event that seriously interfered with Implicit's relationship with SIE." FAC ¶ 142. It goes on to allege that "Stine exploited SIE's concerns over Implicit's computer security in order to further degrade the relationship between Implicit and SIE, resulting in SIE's decision to not renew its contract with Implicit and to instead, through Stine's solicitation, contract with Project Crayon."

7

*Id.* ¶ 143.

Stine's unauthorized and purportedly unlawful access of Implicit's computer systems after his termination serves as the independent ground for Implicit's tortious interference claim that allows it to survive CUTSA preemption. As discussed in prior orders, Implicit is also bringing a claim for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq. FAC ¶¶ 55-62. Acts of trespass that violate the CFAA are independent from trade secrets claims. *See U.S. v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (explaining that the CFAA prohibits unlawful "access" to computer information, it does not prohibit misuse or misappropriation). To the extent that Implicit's tortious interference claim asserts that Stine's unlawful access to its computer systems and subsequent actions through Project Crayon to take business away from Implicit by drumming up security concerns arising from that unlawful access, that is an independent wrongful act separate from the defendants' alleged trade secrets misappropriation. It is not preempted by CUTSA.

### 3.  UCL claim (against Project Crayon)

In the unfair competition charge, brought solely against Project Crayon, Implicit claims that Project Crayon "intentionally and wrongfully interfered with Implicit's prospective economic advantage from its commercial relationship with SIE by using the Trade Secrets in the bidding process to obtain the contract with SIE." FAC ¶ 153.

As discussed, "CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret." *Waymo LLC v. Uber Technologies, Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017); *see also Chang v. Biosuccess Biotech Co., Ltd.*, 76 F. Supp. 3d 1022, 1041 (C.D. Cal. 2014) ("[Section] 3426.7 implicitly preempts alternative civil remedies based on trade secret misappropriation."). And CUTSA preempts common-law claims that "are based on the same nucleus of facts as the misappropriation of trade secrets claim." *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005); *see also K.C. Multimedia Inc. v. Bank of America Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 961 (2009) ("[C]ommon law or even statutory unfair competition may be preempted ... if it relies on the same facts as the misappropriation claim.").

Here, Implicit's UCL claim relies on the same facts as its CUTSA claim and is thus preempted. Implicit insists that it alleges an independent basis for liability even after trade secret misappropriation allegations are stripped away, but I am not persuaded. As of now, Implicit's UCL claim is limited to asserting that "Project Crayon intentionally and wrongfully interfered with Implicit's prospective economic advantage from its commercial relationship with SIE by using the Trade Secrets in the bidding process to obtain the contract with SIE." FAC ¶ 153. This overlaps almost exactly with its CUTSA claim.

Implicit may be able to amend this claim to focus on Project Crayon's allegedly wrongful actions that are separate from its alleged trade secret misappropriation. For now, CUTSA supersedes any UCL remedy sought under this theory of liability because Implicit's UCL claim, as pleaded, arises entirely out of the same facts that undergird its CUTSA claim. *See Waymo, LLC*, 250 F. Supp. 3d at 1041. The motion is GRANTED, with leave to amend.

## CONCLUSION

For the foregoing reasons, the motion is GRANTED in part and DENIED in part. Any amended complaint shall be filed within 20 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: August 11, 2025



William H. Orrick
United States District Judge

9