GRELLAS SHAH LLP
DHAIVAT H. SHAH, ESQ. (SBN 196382)
(ds@grellas.com)
DAVID I. SIEGEL, ESQ. (SBN 264247)
(dsiegel@grellas.com)
JOSEPH B. PALMIERI, ESQ. (SBN 31275)
(jp@grellas.com)
550 California Street, Suite 1040
San Francisco, CA 94104
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

Attorneys for Plaintiff and Counterdefendant
IMPLICIT CONVERSIONS, INC. and
Counterdefendant ROBIN LAVALLEE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IMPLICIT CONVERSIONS, INC, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JACOB STINE, an individual, JUANITA TRAVER STINE, an individual, PROJECT CRAYON LLC, a California Limited Liability Corporation, and DOES 1-10, inclusive,<br>Defendants.<br><br>JACOB STINE, an individual; JUANITA TRAVER STINE, an individual,<br><br>Counterclaimants,<br><br>vs.<br>IMPLICIT CONVERSIONS, INC, a Delaware Corporation; and ROBIN LAVALLEE, an individual,<br><br>Counterdefendants. | Case No.  3:24-cv-03744-WHO<br><br>**NOTICE OF MOTION AND MOTION FOR SANCTIONS**<br><br>Hearing Date:  September 17, 2025<br>Time:  2:00 PM<br>Judge:  William H. Orrick<br>Courtroom:  2 - 17th Floor<br><br>Date Action Filed: June 21, 2024<br>Trial Date: December 1, 2025<br><br>JURY TRIAL DEMANDED |

## NOTICE OF MOTION AND MOTION

**TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 17, 2025, at 2:00 PM, or as soon thereafter as may be heard, in Courtroom 2 on the 17th Floor of the above-entitled Court, plaintiff and counterdefendant Implicit Conversions, Inc. ("Implicit") and counterdefendant Robin Lavallee ("Lavallee") will and hereby move under Rule 37(e) of the Federal Rules of Civil Procedure, for sanctions against defendants and counterclaimants Jacob Stine's ("Stine") and Juanita Traver Stine ("Traver Stine").

Specifically, Implicit and Lavallee seek an order finding that Stine and Traver Stine spoliated critical electronically stored information and that Implicit is entitled to an adverse inference jury instruction.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Joseph B. Palmieri, the accompanying Declaration of Robin Lavallee, the accompanying Declaration of Michael Kunkel, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: August 11, 2025                    GRELLAS SHAH LLP


                                   By:   _/s/ Dhaivat H. Shah_
                                         Dhaivat H. Shah, Esq.
                                         Attorneys for Plaintiff and Counterdefendant
                                         IMPLICIT CONVERSIONS, INC. and
                                         Counterdefendant ROBIN LAVALLEE

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

## **TABLE OF CONTENTS**

Page (s)

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.      INTRODUCTION .............................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................................. 2

III.    ARGUMENT ...................................................................................................... 8

        A.      Legal Standard ........................................................................................ 8

        B.      Stine Spoliated Electronically Stored Information Stored on Reynard ........... 8

        C.      Stine and Traver Stine Spoliated Text Messages Evidencing Stine's
                Unlawful Intrusion Into The Implicit Computer Systems ............................ 10

        D.      The Court Should Order Adverse Inference Jury Instructions........................ 14

IV.     CONCLUSION ................................................................................................... 15

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

MOTION FOR SANCTIONS
CASE NO. 3:24-cv-03744-WHO

## TABLE OF AUTHORITIES

**CASES** Page (s)

*Apple Inc. v. Samsung Elecs. Co.,*
    881 F. Supp. 2d 1132 (N.D. Cal. 2012) ....................................................................14

*Compass Bank v. Morris Cerulo World Evangelism,*
    104 F. Supp. 3d 1040 (S.D. Cal. 2015)....................................................................12

*Dish Network L.L.C. v. Jadoo TV, Inc.,*
    2022 WL 11270394 (N.D. Cal. Oct. 19, 2022)................................................... 8, 14

*Matthew Enter., Inc. v. Chrysler Grp. LLC,*
    2016 WL 2957133 (N.D. Cal. May 23, 2016) ........................................................ 8

*Residential Funding Corp. v. DeGeorge Fin. Corp.,*
    306 F.3d 99 (2d Cir.2002)......................................................................................14

*RG Abrams Ins. v. L. Offs. of C.R. Abrams,*
    342 F.R.D. 461 (C.D. Cal. 2022) .....................................................................14, 15

## STATUTES

Federal Rules of Civil Procedure:

    37(e) ...................................................................................................................*passim*

    37(e)(2).................................................................................................................8

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiff and counterdefendant Implicit Conversions, Inc. ("Implicit") requests that the Court grant Implicit's motion for sanctions against defendants and counterclaimants Jacob Stine ("Stine") and Juanita Traver Stine ("Traver Stine") in the form of adverse inference jury instruction for Stine and Traver Stine's spoliation of critical electronically stored information.

## I.    INTRODUCTION

Stine and Traver Stine blatantly spoliated critical electronically stored information to which Implicit is entitled to establish Stine and Traver Stine's violations of federal and state computer fraud laws and federal and state trade secrets laws. In both of these instances of spoliation, Stine and Traver Stine either misled this Court or gave false deposition testimony to take full advantage of their destruction of evidence and to inhibit Implicit's ability to fully prove its case.

In particular, during oral deposition, Stine has admitted to "wiping" an Implicit data center and build machine, referred to by Implicit as "Reynard," that contains all of Implicit proprietary source code through June 2024—the very Implicit trade secret and confidential information that Stine is alleged to have misappropriated.  Implicit sought a preliminary injunction from the Court ordering, among other things, for Stine to return Reynard.  The Court denied that portion of the requested relief based on Stine's misrepresentations that Reynard was a personal computer and contained Stine's personal information.  Since then, Stine has admitted that Reynard is Implicit's build machine and that he never used it for personal use.  It was during the pendency of the preliminary injunction in July or August of 2024 that Stine "wiped" Reynard.  Wiping Reynard not only destroyed evidence of the Implicit trade secrets and confidential information that Stine is alleged to have stolen but further deprives Implicit of the opportunity to establish that Stine has further used the trade secrets and confidential information following the initial misappropriation.

Similarly, Traver Stine and Stine are both alleged to have violated state and federal computer fraud laws through Stine's unlawful access to the Implicit computer systems following Stine's termination from Implicit.  Stine and Traver Stine have admitted that Traver

1

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

Stine provided Stine her Implicit credentials in order for Stine to unlawfully access Implicit's computer systems. It appears that Stine made this request via text message and Traver Stine responded via text message. They then deleted this text conversation. To take advantage of their spoliation of this critical evidence, they then lied and obfuscated the truth at their depositions. Stine first testified that the entire exchange was made verbally. He later corrected this testimony to say that the communications were via text, but his attorneys instructed him not to discuss the content of those texts due to spousal privilege. At Traver Stine's deposition, the same attorneys allowed *her* to testify on these communications, despite their prior (frivolous) spousal privilege objections. Traver Stine testified that the communications were via text, but that she had no knowledge of why Stine needed the password.

It was only after Implicit received an order from the Court for Implicit to get a forensic image of the phones (with the potential risk that Implicit would recover more of the truth about the text exchange) that Stine admitted, in a second deposition, that the text messages included the fact that he needed Traver Stine's credentials to access the Implicit system because his access had been revoked following his termination.

Accordingly, Implicit respectfully requests that the Court determine that Stine intentionally spoliated evidence on Reynard and that Stine and Traver Stine spoliated evidence of the communications surrounding their unlawful trespass of the Implicit computer systems. Implicit further requests and that the Court issue adverse inference jury instructions that Stine and Traver Stine destroyed evidence to which Implicit is entitled.

## II.   FACTUAL BACKGROUND

This lawsuit is about a civil conspiracy by Stine, Implicit's former Chief Technology Officer, and his spouse, Traver Stine, also a former Implicit employee, to trespass on Implicit's computer systems, damage those systems, and abscond with substantial quantities of Implicit trade secrets and confidential and proprietary information. Implicit sued Stine and Traver Stine on June 21, 2024, for, among other things, violations of the Computer Fraud and Abuse Act and the Defend Trade Secrets Act and their state law analogs.

Here is a brief background.

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

Robin Lavallee ("Lavallee") and Stine co-founded Implicit Conversions, LLC, the predecessor of Implicit, in 2019. First Amended Complaint ("FAC") at ¶¶ 13, 14. Lavallee was Implicit's Chief Executive Officer.

Implicit terminated Stine's employment on June 14, 2024, and immediately revoked his access to Implicit's computer systems and his authorization to access them. Declaration of Robin Lavallee ("Lavallee Decl.") ¶¶5-6. Traver Stine remained an Implicit employee and continued to have access to Implicit's systems.

On the evening of June 14, 2024, Traver Stine's credentials were used to access Implicit's computer systems and restore Stine's access rights. *Id.* ¶7. Stine then used his access to Implicit's computer systems to disable Lavallee's access to those systems and the access of other key Implicit management personnel. *Id.* Stine subsequently used Implicit's email system to send a message to all Implicit employees, proclaiming that he had regained access to Implicit's computer systems and disabled Lavallee's access. *Id.* ¶8.

Stine also made unauthorized copies of vast quantities of Implicit's confidential and proprietary information and its trade secrets. FAC ¶29. Among other things, Stine has copies of all of Implicit's source code, business development opportunity plans and strategic initiatives, information about ongoing customer negotiations, software tools and assets, confidential customer contracts, internal budgets and forecasting, and the core methods and know-how of Implicit's technology. *Id.* Stine also deleted information from Implicit's computer systems and tampered with other systems in a manner that brought them offline. *Id.* ¶30. Implicit subsequently regained control of its computer systems from Stine, and revoked access from Stine and Traver Stine.

On June 18, 2024, Implicit demanded that Stine return all physical hardware and digital files held at his La Honda, California home office. Lavallee Decl. ¶10. This demand included the return of Implicit's most powerful data center, referred to at Implicit as "Reynard." *Id.* Prior to these events, Implicit maintained three data centers: one in Pennsylvania, one in Canada, and Reynard, kept in a home office at Stine's residence in La Honda. *Id.* ¶11. Implicit's confidential and proprietary information and trade secrets were stored on and

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

accessible through these servers. *Id.*

At the time of Stine's unlawful entry into the Implicit computer network, Reynard housed hardware and software that was critical to Implicit's ongoing operations and was the strongest and fastest data center of the three data centers that Implicit used. *Id.* ¶12. Each of these data centers also contained computers and hardware proprietary to one of Implicit's clients that Implicit used to develop its video game emulation software that it provided to them. *Id.*

Implicit used physical data centers because the games it produces must be run on proprietary hardware provided by its clients. *Id.* ¶13. This involves large data transfers and would be cost-prohibitive and inefficient to run on the cloud. *Id.* Because of this, each data center was connected to each other using virtual private network ("VPN") software called TailScale. *Id.* This protocol allowed the data centers to communicate privately over a public communication channel. Furthermore, having three data centers allowed Implicit to continue functioning should one of the data centers fail. Thus, access to one data center provided access to all the data centers. *Id.*

After Stine unlawfully hacked into Implicit's systems, which included Stine deleting Implicit confidential and trade secret information, not only did Stine directly disrupt Implicit's operations and the shipping of Implicit's product, but Implicit was left in a position of great uncertainty regarding the integrity of its systems and its security environment. Implicit was unaware of the scope of Stine's tampering, and whether Stine had implemented backdoors or other security risks into the Implicit computer system that would further compromise the company. Given Stine's continued possession of Reynard, the Canada and Pennsylvania data centers had to be turned offline to prevent the possibility of him tampering with those data centers through Reynard, which he had access to through Reynard.

One of Reynard's functions is to perform as a "build machine." *Id.* ¶16. To perform this function, Reynard downloaded all source code locally to perform its functions. *Id.* Source code would get pushed to Reynard, then the compiler would run and create executable files and libraries (i.e., Reynard would create Implicit's software products and send the software to

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

Implicit's customers).  As a result, Reynard contains a complete set of Implicit's source code. *Id.*

Following Stine's unlawful post-termination access to the Implicit computer systems, Implicit disconnected its other data centers to prevent Stine from accessing them.  *Id.* ¶17. Implicit tried to at first avoid fully disconnecting Reynard from the Implicit computer network because doing so would have brought Implicit's ability to produce and deliver its products and services to a halt.  *Id.*  Yet leaving Reynard connected would have allowed Stine to keep accessing changes and updates to Implicit's source code.  *Id.*

Implicit balanced these concerns by disconnecting Reynard from the Implicit computer system in an iterative fashion from June 16, 2024, through June 20, 2024.  *Id.* ¶18.  Before completely disconnecting Reynard on June 20, 2024, Implicit rebuilt its infrastructure and networks on the other two data centers and diverted its operations to those data centers so that it was able function as a company without the use of Reynard.  *Id.*

Implicit still hoped that Stine would return Reynard to Implicit if Implicit demanded that it be returned.  *Id.* ¶19.  Given that there was no reasonable dispute that Reynard was a dedicated build computer that belonged to Implicit, and not Stine, Implicit twice demanded the return of Reynard as well as certain other items of Implicit property on June 18, 2024.  *Id.* None of the requested items, including Reynard, were returned to Implicit.  *Id.*

Implicit filed a motion for a temporary restraining order and preliminary injunction against Stine and Traver Stine on July 2, 2024, requesting, among other things, the return of Reynard.  The Court issued a preliminary injunction on September 6, 2024, enjoining Stine and Traver Stine from (1) accessing Implicit's computer systems, and (2) acquiring, using, or disclosing its confidential, proprietary, and trade secret information.  Dkt. 43.  The Court declined, however, to order the Stines to return Reynard, based on Stine's assertion that Reynard was an "individual personal computer," and "to turn over to Implicit property that appears to be merged at least in part with their personal computer system would impose an undue burden on the defendants."  *Id*. 20:12-25.  The Court's conclusion, however, was based on Stine's misrepresentations to the Court.  Stine, in his declaration in support of the

Grellas Shah LLP
550 California St., Suite 1040
San Francisco, CA 94104

opposition to the preliminary injunction, referred to Reynard as "an individual personal computer that Implicit used to act as a server." Dkt. 22-1 ¶11; *see also* Dkt. 22 at 3 ("Stine's home hosted the individual personal computer Reynard that Implicit used to act as a server.").

Stine effectively admitted to misleading the Court on these issues during his May 16, 2025, deposition, where he testified that Reynard exclusively contained Implicit proprietary information and that he never used it for personal matters or stored personal files on it. Palmieri Decl., Ex. A (Stine Tr. Vol. 1) 193:19-194:1. In other words, the exact reasons why the Court denied Implicit's request that Reynard be returned were not at all true.

It also soon became apparent why Stine misled the Court. Stine further admitted that ***he had "wiped" all the data from Reynard in July or August 2024***. *Id.* Ex. A (Stine Tr. Vol. 1) 190:1-194:1. So sometime after Implicit filed its July 2, 2024, preliminary injunction motion and during its pendency, knowing that the Court could well order that Reynard be returned, Stine deliberately "wiped" at data from Reynard and then misled the Court to delay any discovery of his acts of spoliation for as long as possible.

Stine offered no rationale for "wiping" Reynard, explaining only that "[Reynard] had a bunch of things on it," that "[Reynard] was still trying to reach ImplicitConversions.com and other things," that Stine "just wasn't sure what was ever going to become of [Reynard]," and that Stine "just felt like it was safer not to have the data floating around in multiple locations." *Id.* 190:10-21. Traver Stine later testified that rather than sequestering Reynard as critical evidence, Stine had tossed the now-wiped computer under a cat bed. (Palmieri Decl. Ex. B (Traver Stine Tr.) 218:14-19)

Stine and Traver Stine's testimony regarding their spoliation of critical text messages was equally disturbing.

Traver Stine admitted that she shared her Implicit password with Stine via text message on June 14, 2024 (*Id.* Ex. B (Traver Stine Tr.) 85:4-88:7, 162:12-14), but denied ever knowing why Stine needed the password. Rather, Traver Stine testified that she deliberately chose not to ask Stine what he did with her password and told him "she didn't want to know" because she was afraid of being involved in litigation. *Id.* Ex. B (Traver Stine Tr.) 50:16-52:23, 93:5-

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

MOTION FOR SANCTIONS
CASE NO. 3:24-cv-03744-WHO

22. When asked, Traver Stine admitted to deleting the text messages. *Id*. 128:18-129:18.

Stine, however, admitted that Traver Stine was well aware of why he was asking for her Implicit password. He testified that on June 14, 2024, he sent a text message to Traver Stine asking for her Implicit Google Admin password *and* explaining that "Robin had locked [STINE] out of some systems.". Palmieri Decl. Ex. C (Stine Tr. Vol. II) 274:13-278:8. Stine further testified that Traver Stine provided him with her Implicit Google Admin password in response to Stine's texts. *Id*. 276:8-10. Critically, Stine also testified that he and Traver Stine, in each others' physical presence, coordinated the deletion of these text messages on June 14, 2024, or on the morning of June 15, 2024, because they did not want them to be discovered. *Id.* 277:16-279:5; 280:13-23.

Stine further testified that he and Traver Stine retained their current litigation counsel on or around May 28, 2024, in connection with Stine's dispute with Lavallee and Implicit. *Id.* Ex. C (Stine Tr. Vol. II) 281:20-286:6. Traver Stine also understood that litigation was possible at the time she deleted the text messages because she testified that she deliberately chose not to ask Stine what he did with her password and told him "she didn't want to know" because she was afraid of being involved in litigation. *Id.* Ex. B (Traver Stine Tr.) 50:16-52:23, 93:5-22. Moreover, Stine and Traver Stine did produce their text message thread from June 14, 2024, albeit with certain text messages surgically deleted. This text message exchange shows that the June 14 text messages that were deleted were sent in the context of both Stine's recent termination and a cease and desist letter that he was preparing with his litigation counsel. *Id.* Ex. D. Litigation was anticipated yet Stine and Traver Stine failed to preserve these text messages and intentionally spoliated them.

Following the revelation that Traver Stine and Stine had deleted critical text messages, the Court issued an order requiring that Stine and Traver Stine turn over their phones to Setec Investigations ("Setec") for forensic analysis. *See* Dkt. 96. Setec, however, has been unable to recover the deleted text messages due to technological limitations resulting from the time that has passed since the deletion and the fact that Traver Stine no longer has the iPhone used to send the text messages. *See* Declaration of Michael Kunkel ("Kunkel Decl.") ¶¶6-9. Thus,

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

MOTION FOR SANCTIONS
CASE NO. 3:24-cv-03744-WHO

the deleted text messages are gone for good. *Id.*

## III.   ARGUMENT

### A.   Legal Standard

Under Federal Rule of Civil Procedure 37(e)(2), a court may issue the following sanctions: (1) a presumption "that the lost information was unfavorable to the party"; (2) a jury instruction "that it may or must presume the information was unfavorable to the party"; or (3) a dismissal or default judgment. *Dish Network L.L.C. v. Jadoo TV, Inc.*, No. 20-CV-01891-CRB (LB), 2022 WL 11270394, at *2 (N.D. Cal. Oct. 19, 2022) (quoting Rule 37(e)(2)).

Rule 37(e) identifies three requirements to show that electronically stored information (ESI) was spoliated: "(1) the 'electronically stored information' at issue 'should have been preserved in the anticipation or conduct of litigation'; (2) that information 'is lost because a party failed to take reasonable steps to preserve it' and (3) 'it cannot be restored or replaced through additional discovery.'" *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF, 2016 WL 2957133, at *3 (N.D. Cal. May 23, 2016) (quoting Fed. R. Civ. P. 37(e)).

### B.   Stine Spoliated Electronically Stored Information Stored On Reynard

Stine spoliated evidence stored on Implicit's Reynard computer.  Stine testified that ***he had "wiped" all the data from Reynard in July or August 2024***.  Palmieri Decl, Ex. A (Stine Tr. Vol. 1) 190:1-194:1.  At this time, not only had Implicit filed this lawsuit, but Implicit had filed a motion for a preliminary injunction seeking, among other things, the return of Reynard to Implicit.  *See* Dkt. 17.  Thus, Stine had a duty to preserve the electronically stored information contained on Reynard and he spoliated the data stored on Reynard by "wiping" it.

*First*, all electronically stored information housed on Reynard should have been preserved. *See* Rule 37(e).  This litigation commenced on June 21, 2024 (Dkt. 4) and Stine destroyed the information stored on Reynard after the initiation of this litigation and during the pendency of Implicit's motion for preliminary injunction.  The Court issued a preliminary injunction on September 6, 2024, enjoining Stine and Traver Stine from (1) accessing Implicit's computer systems, and (2) acquiring, using, or disclosing its confidential, proprietary, and trade secret information.  Dkt. 43.  The Court declined, however, to order the

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

Stines to return Reynard, which functioned as a server and data center for Implicit and contained Implicit's confidential, proprietary, and trade secret information, based on Stine's assertion that Reynard was an "individual personal computer," and "to turn over to Implicit property that appears to be merged at least in part with their personal computer system would impose an undue burden on the defendants." *Id*. 20:12-25. The Court's conclusion, however, was based on Stine's misrepresentations to the Court. Stine, in his declaration in support of the opposition to the preliminary injunction, referring to Reynard as "an individual personal computer that Implicit used to act as a server." Dkt. 22-1 ¶11; *see also* Dkt. 22 at 3 ("Stine's home hosted the individual personal computer Reynard that Implicit used to act as a server."). During his oral deposition, however, Stine admitted Reynard is not a personal computer and is owned by Implicit. Palmieri, Decl. Ex. A (Stine Tr. Vol. I) 193:19-194:1. Thus, Stine's deposition testimony not only confirms the destruction of electronically stored information on Reynard, but also that Stine opposed Implicit's motion for a preliminary injunction based on false statements.

*Second*, the electronically stored information housed on Reynard is "lost because a party failed to take reasonable steps to preserve it." Rule 37(e). Indeed, there can be no doubt that "wiping" critical electronically stored information cannot constitute a reasonable action to preserve the electronically stored information on Reynard. Furthermore, Stine failed to offer any legitimate explanation as to why he took such actions. Rather, Stine offered only nonsensical rationales for his actions such as that "[Reynard] had a bunch of things on it," that "[Reynard] was still trying to reach ImplicitConversions.com and other things," that Stine "just wasn't sure what was ever going to become of [Reynard]," and that Stine "just felt like it was safer not to have the data floating around in multiple locations." Palmieri Decl. Ex. A (Stine Tr. Vol. 1) 190:10-21. Furthermore, Stine has seemingly taken no action to protect the physical computer itself. Traver Stine stated during her deposition that Stine told her that Reynard is "under the cat bed." *Id.*, Ex. B (Traver Stine Tr.) 218:17-19. Thus, Stine and Traver Stine's deposition testimony confirms that not only has Stine failed to take reasonable steps to protect the electronically stored information on Reynard, but has actively destroyed it.

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

*Lastly*, the electronically stored information on Reynard cannot be easily recovered or replaced through additional discovery.   In this instance, Stine did not simply delete a potentially recoverable file—Stine admits to deleting the entirety of the device.   Under these circumstances, it is generally not possible to recover any data, such as active files, deleted files, and usage information.   Kunkel Decl. ¶10.   Thus, the electronically stored information that was deleted from Reynard cannot be recovered or replaced through additional discovery and any forensic analysis of Reynard would prove futile.

Accordingly, Stine has spoliated the electronically stored information that was stored on Reynard and Implicit seeks the sanctions described below.

**C.   Stine and Traver Stine Spoliated Text Messages Evidencing Stine's Unlawful Intrusion Into The Implicit Computer Systems**

Stine and Traver Stine both admitted during deposition to deleting critical text messages concerning Stine's unlawful access to Implicit computer systems and Traver Stine's assistance with Stine's unlawful access. The deposition testimony of Stine and Traver Stine is fraught with inconsistencies and half-truths.   The only direct evidence that can show the exact conversation that Stine and Traver Stine had concerning Stine obtaining Traver Stine's credentials is contained in the deleted text messages.

Traver Stine initially denied the allegation in Implicit's complaint that "Juanita Stine's credentials were used to access Implicit's computer systems and to restore Stine's access. *Compare* Dkt. 4 ¶26 *with* Dkt. 24 ¶26.   In discovery, in responses to Implicit's interrogatory asking whether Traver Stine contends that her "credentials to access Implicit's computer systems (through the Google Admin system or otherwise) after Stine's access had been disabled following Stines's termination from Implicit without your knowledge,"  Traver Stine admitted that she had provided Stine with her credentials and admitted that "Stine was acting in the best interest of Implicit against Lavallee's irrational behavior."  Palmieri Decl. Ex. E at 4-5.

During oral deposition, Stine initially testified that Traver Stine provided Stine her Implicit credentials "over the phone" and that he explained to Traver Stine that his "accounts

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

have been disabled by Robin."  Palmieri Decl. Ex. A (Stine Tr. Vol. I) 171:15-172:14.  It was only after returning from a break that Stine recanted the prior testimony, saying that he and Traver Stine "only exchanged a couple of text messages" and that "I really don't know what was said on my side.  I think I kept it very short, but I don't remember." *Id.*  173:12-174:4. When questioned about Stine's communications with Traver Stine concerning his obtaining the credentials, Stine's counsel advised Stine, for the first time, not to answer based on marital privilege. *Id.*  178:24-179:4 ("Q.  So when [Traver Stine] got home, did the two of you discuss that you had used her password to access Implicit's computer systems? MS. FORD:  I am going to advise the witness not to answer based on spousal privilege at this point.").

Following Stine's deposition, Traver Stine sat for oral deposition on May 30, 2025. Traver Stine admitted that she shared her Implicit password with Stine via text message on June 14, 2024 (Palmieri Decl. Ex. B (Traver Stine Tr.) 85:4-88:7, 162:12-14), but denied ever knowing why Stine needed the password.  This contradicts Traver Stine's supplemental response to Implicit's interrogatory where Traver Stine admits to giving Stine her password because "Stine was acting in the best interest of Implicit against Lavallee's irrational behavior."  Palmieri Decl. Ex. E at 4-5.  Indeed, Traver Stine testified that she deliberately chose not to ask Stine what he did with her password and told him "she didn't want to know" because she was afraid of being involved in litigation.  *Id.* Ex. B (Traver Stine Tr.) 50:16-52:23, 93:5-22.  When asked, Traver Stine admitted to deleting those text messages.  *Id*. 128:18-129:18.  Notably, counsel for Traver Stine did not raise an objection based on marital privilege.

Following the revelation that Traver Stine deleted the text messages, the Court ordered the forensic analysis of both Stine and Traver Stine's phone to recover the deleted text messages. *See* Dkt. 96.  During the Setec investigation, Stine sat for additional oral deposition on July 28, 2025.  Palmieri Decl. ¶4  This time, Stine's admitted that on June 14, 2024, he sent a text message to Traver Stine asking for her Implicit Google Admin password ***and*** explaining that "Robin had locked [STINE] out of some systems.".  Palmieri Decl. Ex. C (Stine Tr. Vol. II) 274:13-278:8.  Stine further testified that Traver Stine provided him with her Implicit

11

Google Admin password in response to Stine's texts. *Id.* 276:8-10. Critically, Stine also testified that he and Traver Stine deleted these text messages in a coordinated effort on or around June 14, 2024, because they did not want these messages to be discovered. *Id.* 277:16-279:5; 280:13-23. It was not until Stine was faced with the possibility that Setec's Court-ordered forensic investigation could result in the content of the text messages coming to light, that he provided his account of the text message exchange with Traver Stine. Thus, both Stine and Traver Stine admit to deleting the text messages that enabled Stine to unlawfully trespass into Implicit's computer systems following Stine's termination from Implicit. Given Traver Stine and Stine's vacillating account of how Stine acquired Traver Stine's credentials, only the text messages can provide the true story of what transpired.

*First*, the text messages at issue should have been preserved in the anticipation of litigation. Rule 37(e). This litigation commenced on June 21, 2024, which is after the approximate date on which Stine testified that the text messages were deleted. Both Stine and Traver Stine, however, had a duty to preserve evidence after they reasonably anticipated litigation. *See Compass Bank v. Morris Cerulo World Evangelism*, 104 F. Supp. 3d 1040, 1051 (S.D. Cal. 2015) ("The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation."). Indeed, Stine and Traver had already retained their present counsel for anticipated litigation against Implicit for weeks prior to June 14, 2024. Palmieri Decl. Ex. A (Stine Tr. Vol. I) 197:3-19. Moreover, Stine testified that he and Traver Stine retained their current litigation counsel on or around May 28, 2024, in connection with Stine's dispute with Lavallee and Implicit. *Id.* Ex. C (Stine Tr. Vol. II) 281:20-286:6. Also, Traver Stine testified that she deliberately chose not to ask Stine what he did with her password and told him "she didn't want to know" because she was afraid of being involved in litigation. *Id.* Ex. B (Traver Stine Tr.) 50:16-52:23, 93:5-22. And the June 14, 2024, text messages that Stine and Traver Stine did produce, from which evidence had been surgically-deleted, show that on June 14 Stine was in the process of reviewing a draft cease and desist letter with his litigation counsel. *Id.* Ex. D. Thus, litigation was reasonably anticipated by June 14, 2025,

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

when Stine and Traver Stine deleted the text messages at issue.

*Second*, the text messages are lost because Stine and Traver Stine failed to take reasonable steps to preserve it. *See* Rule 37(e). Indeed, there can be no doubt that intentionally deleting these critical text messages cannot constitute a reasonable action to preserve the electronically stored information.

*Lastly*, the text messages cannot be recovered or replaced through additional discovery. Although Stine and Traver Stine have testified to the general contents of the deleted text messages, neither Stine nor Traver Stine recall the exact contents of the messages or exact time that the messages were sent. The testimony of Traver Stine and Stine cannot replace the evidence that was destroyed—the actual text messages explaining exactly how and why Traver Stine provided her Implicit Google Admin credentials to Stine. As the Court has previously noted, "[w]hile…adverse inferences may be imposed for spoliation, it would be far superior to know exactly what the Stines deleted." Dkt. 96 at 2:21-23. Moreover, a forensic analysis has been unable to recover the text messages. On June 16, 2025, the Court ordered that Stine and Traver Stine turn over their phones to Setec for a forensic analysis. *See* Dkt. 96. Setec, however, has been unable to recover the deleted text messages due to technological limitations resulting from the time that has passed since the deletion and the fact that Traver Stine no longer has the iPhone used to send the text messages. *See* Kunkel Decl. ¶¶6-9. Thus, the text messages cannot be recovered and neither the testimony of Stine nor Traver Stine can replace the actual contents of the deleted text messages.

Accordingly, Traver Stine and Stine have spoliated critical electronically stored information (i.e. text messages) and Implicit should be entitled to the adverse jury instructions, as explained below.

### D. The Court Should Order Adverse Inference Jury Instructions

Implicit is entitled to adverse jury instructions due to Stine and Traver Stine's spoliation of the Reynard computer and the text messages around the time which Stine unlawfully accessed the Implicit computer systems by using Traver Stine's Implicit Google Admit credentials. There are three types of adverse inference instructions that a Court may

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

order:  (1) an instruction "that certain facts are deemed admitted and must be accepted as true"; (2) "a mandatory presumption"; and (3) an instruction that "permits (but does not require) a jury to presume that the lost evidence is both relevant and favorable to the innocent party." *Dish Network L.L.C. v. JadooTV, Inc.*, No. 20-CV-01891-CRB (LB), 2023 WL 3801947, at *6 (N.D. Cal. 2023) (quoting *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1150 (N.D. Cal. 2012) (cleaned up).  The Ninth Circuit has approved the use of adverse inferences as sanctions for spoliation of evidence but has not set forth a precise standard for determining when such sanctions are appropriate.  *See Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 976, 989 (N.D. Cal. 2012).  This Court has looked to other circuit, noting that "a party seeking an adverse inference instruction based on the destruction of evidence must establish[:] (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.* at 996-97 (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir.2002)).

Here, it has been established that Stine had a duty to preserve the data on Reynard, the data on Reynard is relevant to Implicit's claims, and that Stine deleted the data on Reynard intentionally.  Similarly, it has been established that Stine and Traver Stine had a duty to preserve the deleted text messages, that Stine and Traver Stine had a duty to preserve the text messages, and that Stine and Traver Stine intentionally deleted the text messages.  In view of this, Implicit is entitled an adverse inference instruction concerning the spoliation of the data on Reynard and the spoliation of the text messages.  And indeed, Stine and Traver Stine have previously invited the Court to enter an adverse inference instruction against Stine and Traver Stine, describing it as "less drastic" than allowing Setec to try to recover the deleted text messages.  *See* Dkt. 92 at 5.

Moreover, in view of Traver Stine and Stine's intentional conduct in destroying the text messages and data on Reynard, the Court should issue adverse inference jury instructions containing a mandatory and irrebuttable presumption.  *See RG Abrams Ins. v. L. Offs. of C.R.*

Grellas Shah LLP
550 California St., Suite 1040
San Francisco, CA 94104

*Abrams*, 342 F.R.D. 461, 520 (C.D. Cal. 2022) (finding an adverse inference sanction was appropriate due to the intentional destruction of relevant text messages, and that the presumption should be irrebuttable because the deprivation of the evidence would leave the plaintiff powerless to overcome any material that the defendant might present to rebut the presumption).

Concerning Stine's spoliation of the Reynard computer, Implicit seeks an adverse inference jury instruction instructing the jury stating:

> Stine intentionally deleted evidence regarding his taking and possession of Implicit trade secrets.  Stine was aware that he had a legal duty to preserve the evidence stored on Reynard.  Stine deleted this evidence in order to prevent its discovery and/or use in this litigation.  The jury must presume that the evidence that Stine destroyed would have shown Stine's taking and possession of Implicit trade secrets.

Concerning Stine and Traver Stine's spoliation of text messages, Implicit seeks an adverse inference jury instruction instructing the jury stating:

> Stine and Traver Stine intentionally deleted evidence regarding their unauthorized access to Implicit's systems.  Stine and Traver Stine were aware that that they each had a legal duty to preserve the evidence.  Stine and Traver Stine deleted this evidence to prevent its discovery and/or use in this litigation. The jury must presume that evidence that Stine and Traver Stine destroyed would have shown their unlawful access to Implicit systems.

## IV.   **CONCLUSION**

Based on the foregoing, Implicit respectfully requests that the Court finds that Stine spoliated electronically stored information on the Reynard computer, that Traver Stine and Stine spoliated the electronically stored information contained in the deleted text messages, and that Implicit is entitled to the requested adverse inference jury instructions.

Respectfully Submitted,

Dated: August 11, 2025                    GRELLAS SHAH LLP

By: _/s/ Dhaivat H. Shah_
Dhaivat H. Shah, Esq.
Attorneys for Plaintiff
IMPLICIT CONVERSIONS, INC.

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104