GRELLAS SHAH LLP
DHAIVAT H. SHAH, ESQ. (SBN 196382)
(ds@grellas.com)
DAVID I. SIEGEL, ESQ. (SBN 264247)
(dsiegel@grellas.com)
JOSEPH B. PALMIERI, ESQ. (SBN 31275)
(jp@grellas.com)
550 California Street, Suite 1040
San Francisco, CA 94104
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

Attorneys for Plaintiff and Counterdefendant
IMPLICIT CONVERSIONS, INC. and
Counterdefendant ROBIN LAVALLEE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IMPLICIT CONVERSIONS, INC, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JACOB STINE, an individual, JUANITA TRAVER STINE, an individual, PROJECT CRAYON LLC, a California Limited Liability Corporation, and DOES 1-10, inclusive,<br>Defendants.<br><br>JACOB STINE, an individual; JUANITA TRAVER STINE, an individual,<br><br>Counterclaimants,<br><br>vs.<br><br>IMPLICIT CONVERSIONS, INC, a Delaware Corporation; and ROBIN LAVALLEE, an individual,<br><br>Counterdefendants. | Case No.  3:24-cv-03744-WHO<br><br>**IMPLICIT CONVERSIONS, INC. AND ROBIN LAVALLEE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  September 17, 2025<br>Time:  2:00 p.m.<br>Judge:  William H. Orrick<br>Courtroom:  2 - 17th Floor<br><br>Date Action Filed: June 21, 2024<br>Trial Date: December 1, 2025<br><br>JURY TRIAL DEMANDED |

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

## **TABLE OF CONTENTS**

Page (s)

NOTICE OF MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 3

I.  INTRODUCTION ........................................................................................... 3

II.  RELEVANT FACTUAL BACKGROUND .......................................................... 5

III.  ARGUMENT ................................................................................................ 7

A.  Legal Standard ................................................................................. 7

B.  The Court Should Grant Summary Judgment In Implicit's Favor On The Declaratory Relief Claims In The FAC And Stine's Counterclaim ......... 8

C.  The Court Should Grant Summary Judgment In Lavallee's Favor On The Stine Counterclaim's Seventh Counterclaim And The Traver Stine Counterclaim's First Counterclaim For Defamation ............................ 11

D.  The Court Should Grant Summary Judgment For Implicit On Stine's Third Counterclaim For Failure To Engage In The Interactive Process ......... 16

E.  The Court Should Grant Summary Judgment For Implicit On Stine's Fourth Counterclaim For Failure To Provide Reasonable Accommodations ................................................................................ 20

F.  The Court Should Grant Summary Judgment For Implicit On Stine's Second Counterclaim For Wrongful Termination ............................... 22

IV.  CONCLUSION ............................................................................................ 25

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

## TABLE OF AUTHORITIES

### CASES

Pages (s)

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)....................................................................................................8

*Brown v. Los Angeles Unified School Dist.*,
    60 Cal. App. 5th 1092 (2021)....................................................................................22

*Christian Research Inst. v. Alnor*,
    148 Cal. App. 4th 71 (2007).......................................................................................14

*Hagberg v. Cal. Fed. Bank*,
    32 Cal. 4th 350 (2004) ...............................................................................................15

*John Doe 2 v. Sup. Ct.*,
    1 Cal. App. 5th 1300 (2016).......................................................................................11

*Kaur v. Foster Poultry Farms LLC*,
    83 Cal. App. 5th 320 (2022).......................................................................................21

*McDermott Int'l, Inc. v. Wilander*,
    498 U.S. 337 (1991) .....................................................................................................8

*McGarry v. Univ. of San Diego*,
    154 Cal. App. 4th 97 (2007)................................................................................14, 15

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
    210 F.3d 1099 (9th Cir. 2000)................................................................................8, 11

*Rimes v. Claire's Stores, Inc.*,
    No. 2:22-cv-01488-SPG-JEM,
    2023 WL 1787182 (C.D. Cal. Jan. 6, 2023) .........................................17, 22, 23, 25

*S. Cal. Gas Co. v. City of Santa Ana*,
    336 F.3d 885 (9th Cir. 2003).......................................................................................7

*Scotch v. Art Inst. Of Cal.*,
    173 Cal. App. 4th 986 (2009)...............................................................................passim

*Smith v. Maldonado*,
    72 Cal. App. 4th 637 (1999).......................................................................................14

*Spitzer v. The Good Guys, Inc.*,
    80 Cal. App. 4th 1376 (2000).....................................................................................17

*Taylor v. Principal Fin. Group, Inc.*,
    93 F.3d 155 (5th Cir. 1996)........................................................................................16

### STATUTES

8 Del. C.:

  § 228........................................................................................................................10

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

§ 228(a) ..................................................................................................................10

Cal. Civ. Code:

§ 47(b)(5) ..............................................................................................................14

Cal. Gov. Code:

§ 12926(p).............................................................................................................19

§ 12926(u).............................................................................................................19

§ 12940(m)(1) .......................................................................................................19

## RULES

Fed. R. Civ. P. 56(a)................................................................................................7

## OTHER

2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775) ........................................................15

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

IMPLICIT AND LAVALLEE'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:24-cv-03744-WHO

## NOTICE OF MOTION AND MOTION

**TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 17, 2025, at 2:00 p.m., or as soon thereafter as may be heard, in Courtroom 2 on the 17th Floor of the above-entitled Court, plaintiff and counterdefendant Implicit Conversions, Inc. ("Implicit") and counterdefendant Robin Lavallee ("Lavallee") will and hereby move under Rule 56(a) of the Federal Rules of Civil Procedure, for summary judgment and an order for Implicit and Lavallee on (1) the Seventh Count in Implicit's First Amended Complaint (the "FAC") (Dkt. 93); (2) Counterclaims Two, Three, Four, Six and Seven in defendant and counterclaimant Jacob Stine's ("Stine") First Amended Counterclaim (the "Stine Counterclaim") (Dkt. 57); and (3) Counterclaim One in defendant and counterclaim Juanita Traver Stine's ("Traver Stine," and together with Stine, the "Stines") First Amended Counterclaim (the "Traver Stine Counterclaim") (Dkt. 101).

Specifically, Implicit and Lavallee seek an order finding (1) Stine was an at-will employee of Implicit and executed a Confidential Information and Invention Assignment Agreement acknowledging that he could be terminated at any time for any reason or no reason; (2) Stine was terminated by Implicit on June 14, 2024; (3) Implicit repurchased 2,656,250 unvested shares from Stine on June 17, 2024, in accordance with the terms of the Common Stock Purchase Agreement executed by Stine; (4) after Implicit's repurchase of Stine's unvested shares on June 17, 2024, Stine held only 1,593,750 shares of Implicit common stock; (5) Lavallee became the majority shareholder of Implicit's common stock on June 17, 2024; (6) as Implicit's majority shareholder, Lavallee properly removed Stine from Implicit's Board on June 17, 2024; (7) Mahmood Alawi ("Alawi") and Traver Stine are not members of Implicit's Board because the Written Consent purporting to appoint them on June 19, 2024, is invalid; (8) Lavallee was not removed as CEO of Implicit and Stine was not appointed as Interim CEO of Implicit on June 20, 2024, because the Unanimous Written Consent purportedly executed by Stine, Alawi and Traver Stine is invalid; (9) Bill Litshauer is the

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

current CEO of Implicit; (10) for Lavallee on Counterclaim Seven of the Stine Counterclaim and Counterclaim One of the Traver Stine Counterclaim for defamation; (11) for Implicit on Counterclaim Two of the Stine Counterclaim for wrongful termination; (12) for Implicit on Counterclaim Three of the Stine Counterclaim for failure to engage in the interactive process; and (13) for Implicit on Counterclaim Four of the Stine Counterclaim for failure to provide reasonable accommodations.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Dhaivat H. Shah, the accompanying Declaration of Robin Lavallee, the accompanying Declaration of Isabelle Gagnon, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: August 13, 2025                          GRELLAS SHAH LLP


By:   */s/ Dhaivat H. Shah*
Dhaivat H. Shah, Esq.
Attorneys for Plaintiff and Counterdefendant
IMPLICIT CONVERSIONS, INC. and
Counterdefendant ROBIN LAVALLEE

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff and counterdefendant Implicit Conversions, Inc. ("Implicit" or the "Company") and counterdefendant Robin Lavallee ("Lavallee") request that the Court grant summary judgment in Implicit's and Lavallee's favor on (1) the Seventh Count in Implicit's First Amended Complaint (the "FAC") (Dkt. 93), and (2) Counterclaims Two, Three, Four, Six and Seven in defendant and counterclaimant Jacob Stine's ("Stine") First Amended Counterclaim (the "Stine Counterclaim") (Dkt. 57), and (3) Counterclaim One in defendant and counterclaimant Juanita Traver Stine's ("Traver Stine," and together with Stine, the "Stines") First Amended Counterclaim (the "Traver Stine Counterclaim") (Dkt. 101).

## I.    INTRODUCTION

In response to being terminated by Implicit, Stine, with the assistance of his wife, Traver Stine, retaliated against Implicit and its CEO, Lavallee, by attempting to take over the Company.  Stine and Traver Stine breached and took over Implicit's computer systems, disabled Lavallee's access to the computer systems, informed employees that Stine had disabled Lavallee's access and indicated that Stine was now in charge, and executed false corporate documents purporting to remove Lavallee from Implicit's Board of Directors and as CEO and appoint Stine as interim CEO.  Implicit filed this lawsuit against Stine and Traver Stine alleging, among other things, computer crimes and trade secrets violations, and seeking a declaration that Implicit had repurchased Stine's unvested shares upon his termination, that Stine had been removed from Implicit's Board, and that the actions taken by Stine, Traver Stine and Mahmood Alawi ("Alawi") were invalid.  Stine and Traver Stine responded by filing baseless counterclaims against Implicit and Lavallee and requesting a declaration that their attempt to remove Lavallee from Implicit's Board and as CEO was valid.

Fact discovery has now closed, and it is evident summary judgment must be granted for Implicit and Lavallee on the declaratory relief claims, Stine's three employment discrimination claims, and Stine's and Traver Stine's defamation claims (Traver Stine's only remaining claim) because there is no evidence to support the Stines' claims.

There is no genuine dispute that Implicit repurchased Stine's unvested shares upon his

IMPLICIT AND LAVALLEE'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:24-cv-03744-WHO

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

termination and that the repurchase made Lavallee the holder of a majority of Implicit's outstanding common shares, which permitted Lavallee to remove Stine from Implicit's Board. There is also no genuine dispute that Stine and Alawi did not hold a majority of Implicit's outstanding shares at the time they purported to execute a shareholder written consent removing Lavallee from the Board and appointing Alawi and Traver Stine to the Board, which rendered their purported written consent and subsequent purported removal of Lavallee as CEO invalid.  Summary judgment must therefore be granted for Implicit on the FAC's Seventh Count and Counterclaim Six in the Stine Counterclaim for declaratory relief.

Summary judgment must also be granted for Lavallee on Counterclaim Seven in the Stine Counterclaim and Counterclaim One in the Traver Stine Counterclaim for defamation relating to Lavallee's request to the police for a wellness check on Stine and Traver Stine because there is no evidence Lavallee made any false statements to the police.  The information before Lavallee at the time he requested the wellness check, including Stine's erratic and illegal behavior, extensive recent threats of harm to self and others, recent incident of self-harm, and Stine's termination that day, caused Lavallee to be concerned about Stine's welfare, as well as that of Traver Stine, who lived with Stine and had not responded to communications from Implicit that day.  Every statement made by Lavallee to the law enforcement officer, including his statement that he was concerned about the Stines, is true. There is no evidence to the contrary.  Truth is an absolute defense to a defamation claim.

Summary judgment must also be granted for Implicit on Counterclaims Two, Three and Four in the Stine Counterclaim for wrongful termination, failure to engage in the interactive process, and failure to provide reasonable accommodations, respectively.  There is no evidence that Stine informed Implicit that his purported autism caused limitations requiring a reasonable accommodation or that Stine ever started the interactive process or participated in the interactive process in good faith.  Indeed, Stine was emphatic at his deposition that "I have never requested an accommodation for anything in my life."  Though Traver Stine claims that Stine required accommodations, Stine himself was resolute during his employment at Implicit that he was not responsible for any of the conflicts he had with others or that any changes were

Grellas Shah LLP
550 California St., Suite 1040
San Francisco, CA 94104

required on his part. He did not believe he needed any accommodations and did not engage with Implicit's suggestions of management training or moving to a non-management position. He also cannot identify any reasonable accommodation he believes Implicit should have provided. Stine was terminated because he had failed to perform his job competently and was harming Implicit. There is no evidence of discriminatory motive by Implicit. There is no evidence to support Stine's employment discrimination claims.

## II.   RELEVANT FACTUAL BACKGROUND

Lavallee and Stine co-founded Implicit Conversions LLC, the predecessor of Implicit, in 2019. Lavallee incorporated Implicit in 2023 and Implicit Conversions LLC and Implicit merged, with Implicit being the surviving entity. Declaration of Robin Lavallee ("Lavallee Decl.") ¶ 4. Lavallee was the original director of Implicit. *Id*. ¶ 5. Though Stine was not formally appointed to the Implicit Board of Directors through stockholder vote or stockholder consent, both Lavallee and Stine agreed that he would fill the second vacant Board seat. *Id*. Stine acted as an Implicit director until his removal from the Board on June 17, 2024. *Id*.

On January 24, 2023, by unanimous written consent, Implicit's Board adopted Implicit's Bylaws. Lavallee Decl. ¶ 6 & Ex. A. Implicit's Bylaws authorize the Board to appoint a Chief Executive Officer ("CEO") of Implicit. *Id*., Ex. A § 5.1. Per the Bylaws, the CEO is the senior executive officer and has general supervision, direction and control of the business and subordinate officers. *Id*., Ex. A § 5.6. Further, the CEO has the authority to remove subordinate officers. *Id*., Ex. A §§ 5.3, 5.4. The Implicit Board appointed Lavallee as CEO of Implicit. Lavallee Decl. ¶ 7. Lavallee, in his capacity as CEO, made Stine Implicit's Chief Technology Officer ("CTO"). *Id*. Lavallee continuously served as Implicit's CEO until March 3, 2025, when he stepped down as CEO and Implicit's Board appointed Bill Litshauer ("Litshauer") as CEO. *Id*. ¶¶ 8-9.

On or around January 26, 2023, Implicit issued 4,250,000 shares of Common Stock to Lavallee and 4,250,000 shares of Common Stock to Stine, both subject to vesting over a 4-year period. *Id*. ¶ 12 & Exs. D, E. Implicit's Common Stock Purchase Agreement (the "CSPA") with Stine provides that upon Stine's termination from Implicit, Implicit has the

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

right to repurchase all unvested shares.  *Id*., Ex. E § 3(b)(i).  Traver Stine, Stine's spouse, began contracting with Implicit Conversions LLC in or around March 2022.  She continued working for Implicit as a Payroll Administrator and eventually in human resources.  *Id*. ¶ 13.

Implicit had grown increasingly concerned at Stine's erratic behavior and poor performance.  As a manager, Stine fostered a toxic workplace relationship with other key personnel, impairing their ability to perform their jobs.  Stine refused to engage with Implicit when Implicit suggested management training or moving Stine to a non-management position.  Lavallee Decl. ¶ 25.  Moreover, Stine made increasingly alarming statements in work communication channels.  *Id*. ¶ 18 & Ex. F.  On or around May 10, 2024, Stine suffered a purported "medical crisis" in which he punched himself in the face after receiving negative feedback from Traver Stine regarding his work performance.  *Id*. ¶ 26.  Stine requested "medical" leave after this incident.  *Id*.

On June 14, 2024, Implicit notified Stine that his employment was terminated effective immediately.  Implicit also notified Stine that his access to company computer systems was being disabled and that Implicit was exercising its right to repurchase his unvested shares.  Lavallee Decl. ¶ 33 & Ex. I.  In the evening of June 14, after his access had been disabled, Stine unlawfully accessed and tampered with Implicit's computer systems using Traver Stine's credentials.  *Id*. ¶ 36.  Stine restored his own full access to Implicit's computer systems and disabled Lavallee's access, which caused significant disruption to Implicit's business operations.  *Id*.  Stine also made unauthorized copies of vast quantities of Implicit's confidential and proprietary information and its trade secrets.  *Id*. ¶ 38.  Given Stine's erratic and illegal behavior upon being terminated, the previous extensive threats of harm to himself and others, and Stine's recent incident of self-harm in response to negative work news, Lavallee was concerned about Stine's welfare and called 911 on June 14 to ask the police to perform a wellness check on Stine.  *Id*. ¶ 39.  Because Traver Stine lived with Stine and, to Lavallee's knowledge, no one from Implicit had heard from her that day, Lavallee asked that the police also perform a wellness check on Traver Stine.  *Id*. ¶ 40.

On June 17, 2024, Implicit sent to Stine via overnight Fedex delivery a Notice of

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

Exercise of Repurchase Option.  Lavallee Decl. ¶ 43 & Ex. K.  Through this letter, Implicit repurchased Stine's 2,656,250 unvested common shares of Implicit stock.  *Id*., Ex. K.  Implicit enclosed a certified check in the amount of $26.57 made payable to Stine for the repurchase.  Implicit also emailed this notice to Stine on the same day.  *Id*. ¶ 43 & Ex. L.  As a result of the repurchase, Stine held only 1,593,750 vested shares of Implicit common stock.  *Id*. ¶ 44.  Lavallee subsequently executed a Stockholder Resolution By Written Consent on June 17, 2024, voting his 4,250,000 shares, which represents a majority of all outstanding Implicit shares, to remove Stine from the Implicit Board of Directors.  *Id*. ¶¶ 46-47 & Ex. M.

On June 20, 2024, Stine's counsel sent Implicit a document titled "Action By Written Consent of the Majority Stockholders" purportedly signed by Stine and Alawi on June 19, 2024 – after Implicit had repurchased Stine's unvested shares – purporting to remove Lavallee from Implicit's Board and appointing Alawi and Traver Stine to the Board.  Lavallee Decl. ¶ 48 & Ex. N.  On June 20, 2024, the fake board of directors consisting of Stine, Traver Stine and Alawi purported to execute a "Unanimous Written Consent of the Board of Directors of Implicit Conversions, Inc." removing Lavallee as CEO of Implicit and appointing Stine as Interim CEO.  *Id*. ¶ 50 & Ex. O.

Implicit filed this action on June 21, 2024, alleging claims for, among other things, violations of federal and state computer fraud laws and federal and state trade secrets laws.  Stine and Traver Stine filed counterclaims alleging various employment discrimination claims relating to Stine's termination and defamation claims relating to Lavallee's request for wellness checks on Stine and Traver Stine.

## III.    ARGUMENT

### A.    Legal Standard

A court may grant summary judgment on any claim "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party with the ultimate burden of persuasion at trial "must establish 'beyond controversy every essential element of its' [] claim."  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation omitted).  A moving party

7

without the ultimate burden of persuasion at trial has an initial burden of production that can be met by either "produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Id*. A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). If "the facts and the law will reasonably support only one conclusion," then summary judgment is mandated. *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991).

**B.      The Court Should Grant Summary Judgment In Implicit's Favor On The Declaratory Relief Claims In The FAC And Stine's Counterclaim**

The FAC's Seventh Count and Stine's Sixth Counterclaim each seek declaratory relief regarding the control of Implicit. There is no genuine dispute that Implicit repurchased Stine's unvested shares upon Stine's termination in accordance with the terms of the Confidential Information and Invention Assignment Agreement (the "CIIAA") Stine executed; that Lavallee thereafter became Implicit's majority shareholder and removed Stine from Implicit's Board of Directors in accordance with Delaware law; that Stine and Alawi's purported removal of Lavallee from and addition of Traver Stine and Alawi to the Board were invalid because Stine and Alawi did not own a majority of Implicit's shares at the time of their purported actions; and that Stine, Traver Stine, and Alawi's purported removal of Lavallee as CEO and appointment of Stine as interim CEO were invalid because Stine, Traver Stine and Alawi were not Implicit directors at the time of their purported actions. Summary judgment on the declaratory relief claims is therefore appropriate.

Stine executed the CIIAA on January 24, 2023. Lavallee Decl. ¶ 10 & Exs. B, C. Section 9 of the CIIAA acknowledges that "except as may be otherwise explicitly provided in a separate written agreement between the Company and [Stine], [Stine's] Relationship with the

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

Company is and shall continue to be at-will, as defined under applicable law, meaning that either [Stine] or the Company may terminate the Relationship at any time for any reason or no reason." *Id.*, Ex. B § 9. There is no separate written agreement between Stine and Implicit changing the at-will nature of Stine's employment. Lavallee Decl. ¶ 11.

On January 26, 2023, Stine executed the CSPA pursuant to which Stine purchased 4,250,000 shares of Implicit's common stock at a purchase price of $0.00001 per share for a total purchase price of $42.50. Lavallee Decl., Ex. E. All shares were deemed unvested and subject to a repurchase option by Implicit at the original purchase price in the event of Stine's voluntary or involuntary termination for any reason, with or without cause. *Id.* § 3(b)(i). The vesting schedule provided that 25% of the shares would be released from the repurchase option on November 21, 2023. *Id.* § 3(b)(iii). An additional 1/48 of the shares would be released from the repurchase option on the corresponding day of each month thereafter until all shares had been released. *Id.* Notices under the CSPA are required to be in writing and are deemed sufficient when delivered by overnight courier or sent by email. *Id.* § 10(e).

On June 14, 2024, Implicit terminated Stine's employment. Lavallee Decl. ¶ 33 & Ex. I. Implicit's Bylaws granted Lavallee as CEO of the Company authority over the general supervision, direction and control of the business and subordinate officers and the authority to remove subordinate officers. *Id.* ¶ 6 & Ex. A §§ 5.3, 5.4, 5.6.

On June 17, 2024, Implicit sent to Stine via overnight Fedex delivery a Notice of Exercise of Repurchase Option with a copy sent via email. Lavallee Decl. ¶ 43. Through this notice, Implicit repurchased Stine's 2,656,250 unvested common shares of Implicit stock. Implicit enclosed a certified check in the amount of $26.57 made payable to Stine for the repurchase. *See id.* ¶ 43 & Exs. K, L. Therefore, under the terms of Stine's CSPA, the repurchase by Implicit of Stine's 2,656,250 unvested common shares was completed on June 17, 2024, when Implicit sent the email to Stine. *Id.*, Ex. E §§ 3(b), 10(e). Stine acknowledged that he received a copy of the notice by email on June 17, 2024, and the mailed notice and check on his doorstep on June 18, 2024. Declaration of Dhaivat H. Shah ("Shah Decl."), Ex. 1 ("Stine Tr.") 147:15-149:25.

Grellas Shah LLP
550 California St., Suite 1040
San Francisco, CA 94104

IMPLICIT AND LAVALLEE'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:24-cv-03744-WHO

After the repurchase of Stine's unvested shares on June 17, 2024, Implicit had 6,095,957 outstanding common shares. Lavallee Decl. ¶ 45. Lavallee owned 4,250,000 of those shares and therefore owned a majority of Implicit's outstanding common stock on June 17, 2024. *Id*. ¶¶ 12, 46 & Ex. D. Section 228 of the Delaware General Corporation Law and Implicit's Bylaws authorize actions by written consent of the stockholders in lieu of a meeting if the consent is signed by stockholders holding not less than the minimum number of shares that would be necessary to authorize such actions at a meeting. 8 Del. C. § 228(a); Lavallee Decl., Ex. A § 2.11. In accordance with section 228 and Implicit's Bylaws, Lavallee executed a Written Consent of Stockholders in Lieu of Special Meeting on June 17, 2024, removing Stine from the Board. Lavallee Decl. ¶ 47 & Ex. M. As the holder of a majority of Implicit's outstanding shares on June 17, 2024, Lavallee had sufficient shares to take such action.

On June 19, 2024, two days after Implicit had repurchased 2,656,250 of Stine's unvested shares, Stine and Alawi purported to execute a "Written Consent of the Majority Stockholders of Implicit Conversions, Inc." (the "Stine-Alawi Written Consent") to remove Lavallee from and add Traver Stine and Alawi to Implicit's Board. Lavallee Decl. ¶ 48 & Ex. N. But on June 19, 2024, Stine held only 1,593,750 shares of Implicit common stock, while Alawi held just 250,000 shares. *Id*. ¶ 49. Their 1,843,750 combined shares did not meet the minimum 3,047,979 shares (*i.e.* a majority of Implicit's outstanding shares) necessary to take actions by written consent in lieu of a meeting. *See* 8 Del. C. § 228(a). The Stine-Alawi Written Consent is therefore invalid and has no legal effect.

On June 20, 2024, Stine, Traver Stine and Alawi purported to execute a "Unanimous Written Consent of the Board of Directors of Implicit Conversions, Inc." (the "Stine UWC") removing Lavallee as CEO of Implicit and appointing Stine as Interim CEO. Lavallee Decl. ¶ 50 & Ex. O. The Stine UWC, however, is also invalid and has no legal effect because Stine, Traver Stine and Alawi were not Board members on June 20, 2024, and therefore had no authority to take any actions regarding the removal or appointment of Implicit's CEO. Stine had been removed from Implicit's Board on June 17, 2024, by Lavallee when Lavallee became Implicit's majority shareholder, while Traver Stine and Alawi were never members of

IMPLICIT AND LAVALLEE'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:24-cv-03744-WHO

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

Implicit's Board because the Stine-Alawi Written Consent purporting to appoint them to the Board was invalid.  The evidence and law permit no other finding.

Accordingly, the Court should grant summary judgment on the declaratory relief claims and declare that (1) Stine was an at-will employee of Implicit and executed a CIIAA acknowledging that he could be terminated at any time for any reason or no reason; (2) Stine was terminated by Implicit on June 14, 2024; (3) Implicit repurchased 2,656,250 unvested shares from Stine on June 17, 2024, in accordance with the terms of the CSPA executed by Stine; (4) after Implicit's repurchase of Stine's unvested shares on June 17, 2024, Stine held only 1,593,750 shares of Implicit common stock; (5) Lavallee became the majority shareholder of Implicit's common stock on June 17, 2024; (6) as Implicit's majority shareholder, Lavallee properly removed Stine from Implicit's Board on June 17, 2024; (7) Alawi and Traver Stine are not members of Implicit's Board because the Stine-Alawi Written Consent purporting to appoint them is invalid; (8) Lavallee was not removed as CEO of Implicit and Stine was not appointed as Interim CEO of Implicit on June 20, 2024, because the Stine UWC is invalid; and (9) Litshauer is the current CEO of Implicit.

### C.  The Court Should Grant Summary Judgment In Lavallee's Favor On The Stine Counterclaim's Seventh Counterclaim And The Traver Stine Counterclaim's First Counterclaim For Defamation

To prevail on their defamation claims, the Stines must prove "'(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.'"  *John Doe 2 v. Sup. Ct.*, 1 Cal. App. 5th 1300, 1312 (2016) (citation omitted).  Because the Stines bear the burden of persuasion on their defamation claims at trial, Lavallee need only "produce evidence negating an essential element of the [Stines'] claim or defense or show that the [Stines] do[] not have enough evidence of an essential element to carry [their] ultimate burden of persuasion at trial."  *Nissan Fire*, 210 F.3d at 1102.  There is no evidence of any false statements by Lavallee.

Traver Stine's Counterclaim alleges that "Lavallee made statements to a 911 operator indicating that Traver Stine was the victim or potential victim of domestic violence at the hands of her husband" (Traver Stine Counterclaim ¶ 22), while Stine's Counterclaim alleges

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

that "Lavallee made statements to a 911 operator indicating that Stine may physically harm his wife." Stine Counterclaim ¶ 74. Both Counterclaims allege that Lavallee knew his purported statements were false or made them with reckless disregard for their truth or falsity. Traver Stine Counterclaim ¶ 22; Stine Counterclaim ¶ 74. But the actual statements made by Lavallee were not false, and the Stines cannot prove otherwise.

There is no evidence that Lavallee ever told the officer that Stine had harmed Traver Stine or that Traver Stine was the victim of domestic violence, as the Counterclaims allege. Instead, the evidence shows that Lavallee informed a law enforcement officer that Stine had been dealing with mental health and work-related stress and had recently been making concerning comments about harming himself and others. Lavallee also informed the officer that Stine had not made any threats to Lavallee that day but that Stine had punched himself in the past. Lavallee further informed the officer that Stine had been fired that day and that Lavallee was concerned that the firing might be the final culmination of Stine's recent threats and that Lavallee was concerned about Stine's welfare. Accordingly, Lavallee requested that the police conduct a wellness check on Stine. Lavallee Decl. ¶ 39. Lavallee further informed the officer that Stine lived with Traver Stine and that he was also concerned about her welfare. Accordingly, Lavallee requested that the police conduct a wellness check on Traver Stine as well. *Id*. ¶ 40.

There is ample evidence establishing the truth of each of these statements. Stine sent numerous Slack messages to Lavallee containing violent rhetoric and threats to harm himself and others, including on May 7, 2024, when Stine wrote, "FFS fuck this, fuck everyone, fuck myself. I;ll fucking smash my wworless wihtn glass shit." Lavallee Decl. ¶ 18 & Ex. F. Stine also wrote that same day regarding a certain Implicit employee, "fuck him, I'll bust his kneecaps with and then he'll know mean." *Id*. On May 10, 2024, Traver Stine sent a Slack message to another Implicit employee, Isabelle Gagnon ("Gagnon"), stating that Traver Stine had scheduled a meeting with Stine to provide feedback on his work performance because "[t]rying to catch him in between meetings is not effective right now especially as he may have just come from other issues he is trying to manage and he ends up exploding at me as he is that

frustrated by everything." Declaration of Isabelle Gagnon ("Gagnon Decl.") ¶ 4 & Ex. 1. Later on May 10, 2024, while receiving negative feedback from Traver Stine regarding his work performance, including concerns regarding his mistreatment of Implicit employees, Stine had a purported "medical crisis" and subsequently punched himself in the face. Lavallee Decl. ¶ 26. Stine thereafter requested leave from Implicit purportedly to manage his mental health issues. *Id*. Traver Stine told Lavallee that work-related stress was a trigger for Stine's outbursts and threats to harm himself, that Stine had historically resorted to self-harm to deal with stress, and that Stine was seeking mental health care. *Id*. ¶ 27.

On June 14, 2024, Stine was in fact fired from Implicit. Lavallee Decl. ¶ 33. At the time he was fired, Stine was still on leave from Implicit purportedly to deal with his mental health issues that has caused him to punch himself in the face in response to a negative work performance review. *Id*. ¶¶ 30-33. Lavallee truthfully disclosed to the law enforcement officer that Stine had not made any threats to Lavallee that day but that Lavallee was concerned for Stine given Stine's recent threats of self-harm and harm to others, Stine's past incident of self-harm, and Stine's firing that day. *Id*. ¶ 39. Lavallee also truthfully informed the officer that Stine lived with Traver Stine and that Lavallee was also concerned about Traver Stine's welfare. *Id*. ¶ 40. The Stines appear to contend that Lavallee was not actually concerned about their welfare, but there is no evidence to support that contention. Indeed, the communications prior to and on June 14, 2024, from Lavallee and other Implicit employees show that numerous people were concerned about both Stines' welfare. Lavallee specifically told Traver Stine on or around May 13, 2024, that he had previously dismissed Stine's threats of harm to himself and others but now realized upon Stine's acting out on those threats, that he needed to take the threats seriously. *Id*. ¶ 28. Traver Stine admits in her Counterclaim that Lavallee shared his concerns about Stine's behavior with her in that email. *See* Traver Stine Counterclaim ¶ 19(c). Traver Stine, however, did not correct Lavallee's expressed concern in any way. Lavallee Decl. ¶ 28. Rather, two days after Lavallee had called 911, Traver Stine sent Implicit a letter accusing Lavallee of putting her safety at risk by allowing her to meet with Stine in person in their home to provide negative work feedback while knowing he had

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

made extensive threats of violence. *Id*. ¶ 42 & Ex. J.

The Stines now appear to claim contrary to Traver Stine's written statements two days after the 911 call that Lavallee's concern for Stine's and Traver Stine's welfare was unreasonable. But even if Lavallee's concern was unreasonable (a finding the evidence does not support), the defamation claims still fail because there is no evidence that his expressed concern to the law enforcement officer was false. Truth is an absolute defense to a defamation claim and requires that summary judgment be granted for Lavallee. *See Smith v. Maldonado*, 72 Cal. App. 4th 637, 648, 653 (1999) (explaining that "truth is, of course, an *absolute* defense to any [defamation] claim," and affirming trial court's order granting summary judgment to defendant on defamation claim).

There is no evidence that Lavallee told the law enforcement officer anything other than truthful information regarding Stine's past conduct, the events leading up to and including Stine's termination, and Lavallee's concern for Stine's and Traver Stine's welfare. Even if the Stines could produce evidence that Lavallee actually told the law enforcement officer that Stine may have harmed his wife and that Traver Stine may be the victim of domestic violence as their Counterclaims allege (which they cannot because Lavallee did not) or Lavallee's statements about being concerned for the Stines' welfare can be construed as such, the defamation claims still fail because any such statements would be insulated as privileged. Statements to law enforcement officers are privileged unless they are knowingly false or are made with reckless disregard for truth or falsity. *See* Cal. Civ. Code § 47(b)(5). "The reckless disregard test is not a negligence test measured by [what] a reasonably prudent person would have [done]" but instead "must permit the conclusion that the defendant actually had a high degree of awareness of . . . probable falsity." *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 114 (2007) (citations and internal quotation marks omitted). The Stines must prove that Lavallee "in fact entertained serious doubts as to the truth of his publication. Lack of due care is not the measure of liability, nor is gross or even extreme negligence." *Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71, 90 (2007) (citations and internal quotation marks omitted). "[T]he failure to investigate must fairly be characterized as demonstrating the

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

speaker purposefully avoided the truth or deliberately decided not to acquire knowledge of facts that might confirm the probable falsity of charges." *McGarry*, 154 Cal. App. 4th at 114. Thus, if Lavallee actually believed that Stine may have harmed his wife and that Traver Stine may have been the victim of domestic violence, the statements are privileged even if Lavallee's belief was not reasonable.

As discussed above, Lavallee never even made such statements. But Lavallee was concerned about both Stines' safety based on the information available to him at the time, including Stine's numerous threats of harm to himself and others, Stine's violent behavior upon receiving a poor performance review, Stine's on-going leave to deal with mental health issues that had purportedly caused his violent reaction, Traver Stine's admission that Stine "explodes" at her when he is stressed about work, Stine's breach of and takeover of Implicit's computer systems that day using Traver Stine's credentials, and Traver Stine's failure to respond to numerous communications from Lavallee and other Implicit personnel while her husband, who had just been terminated, was using her credentials to commit computer fraud. Lavallee Decl. ¶ 39. Lavallee already regretted not taking Stine's threats seriously and potentially being able to prevent Stine from harming himself on May 10, 2024. The situation on June 14, 2024, was much more volatile. Lavallee could not sit back and do nothing when the information before him suggested two people's safety may be at risk. *Id*. ¶¶ 28, 41. The law protects people in Lavallee's situation so those with honest concerns are not deterred from seeking police assistance. *See Hagberg v. Cal. Fed. Bank*, 32 Cal. 4th 350, 360 (2004) (explaining that the privilege "serves the important public interest of securing open channels of communication between citizens and law enforcement personnel and other public officials charged with investigating and remedying wrongdoing); 2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775) (explaining that the amendment to exclude from the privilege statements to law enforcement officers that are knowingly false or made with reckless disregard for truth or falsity "is not intended to discourage individuals who are facing real danger, who want to report a crime, or who are experiencing a medical or psychiatric emergency from making a 911 emergency system call for assistance").

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

**D.    The Court Should Grant Summary Judgment For Implicit On Stine's Third Counterclaim For Failure To Engage In The Interactive Process**

To prevail on his claim for failure to engage in the interactive process, Stine must (1) prove that he participated in the interactive process in good faith, and (2) "identify a reasonable accommodation that would have been available at the time the interactive process should have occurred." *Scotch v. Art Inst. Of Cal.*, 173 Cal. App. 4th 986, 1014, 1018-19 (2009).

Stine cannot prove that he even initiated the interactive process. The burden is on the employee to initiate the interactive process unless the disability and resulting limitations are obvious. *See id.* at 1013. Courts must "'distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability . . . because the ADA requires employers to reasonably accommodate limitations, not disabilities.'" *Scotch*, 173 Cal. App. 4th at 1013 (quoting *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)). "'Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, ... the initial burden rests primarily upon the employee ... to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.'" *Scotch*, 173 Cal. App. 4th at 1013 (quoting *Taylor*, 93 F.3d at 165). While Implicit was aware that Stine had self-diagnosed as being autistic, Stine never informed Implicit that his purported autism caused limitations that required accommodations. Lavallee Decl. ¶ 14. Public policy dictates that employers assume that disabled employees are not limited in their ability to perform their jobs. *See Taylor*, 93 F.3d at 164. Stine affirmed at his deposition that "I have never requested an accommodation for anything in my life." Stine Tr. 224:1-5. This includes never asking Implicit for any accommodations for his purported autism before being terminated. *Id*. 224:6-9; *see also id*. 224:23-226:25 (testifying that he did not ask to be taken out of a management role while on medical leave). Because Stine never gave Implicit notice that he required accommodations due to his purported autism, Stine never started the interactive process to trigger Implicit's burden to accommodate his purported

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

limitations. *See Spitzer v. The Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1384-85 (2000).

Traver Stine alleges in the Traver Stine Counterclaim that she started the interactive process for Stine "[i]n her role as the company's HR leader." Traver Stine Counterclaim ¶ 11. But Stine, the actual employee for whom the interactive process was purportedly for, disclaims ever requesting any accommodations for his purported autism and was emphatic during this employment at Implicit that he was not responsible for any of the conflicts he had with others. Stine instead blamed both employees and clients for the problems, calling them, among other things, "fucking retarded stupid." Lavallee Decl., Ex. F at IMPLICIT008389. When Lavallee informed Stine that Stine was the cause of the problems, Stine ranted angrily with comments such as "I;ll fucking smash my wworless face wihtn glass shit" and "fuck him, I'll bust his kneecaps with and then he'll know mean." *Id*., Ex. F at IMPLICIT008389-90. Traver Stine acknowledged that Stine blamed others for issues he was having with Implicit employees and was not "willing to actively listen" or "accept any part that he may have in this." Gagnon Decl., Ex. 1 at IMPLICIT008365. She admitted that he did not agree with her assessment that he required accommodations due to his purported autism because, from Stine's perspective, "he sees the current issues that are occurring with different team members as stemming from things that Drew had started and that [Stine] has been trying to fix." *Id*. Stine did not believe he personally needed to make any changes and therefore never asked for or suggested any accommodations he believed Implicit should provide him due to his purported autism. Because Stine never initiated the interactive process, Implicit cannot be liable for failure to engage in the interactive process. *See Rimes v. Claire's Stores, Inc.*, No. 2:22-cv-01488-SPG-JEM, 2023 WL 1787182, at *8 (C.D. Cal. Jan. 6, 2023).

Implicit attributed Stine's poor performance to lack of management experience and Stine's simply having a difficult personality because Stine never indicated otherwise. Lavallee Decl. ¶ 20. Though it was under no obligation to provide any accommodations to Stine due to his purported autism, Implicit nevertheless recognized that Stine's poor interpersonal skills and inability to manage employees were negatively impacting Implicit and made extensive efforts to address Stine's performance issues. Implicit prepared a "Leadership Memo"

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

addressing concerns regarding Stine's performance and behavior. *Id*. ¶ 21 & Ex. G. The memo identified several potential options: (1) management training to help Stine step up as a leader; (2) moving to a non-management role that focused on areas Stine was passionate about, such as coding and architecture; or (3) finding a third person to serve as the CEO who would be the official manager of the company for all relationships. *Id*. Stine, however, did not respond to the Leadership Memo or engage with Implicit at all regarding it. *Id*. Stine acknowledged that he only read the first page of the memo, found it "strange and accusatory," disagreed with it, and therefore did not finish reading it until months later (seemingly after his termination), which he admitted was not an appropriate response to the memo. Stine Tr. 230:10-232:4. He testified that he continues to believe the criticism of his leadership was "unfair" and thus continues to deny responsibility for the issues he caused. *Id*.

Lavallee also spent considerable time facilitating communications between Stine and Implicit's engineers to resolve issues caused by Stine's poor management skills and Stine's animosity towards certain engineers, as well as simply trying to work with Stine to help him succeed. Lavallee Decl. ¶ 22. Traver Stine acknowledged "how much and how long [Lavallee] has tried to help [Stine]." Gagnon Decl., Ex. 1 at IMPLICIT008367. But instead of acknowledging Lavallee's attempts to help Stine succeed as the Company's CTO, Stine blamed all conflicts on the engineers. Stine was not receptive to any proposals or efforts made by Implicit to improve Stine's performance and never suggested any alternatives himself other than demanding that employees he had conflicts with be fired. Lavallee Decl. ¶ 23. At his deposition, Stine continued to claim he was being "bullied" by his subordinates rather than accept responsibility for the numerous conflicts he had. *See* Stine Tr. 232:5-16. He acknowledges that he did not read the Leadership Memo beyond the first page because he disagreed with it. Stine Tr. 230:10-232:4. This does not constitute good faith participation in the interactive process. *See Scotch*, 173 Cal. App. 4th at 1014 (explaining that "[e]ach party must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party," and that "[l]iability hinges on the objective circumstances surrounding the parties' breakdown

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith").

Moreover, even if Stine had started the interactive process (which he did not) and participated in it in good faith (which he did not), summary judgment must be granted for Implicit on Stine's Third Counterclaim because Stine cannot identify any reasonable accommodation that the interactive process should have produced. *See Scotch*, 173 Cal. App. 4th at 1018-19. A "reasonable accommodation" is "'a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired.'" *Scotch*, 173 Cal. App. 4th at 1010 (citation omitted). An employer is not required to provide any accommodations that cause an undue hardship. Cal. Gov. Code § 12940(m)(1). An "undue hardship" is "an action requiring significant difficulty or expense" considering, among other things, "[t]he nature and cost of the accommodation needed" and "[t]he overall financial resources of the covered entity." Cal. Gov. Code § 12926(u). Traver Stine – ***but not Stine himself*** – has asserted that Implicit should have engaged the company Torch to provide management training for Stine. *See* Traver Stine Counterclaim ¶ 12. But the engagement of Torch would not have been a reasonable accommodation. Stine stated at his deposition that "I don't think management training would have helped the underlying issues that were creating a rift. I would say potentially even could have made things even worse." Stine Tr. 223:4-17. Implicit also determined that Torch was not appropriate for Stine because the program was targeted for high performing managers, while Stine lacked basic management skills. Lavallee Decl. ¶ 29. Moreover, Torch would have been prohibitively expensive for Implicit and thus cause undue hardship. *Id*.; Cal. Gov. Code § 12926(u).

The only potential solutions Stine has mentioned as helping with his issues are "time away" from Implicit and "personal counseling," both of which he testified he only realized in retrospect and not during his employment at Implicit. Stine Tr. 223:4-24. "Personal counseling" does not fall within any of the statutory categories of "reasonable accommodations" and is not a "modification or adjustment to the workplace." *See* Cal. Gov. Code § 12926(p); *Scotch*, 173 Cal. App. 4th at 1010. "Time away from Implicit" is also not a

IMPLICIT AND LAVALLEE'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:24-cv-03744-WHO

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

reasonable accommodation. As CTO of Implicit, Stine could not perform the essential functions of his job if he were away indefinitely. But Implicit did grant Stine medical leave when requested and did not demand that Stine return by any particular date. The "time away" he was granted, however, did not resolve the problems Stine was experiencing at Implicit – inability to manage employees and poor interpersonal skills. *See Scotch*, 173 Cal. App. 4th at 1012 (explaining that employee's proposed accommodation was not reasonable because it did not accommodate the employee's purported limitations).

Problems arose when Stine insisted on returning without any changes. When Stine raised the possibility of returning to Implicit after he had punched himself in the face, Lavallee asked Traver Stine to have Stine to propose a plan to help Stine better communicate with Implicit employees. Stine did not provide any plans or suggestions to improve his communications with Implicit employees. Stine indicated to Implicit that he did not want to communicate with employees but was not willing to relinquish the CTO role for a non-leadership position. Lavallee Decl. ¶ 30. Traver Stine indicated that Stine wanted to maintain his management role but work "siloed" and "uninterrupted" for three to four months and simply not talk to or communicate with any other employees. Lavallee and Litshauer discussed Stine's demands and determined that they were not reasonable. *Id*.

Stine testified that management training – what Implicit had offered and Traver Stine alleges Implicit should have provided – would not have resolved his issues. When asked repeatedly at his deposition if there was anything Implicit could have done to accommodate his purported autism, Stine finally admitted, "I can't answer that question." Stine Tr. 236:13-237:20. He therefore has not and cannot identify any reasonable accommodations that should have been available to him at the time he should have (but did not) start the interactive process that would have allowed him to perform the essential duties of his job. The Court must grant summary judgment for Implicit on Stine's Third Counterclaim.

**E.**     **The Court Should Grant Summary Judgment For Implicit On Stine's Fourth Counterclaim For Failure To Provide Reasonable Accommodations**

To prevail on a claim for failure to provide reasonable accommodations, a plaintiff

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

must prove "(1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position [held or desired], and (3) the employer failed to reasonably accommodate the plaintiff's disability." *Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 346 (2022). As discussed above, Implicit was under no duty to accommodate Stine's purported disability because Stine never informed Implicit that he required any accommodations for his purported autism and in fact emphatically stated at his deposition that "I have never requested an accommodation for anything in my life." Stine Tr. 224:1-5. While Traver Stine mentioned to Gagnon on May 10, 2024, that Stine could benefit from management training or coaching, Traver Stine acknowledged that Stine himself did not agree with her assessment because Stine did not believe he bore any responsibility for the conflicts he had with other employees. Gagnon Decl., Ex. 1 at IMPLICIT008365. And Stine affirmed at his deposition that he did not believe management training would have resolved any issues and "potentially even could have made things even worse." Stine Tr. 223:4-17. Stine repeatedly denied responsibility for any conflicts he had at Implicit and that any changes were required on his end. *See, e.g.*, Lavallee Decl., Ex. F at IMPLICIT008386-93. Because he did not believe he was responsible for his conflicts with employees and clients, he never engaged with Implicit on possible accommodations to resolve his inability to manage employees or his poor interpersonal skills.

Implicit was left to guess what it could do to help a poorly performing employee who was not able to meet the essential functions of his job. Implicit and Lavallee worked extensively to support Stine, not because Implicit was under a legal obligation to do so – it had no such obligation (*see Scotch*, 173 Cal. App. 4th at 1013) – but because Implicit and Lavallee both wanted to help Stine succeed. Traver Stine acknowledged "how much and how long [Lavallee] has tried to help [Stine]." Gagnon Decl., Ex. 1 at IMPLICIT008367. Implicit was not able to provide reasonable accommodations to allow Stine to perform the essential functions of his job because Stine did not believe he needed any accommodations. Stine did not engage at all with the options proposed by Implicit in the Leadership Memo, including management training for Stine or Stine moving to a non-management position. Lavallee Decl.

IMPLICIT AND LAVALLEE'S MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:24-cv-03744-WHO

¶ 21; Stine Tr. 230:10-232:4.  Other than his inappropriate requests that Implicit fire employees Stine had conflicts with, the only request Stine ever made to address any of his issues was for medical leave after he punched himself in the face – which Implicit granted. Lavallee Decl. ¶¶ 23, 26.  An employer cannot be charged with failure to provide a reasonable accommodation when the employee never indicates a need for one and actually denies the need for one.  *See Rimes*, 2023 WL 1787182 at *9 (granting summary judgment for employer on claim for failure to provide reasonable accommodations, where employee never requested any accommodations other than medical leave, which the employer had granted).  Indeed, Stine admitted that he cannot identify any accommodations Implicit could have offered him to allow him to perform the essential duties of his job.  *See* Stine Tr. 236:13-237:20.  The Court must grant summary judgment for Implicit on the Stine Counterclaim's Fourth Counterclaim for failure to provide reasonable accommodations.

**F.**    **The Court Should Grant Summary Judgment For Implicit On Stine's Second Counterclaim For Wrongful Termination**

To prevail on his claim for wrongful termination based on membership in a protected class, Stine must prove that he "(1) was a member of a protected class; (2) was qualified for the position sought or was performing competently in the position already held; (3) suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (4) some other circumstance suggests discriminatory motive."  *Brown v. Los Angeles Unified School Dist.*, 60 Cal. App. 5th 1092, 1105 (2021).  "An employer moving for summary judgment on a FEHA cause of action may satisfy its initial burden of proving a cause of action has no merit by showing either that one or more elements of the prima facie case is lacking, or that the adverse employment action was based on legitimate nondiscriminatory factors."  *Rimes*, 2023 WL 1787182 at *5 (citation and internal quotation marks omitted). "Once the employer sets forth a nondiscriminatory reason for the decision, the burden shifts to the plaintiff to produce substantial responsive evidence that the employer's showing was untrue or pretextual . . . . [A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

inference that the employer's actual motive was discriminatory." *Id.* (citations and internal quotations marks omitted).

The Court must grant summary judgment for Implicit on Stine's Second Counterclaim for wrongful termination because Stine cannot establish the second and fourth elements of his prima facie case, and because Implicit has set forth a nondiscriminatory reason for Stine's termination that Stine has no evidence was untrue or pretextual.

Stine was not performing competently as CTO of Implicit. Stine held a management position that required him to supervise and work with Implicit's engineers, but he had extensive conflicts with certain engineers and constantly denigrated them and their work. Lavallee Decl. ¶¶ 16-17. He often reacted with anger when employees asked questions or for guidance. *Id.* ¶ 18 & Ex. F. Stine fostered a toxic workplace relationship with key personnel, impairing their ability to perform their jobs. Stine also denigrated key clients and made inappropriate comments in current and potential clients' and employees' presence. *Id.* ¶¶ 17, 21 & Ex. G. Though Stine never asked for any accommodations, Implicit proposed management training in an attempt to help Stine perform in his current position or moving Stine to a non-management position if Stine believed that was a better fit. Stine was not receptive to either offer. *Id.* ¶ 21 & Ex. G. He insisted on maintaining his current role, denied he was responsible for any of the problems he experienced at Implicit, and continued failing to perform his job competently. Stine could not perform the essential duties of his job while on medical leave, and there is no evidence that the issues that had caused him to fail at his job – his inability to manage employees and poor interpersonal skills – had been resolved by his medical leave so that he could return to his CTO position. *Id.* ¶¶ 30-32. He has identified no reasonable accommodation that would have allowed him to perform the essential duties of his job. *See* Stine Tr. 236:13-237:20. Summary judgment must be granted for Implicit because Stine cannot establish the second element of his prima facie case. *See Rimes*, 2023 WL 1787182 at *6-7 (granting summary judgment for employer where employee could not establish that she could perform the essential duties of her job with or without an accommodation for her purported mental illness, or that her purported mental illness and any

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

23

associated limitations had been resolved by the medical leave she had requested and been granted).

Stine also cannot prove any circumstances showing discriminatory motive by Implicit. Though Stine asserts in the Stine Counterclaim that "Stine's perceived autism was a substantial motivating reason for his discharge" (Stine Counterclaim ¶ 31), there is no evidence that Implicit ever discriminated against any employee, including Stine, for being neurodivergent. Implicit took a number of actions to understand and embrace neurodiversity in the workplace, including creating a "#autism-and-neurodiversity" Slack channel that Lavallee regularly participated in and encouraging Traver Stine to make a neurodiversity presentation at an Implicit team event in Montreal. Lavallee Decl. ¶ 15. Lavallee pushed for neurodiversity as a company value and wrote the following statement that is included on Implicit's website: "We value neurodiversity and the unique contributions it brings to our team. Our goal is to create a supportive environment for all, especially those on the autism spectrum." *Id*. Stine testified that Implicit had a "brown-bag type of thing" that was "meant to sort of help foster a sense of inclusiveness and acceptance, or also just providing resources like links that people might be able to use for their own benefit if they so choose." Stine Tr. 214:24-215:11. Stine acknowledged that everyone at Implicit, including Lavallee, was supportive of this initiative. *Id*. 215:12-25. Stine further agreed that recruiting neurodiverse people was a "core tenet of the company" and that he and Lavallee strategized about recruiting neurodiverse people. *Id*. 216:1-217:19. Stine could identify no instances in which Lavallee discouraged recruiting people with a neurodiverse background. *Id*. 220:14-221:9. Stine stated that Implicit's goal was to make the Company a good environment for neurodiverse people so they could be effective. *Id*. 221:13-222:13. Traver Stine acknowledged "how much and how long [Lavallee] has tried to help [Stine]." Gagnon Decl., Ex. 1 at IMPLICIT008367. Summary judgment must be granted for Implicit because there is no evidence Stine was terminated because he was purportedly autistic.

Stine was terminated because he had failed to perform his job competently and was harming Implicit. Implicit had grown increasingly concerned at Stine's erratic behavior and

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

poor performance. As a manager, Stine fostered a toxic workplace relationship with other key personnel, impairing their ability to perform their jobs. Lavallee Decl. ¶ 25.

Implicit ultimately determined that Stine's gross misconduct and failure to perform his job duties, which included, among other things, a failure to accept responsibility for problems he caused and a refusal to consider ways to improve his job performance, were causing too much harm to Implicit and its other employees. *Id*. ¶ 31. Implicit sent Stine a detailed letter regarding Stine's mismanagement of employees; Stine's mismanagement of Implicit; Stine's failure to complete the duties of a CTO; Stine's extensive interpersonal employee misconduct, including threats to harm employees; Stine's denigration of Implicit's business partners; and general problems with Stine's leadership that had caused Implicit to mistrust Stine. *Id*. ¶ 32 & Ex. H. There is no evidence that these non-discriminatory reasons for Stine's termination are pretextual or untrue. The Court must therefore grant summary judgment for Implicit on Stine's wrongful termination claim. *See Rimes*, 2023 WL 1787182 at *5.

## IV.   CONCLUSION

Based on the foregoing, Implicit and Lavallee respectfully request that the Court grant summary judgment for Implicit and Lavallee on (1) the Seventh Count in Implicit's FAC, (2) Counterclaims Two, Three, Four, Six and Seven in the Stine Counterclaim, and (3) Counterclaim One in the Traver Stine Counterclaim.

Respectfully Submitted,

Dated: August 13, 2025          GRELLAS SHAH LLP

By:   */s/ Dhaivat H. Shah*
      Dhaivat H. Shah
      Attorneys for Plaintiff and
      Counterdefendant  IMPLICIT
      CONVERSIONS, INC. and
      Counterdefendant ROBIN LAVALLEE

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104