Jackie M. Ford, Esq. (SBN: 272641)
*jford@structurelaw.com*
Karen F. Rothschild, Esq. (SBN: 346949)
*krothschild@structurelaw.com*
STRUCTURE LAW GROUP, LLP
1754 Technology Drive, Suite 135
San Jose, California 95110
Telephone: (408) 441-7500
Facsimile: (408) 441-7501

Attorneys for Defendants and Counterclaimants JACOB STINE and JUANITA TRAVER STINE and Defendant PROJECT CRAYON LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMPLICIT CONVERSIONS, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>JACOB STINE, an individual, JUANITA TRAVER STINE, an individual, PROJECT CRAYON LLC, a California Limited Liability Corporation, and DOES 1-10, inclusive,<br><br>Defendants.<br><hr>JACOB STINE, an individual; and JUANITA TRAVER STINE, an individual,<br><br>Counterclaimants,<br><br>v.<br><br>IMPLICIT CONVERSIONS, INC., a Delaware Corporation; and ROBIN LAVALLEE, an individual,<br><br>Counterdefendants. | Case No. 3:24-cv-03744-WHO<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR SANCTIONS – <u>REDACTED AND SUBJECT TO ADMINISTRATIVE MOTION TO SEAL</u>**<br><br>Date:     September 17, 2025<br>Time:    2:00 p.m.<br>Judge:   Hon. William H. Orrick |

## I.    INTRODUCTION

The Stines acknowledge that they deleted electronic information which they should not have done. However, any resulting sanctions should be consistent with the nature of this "wrong" and its actual impact on the case. Implicit's requested jury instructions go beyond what is necessary to cure whatever prejudice it may have suffered.

Fact discovery has closed and has not uncovered any evidence of actual trade secret misuse by the Stines. Implicit therefore seeks in its motion a "nuclear" jury instruction as a last ditch effort to succeed on its misappropriation claims. That is not warranted.

In April 2025, Implicit discovered that the Stines and their new company Project Crayon, LLC were working with Implicit's former anchor client (Sony Interactive Entertainment or "SIE"). Without any factual basis to support any contention that the Stines had done anything untoward with respect to SIE, on June 16, 2025 Implicit filed a first amended complaint alleging new claims rooted in Implicit's loss of the SIE contract to the Stines. Those charges as well as Implicit's earlier charge of misappropriation against the Stines are failing.



Further still, the Stines implore this Court to see through Implicit's arguments to go to the meat of the spoliation question. A comparison of what evidence may have been spoliated to the evidence that is *still* available demonstrates that this is little if any actual prejudice to Implicit. For this reason as well, Implicit's request for proposed jury instructions should be denied.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether sanctions are warranted against the Stines in light of deletions made to Reynard.

DEFENDANTS' OPPOSITION TO COUNTER-DEFENDANTS' MOTION FOR SANCTIONS
CASE NO. 3:24-CV-03744-WHO

2.     Whether sanctions are warranted against the Stines in light of the text messages they acknowledge they deleted.

### III.     FACTUAL BACKGROUND

By now, the factual background of this dispute is likely well-known to the Court. The underlying facts as laid out in Implicit's moving papers taking place prior to the filing of this lawsuit are not largely in dispute.

At Stine's deposition on May 16, 2025 he testified that on June 14th, 2024, he texted Traver Stine to ask for her password, and that while he could not remember what he actually sent in the message to Traver Stine, he recalls keeping it very short. Declaration of Jackie Ford ("Ford Decl."), Ex. A (Stine Tr. Vol. I) 174:1-10; 175:12-20. Stine further testified that in July or August 2024 he wiped the computer Reynard because he felt like it was safer not to have the data on it floating around in multiple locations. *Id*. 190:1-25. At a second session of his deposition on July 28, 2025, Stine further testified that he recalled Traver Stine responding with a singular message of her password and that he deleted the text message containing the password immediately after using it and the text requesting the password either that same evening or the next day with Traver Stine present. Ford Decl., Ex. B (Stine Tr. Vol II) 278:1-25.

At Traver Stine's deposition on May 30, 2025, she testified that Stine asked her for her main password over text, to which Traver Stine then provided her password, and that she recalled deleting those text messages that same day. Ford Decl., Ex. C (Traver Stine Tr.) 161:18-162:5.

At some point *later*, in either July or August 2024, Stine noticed that Reynard was attempting to connect with Implicit servers. Ford Decl., Ex. A (Stine Tr. Vol. I) 190:9-25. Stine also noticed that there was information that should have

- 2 -

been present on Reynard but was missing. *Id.* He then deleted the remaining information so that there would to be one less copy of Implicit remaining on the server (e.g., not already deleted by Lavallee) information on a non-Implicit device. *Id*.

After his termination, Stine formed a new company, Project Crayon. Through Project Crayon, Stine continues to develop video game emulations for modern consoles. ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Implicit's claims have now evolved, asserting that Stine and Project Crayon stole its "trade secrets and confidential information" and then used that information to then bid against Implicit for the SIE contract. Dkt. 93. Additionally, it is alleged that Stine "exploited" concerns over Implicit's computer security to interfere with the prospective contract between Implicit and its then-customer SIE. Id. However, discovery has clearly revealed otherwise. ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇

Stine has also produced all communications between Project Crayon and SIE which demonstrate no Implicit confidential information was used in the bidding process nor exploiting accusations about Implicit, and all Project Crayon source code information for expert analysis. Ford Decl., ¶¶ 9, 10, 11. Documentary evidence of any alleged impropriety would therefore be in Implicit's possession.

- 3 -

# IV.    LEGAL AUTHORITY AND ANALYSIS

## A.  Legal Standard

District courts are authorized under Rule 37 of the Federal Rules of Civil Procedure to impose a wide range of sanctions when a party fails to comply with the rules of discovery. *Wyle v. R.J. Reynolds Indus., Inc*., 709 F.2d 585, 589 (9th Cir. 1983). Rule 37 provides three criteria to determine whether electronically stored information ("ESI") has been spoliated. First, the ESI "should have been preserved in the anticipation or conduct of litigation"; second, the ESI "is lost because a party failed to take reasonable steps to preserve it"; and third, the ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).

Next, if a determination of spoliation is made under that criteria, the next step in the analysis is to evaluate whether the party acted with the intent to deprive the other party of using the information in the litigation *Id*. If an intent to deprive is not found, but there is a finding of prejudice from the loss of the information, the court may "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If an intent to deprive the other party of the information is found, the court may: 1) "presume the lost information was unfavorable to the party;" 2) "instruct the jury that it may or must presume the information was unfavorable to the party;" or 3) "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2). While intent is not defined under the rule, "'[n]egligent or even grossly negligent behavior' is insufficient to show 'intent.'" *Porter v. City & Cnty. of San Francisco*, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) (quoting 2015 Advisory Comm. Notes). Where "the evidence shows or it is reasonable to infer, that the a party purposefully destroyed evidence to avoid its litigation obligations," courts have found the intent requirement under Rule 37(e)(2) satisfied. *Id*.

When analyzing whether to impose spoliation sanctions, courts "consider three factors: ''(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party.'" *Apple Inc. v. Samsung Electronics Ca., Ltd,* 888 F.Supp.2d 976, 992 (N.D. Cal. 2012) ("*Apple*") quoting *Nursing Home Pension Fund v. Oracle Corp.,* 254 F.R.D. 559, 563 (N.D.Cal.2008).

Assessing prejudice, courts inquire whether the party's actions impaired the other party's "ability to go to trial or threatened to interfere with the rightful decision of the case." *Apple* at 993, quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir.2006). Courts have also denied requests for adverse inference instructions where the degree of fault and level of prejudice were not sufficient to justify imposition of the sanction. *Id*. The range of adverse jury instructions include permitting a jury to presume that the lost evidence is both relevant and favorable to the innocent party, while allowing the spoliating party to produce rebuttal evidence which the jury must then consider, to instructing that certain facts are deemed admitted and must be accepted as true. *See Scalia v. County of Kern*, 658 F.Supp.3d 809, 815 (E.D. Cal. 2023).

Implicit is not able to show any significant prejudice it has suffered which important to underscore as this is a factor the Court must analyze under the authority above. In the case of Reynard, Implicit has also deleted copies of the information at issue and admits it had additional copies of the same. In the case of the text messages, the Stines admit that Traver Stine gave Stine her password via text message. In neither case, did the Stines intend to deprive Implicit of information in anticipation of litigation. It is therefore requested that the Court recognize that any wrongdoing is ultimately of minimal import.

**B.  The Reynard Computer**

    **1.**    **"Wiping" of Reynard has not Significantly Prejudiced Implicit, If at All**

If the Court finds Stine acted unintentionally, it should "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the Court finds Stine acted intentionally, then it must evaluate "the degree of prejudice suffered by the opposing party." *Apple* at 992. Setting aside for the moment any analysis of intent, Implicit has not demonstrated a level of prejudice that warrants the type of jury instructions requested.

Nowhere does Implicit explain how Reynard could have included evidence of the Stines' wrongdoing. ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ If Stine could have produced information from Reynard he deleted, it would have a copy of Implicit's own data less what Implicit itself deleted. Implicit has not met its burden show that Reynard

- 5 -

contained evidence of the Stines' wrongdoing that is not otherwise available to Implicit.

### 2. Information From Reynard Was Available From Other Sources

There is serious question whether the information from Reynard "cannot be restored or replaced through additional discovery," and thus whether spoliation in fact occurred. Fed. R. Civ. P. 37(e). Implicit acknowledges that there were two machines that contained identical copies of information contained on the Reynard device, meaning at least two copies of existing files are already in Implicit's possession. As a result, no prejudice flows from Stine's deletion of whatever remained after Lavallee deleted Reynard folders.

Implicit also complains of not having evidence of "usage history" of the Reynard machine. But what would that history show? In order to "use" anything from Reynard, the information would have necessarily needed to have been transferred elsewhere. If that happened (despite lack of any evidence that it did), Stine necessarily would have copies of those materials. But no such documentation has been produced by Stine despite the fact that they have produced all information in their possession related to Stine's communications with SIE and other Project Crayon customers. Discovery has revealed no use of any project where Implicit information was used improperly whatsoever.

*After* Stine's deposition testimony where he acknowledged "wiping" what Lavallee had left on Reynard, Implicit issued requests for inspection covering "any device that contains or has contained IMPLICIT TRADE SECRETS and/or CONFIDENTIAL INFORMATION including, but not limited to, YOUR development laptop." Stine objected to this request, citing privacy concerns. Implicit did not follow up. Ford Decl. ¶ 12. If Implicit believed it was prejudiced, it could have and should have met and conferred with Stine's counsel and then moved to compel production of the inspection. Having not tried to obtain information about usage history from other sources as it could have done, it cannot be said with certainty that such information was not available.

### 3. Stine Did Not Intend To Spoliate Evidence by Wiping Reynard

While again acknowledging that the information at issue should not have been deleted, Stine had no ill-intent with respect to Reynard. If the court finds that spoliation occurred, it

- 6 -

should recognize that Stine did not intend to deprive Implicit of any information. *See* Fed. R. Civ. P. 37(e)(2).

Stine testified that he "felt like it was safer to not have the data floating around in multiple locations" when he deleted remaining data on the computer, ███████████████████████ ███████████████████████████████████████████████████████████ ███████. As there were two other machines hosting the same data as Reynard, this was Stine's misguided effort to protect Implicit information by reducing the number of copies available. While nonetheless a failure to preserve ESI, there was no intent to deprive Implicit of any information as Reynard because Implicit already had the same (and indeed more in the form of the 32 folders that Lavallee had deleted from the device).

Moreover Stine has not tried mislead by referring to Reynard as a personal computer. He previously declared that "My home hosted the computer that Mr. Lavallee is referring to as La Honda, which Implicit internally named 'Reynard.' Reynard is an individual personal computer that Implicit used to act as a server." Dkt. 22-1, 2:18-20. "An individual personal computer" means that it was a single machine, and within this context "personal computer" means a "PC" or typically "a compact computer that uses a microprocessor and is designed for individual use, as by a person in an office or at home or school, for such applications as word processing, data management, financial analysis, or computer game."[1] Reynard is a PC, albeit one that was used as a server. As Implicit had two other copies of the information that contained on Reynard after Lavallee and ***not*** Stine effectively spoliated some of its contents, there has been no necessary showing of prejudice.

### 4.    Implicit's Requested Jury Instruction Regarding Reynard Goes Beyond What is Needed to Cure Any Prejudice Which May Exist.

Imposition of an adverse jury instruction is warranted only by sufficiently high levels of prejudice and fault, neither of which are present with regard to Reynard. Reynard contents were, at best, negligently deleted and Implicit has alternative methods to establish whether any

---

[1] https://www.dictionary.com/browse/personal-computer

DEFENDANTS' OPPOSITION TO COUNTER-DEFENDANTS' MOTION FOR SANCTIONS
CASE NO. 3:24-CV-03744-WHO

information contained on Reynard was used by Stine or Project Crayon.

Nevertheless, Implicit seeks an instruction that "The jury must presume that the evidence that Stine destroyed would have shown Stine's taking and possession of Implicit trade secret." This mandatory finding goes far beyond any needed "cure" prejudice Implicit may have suffered, if any. Once more, as Implicit already has copies of the information at issue.

Implicit cites law to support a finding of an irrebuttable presumption in a situation where deprivation of evidence "would leave the plaintiff powerless to respond to and overcome material that a defendant might present to rebut the presumption." *RG Abrams Ins. v. Law Offices of C.R. Abrams,* 342 F.R.D. 461, 520 (C.D. Cal. 2022). But given that Implicit has failed to identify information Reynard could have contained that is not available from other sources, a mandatory instruction to the jury is neither necessary nor appropriate.

Given Implicit's failure to explain what information Reynard could have possibly shown in the way of any taking or possession that it does not have from other sources, the Stines request that the Court impose either monetary sanctions or a lesser jury instruction with permissive as opposed to mandatory instructions to the jury.

**C. The Stines' Marital Text Messages**

**1.    The Deleting Of The Text Messages Has Not Significantly Prejudiced Implicit**

As explained above, regardless of the Stines' intent, the Court's analysis must evaluate prejudice to Implicit. *See* Fed. R. Civ. P. 37(e)(1); *Apple* at 993. Testimony has been elicited that Traver Stine did give Stine her password. As explained above, regardless of the Stines' intent, the Court's analysis must evaluate prejudice to Implicit. *See* Fed. R. Civ. P. 37(e)(1); *Apple* at 993. While admittedly the Stines' testimony is inconsistent on this subject, the fact that Stine asked for and received Traver Stine's Implicit password after Stine's termination is not in dispute. The fact that related statements are contradictory speaks for itself. Prior testimony and discovery responses can be used to impeach the Stines' testimony at trial and that would mitigate any supposed prejudice to Implicit.

The Stines acknowledge that they should not have deleted text messages, and understand

- 8 -

and appreciate this Court's prior ruling that "[w]hile … adverse inferences may be imposed for spoliation, it would be far superior to know exactly what the Stines deleted." Dkt. 96 at 2:21-23. However, there is no dispute that the Stines acknowledge that Traver Stine sent Stine her password.

Implicit thus has sufficient evidence to establish its claims regarding Stine gaining access to Implicit's systems. Absence of the actual text messages minimally, if at all, prejudices its ability to proceed at trial or risks that lack of evidence would interfere with a rightful decision in the case. Following discovery of the deleted text messages, Stine agreed to testify for approximately 2 hours beyond the 7-hour deposition time limit provided in Rule 30(d)(1) on a second day of testimony. Ford Decl. ¶ 3. Additionally, Stine sat for a second, separate deposition as the witness for Project Crayon. Having had more than sufficient opportunity to thoroughly question Stine following discovery of the deleted texts, any prejudice has been greatly mitigated. Ford Decl. ¶ 4.

While unfortunately deleted text messages could not be recovered forensically, the Stines have provided all the information they can to address the matter. While perhaps not as good as texts themselves, they do admit what happened.

**2.       The Stines Did Not Intend to Spoliate Evidence In Deleting The Text Messages**

As for intent, the Stines were not anticipating litigation with respect to any computer access issues at the time the messages were deleted. Stine testified that the messages were deleted on the "evening of [June] 14th [2024] or sometime on the 15th." Ford Decl., Ex. B. (Stine Tr. Vol. II 278:5-8). Traver Stine's testimony was consistent that during the period April/May/June 2024, she was "scared" of Lavallee's behavior. Ford Decl., Ex. C (Traver Stine Tr. 103:7-106:5). Stine further testified: "Juanita was scared of Robin, and she wanted the messages to be removed. She though that they could be used, perhaps, for retaliatory things." Ford Decl., Ex. B (Stine Tr. Vol. II 279:14-21). At that time, the lawsuit had not yet been filed; the events prompting the litigation had not yet taken place. Around that same time, on the evening of June 14th. Lavallee also made a 911 call that prompted law enforcement to needlessly appear at the Stines' home after dark,

- 9 -

causing further concern and fear as to what he might do to retaliate against the Stines.

While again ill-advised in view of the employment dispute underway between Stine and Implicit, it cannot be said that text messages were deleted to prevent discovery in a lawsuit when no action was pending or even threatened. These were also the Stines' marital communications which they did not believe would ever be subject to disclosure  as communications between married couples are not normally discoverable. Due to the lack of intent to deprive Implicit of information in litigation that had not yet commenced, this Court should and only "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). In this situation, that means letting the Stines' testimony speak for itself – which is all Implicit actually needs.

**3.    Implicit's Requested Jury Instruction Regarding the Text Messages Also Goes Beyond What is Needed to Cure Any Prejudice Which May Exist**

Stine obtained the password from Traver Stine and gained access to certain Implicit information as a result. Based on the Stines' own testimony, Implicit is not at a serious disadvantage such that would justify a presumption that the Stines deleted text messages to prevent discovery or use in litigation that was not pending at the time of the deletion. Again, evidence that exists as to the fact of and reasons for the Stines' deletions is sufficient. Cross-examination and impeachment is all that is necessary to avoid prejudice to Implicit on this issue.

**V.    CONCLUSION**

For the foregoing reasons, the Stines respectfully request that this Court deny Implicit's motion for sanctions. While the Stines acknowledge that information should not have been deleted, Implicit has not demonstrated that it has suffered any prejudice that cannot be overcome through standard trial procedures.

Date:  August 25, 2025                    STRUCTURE LAW GROUP, LLP

By:  _____
Jackie Ford, Esq.
Karen Rothschild, Esq.
Attorneys for Defendants and
Counterclaimants JACOB STINE
and JUANITA TRAVER STINE and
Defendant PROJECT CRAYON LLC

- 10 -