GRELLAS SHAH LLP
DHAIVAT H. SHAH, ESQ. (SBN 196382)
(ds@grellas.com)
DAVID I. SIEGEL, ESQ. (SBN 264247)
(dsiegel@grellas.com)
JOSEPH B. PALMIERI, ESQ. (SBN 31275)
(jp@grellas.com)
550 California Street, Suite 1040
San Francisco, CA 94104
Telephone: (408) 255-6310
Facsimile: (408) 255-6350

Attorneys for Plaintiff and Counterdefendant
IMPLICIT CONVERSIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IMPLICIT CONVERSIONS, INC, a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JACOB STINE, an individual, JUANITA TRAVER STINE, an individual, PROJECT CRAYON LLC, a California Limited Liability Corporation, and DOES 1-10, inclusive,<br>Defendants. | Case No.  3:24-cv-03744-WHO<br><br>**REPLY IN SUPPORT OF MOTION FOR SANCTIONS**<br><br>Hearing Date:  September 17, 2025<br>Time:           2:00 p.m.<br>Judge:          William H. Orrick<br>Courtroom:   2 - 17th Floor<br><br>Date Action Filed: June 21, 2024<br>Trial Date: January 5, 2026 |
| JACOB STINE, an individual; JUANITA TRAVER STINE, an individual,<br><br>Counterclaimants,<br><br>vs.<br>IMPLICIT CONVERSIONS, INC, a Delaware Corporation; and ROBIN LAVALLEE, an individual,<br><br>Counterdefendants. | JURY TRIAL DEMANDED |

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

**TABLE OF CONTENTS**

Page (s)

I.    INTRODUCTION ..................................................................................................... 1

II.   ARGUMENT .......................................................................................................... 4

    A.    The Court Should Order An Adverse Inference Jury Instruction For Stine's
    Spoliation Of All Electronic Evidence From Reynard ..................................... 4

    B.    The Court Should Order An Adverse Inference Jury Instruction For The
    Stines' Spoliation Of Text Messages ............................................................. 10

III.  CONCLUSION ..................................................................................................... 14

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

# TABLE OF AUTHORITIES

**CASES** Page (s)

*Apple Inc. v. Samsung Elec. Co., Ltd.,*
   888 F. Supp. 2d 976 (N.D. Cal. 2012) ................................................................. 9, 14

*Compass Bank v. Morris Cerulo World Evangelism,*
   104 F. Supp. 3d 1040 (S.D. Cal. 2015) ................................................................. 11

*Schmid v. Milwaukee Elec. Tool Corp.,*
   13 F.3d 76 (3d Cir.1994) ........................................................................................ 9

**STATUTES**

Fed. R. Civ. P.:

   26(g) ........................................................................................................................ 8

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

## I.    <u>INTRODUCTION</u>

Plaintiff Implicit Conversions, Inc. ("Implicit") discovered during the depositions of defendants Jacob Stine ("Stine") and Juanita Traver Stine ("Traver Stine," and with Stine, the "Stines") that the Stines engaged in gross discovery misconduct and intentionally spoliated at least two key pieces of evidence:  all of the data from the computer "Reynard," which belonged to Implicit and functioned as one of its data centers, and all text messages from June 14, 2024, between the Stines regarding the use of Traver Stine's credentials to restore Stine's access to Implicit's computer systems after Implicit had terminated Stine and suspended his access.

Stine's "wiping" of Reynard to its "pristine, virgin self" destroyed all evidence of any exfiltration or other transfer of Reynard's data to other devices, use of Reynard's data, and anything else Stine did to Reynard after his termination.  The opposition brief (the "Opposition" or "Opp.") argues that a forensic examination of Reynard is unnecessary because Implicit and the Court can simply rely on Stine's own blanket denial that he transferred or used any data from Reynard and Stine's own failure to identify or produce other devices to which he has transferred data from Reynard.  But Stine permanently and irrevocably destroyed the actual evidence that would allow an independent forensic investigation of Reynard and has therefore taken deliberate actions to frustrate any ability to verify whether he is being truthful regarding his activities.  Instead, we are asked to rely only on the veracity of the same individual that engaged in unlawful acts of trespass and theft from Implicit's computer systems and then destroyed key evidence of how he used these materials after stealing them.

The intentional deletion of the text messages destroyed the documentary evidence of the Stines' intent with respect to their unlawful intrusion into Implicit's computer systems and both Stine's and Traver Stine's culpability, as well as any other plans they had to harm Implicit and its CEO, Robin Lavallee ("Lavallee").  Because both incidents of spoliation were willful and intended to deprive Implicit of critical evidence in litigation, Implicit moved for discovery sanctions (the "Motion" or "Mot.") in the form of irrebuttable adverse inference jury instructions.  When the Stines' spoliation of these text messages was first uncovered, the

1

Stines *invited* this Court to issue an adverse jury instruction, describing it as a lesser sanction to allowing a forensic investigation of their phones to attempt to restore these text messages. That was when the Stines legitimately feared that Implicit's ESI vendor would recover the text messages and had apparently calculated that it was better to have an adverse jury instruction than to have a jury see the actual text messages. Now that it is apparent that the text messages are unrecoverable, the Stines have reversed themselves and argue against an adverse jury instruction.

The Stines have no credible defense for their misconduct and thus no credible argument in opposition to the Motion. The Opposition therefore admits that the Stines wrongfully destroyed evidence but makes outlandish arguments for why the Stines should face no repercussions for their admitted wrongdoing. These arguments have no legal or factual merit and only serve to further implicate the Stines.

The Opposition contends that Stine wiped Reynard clean in a "misguided" attempt to "protect" Implicit's confidential information and eliminate a copy of Implicit's confidential information from the server after Stine noticed that files that should have been on Reynard were missing in either July or August 2024 – during the pendency of Implicit's motion for return of Reynard, which the Stines opposed. But the only missing files were security files containing authentication tokens whose sole purpose was to allow Reynard to access the rest of Implicit's network, and the only way Stine could have noticed the authentication tokens had been remotely deleted from Reynard is if he tried to access Implicit's network through Reynard and failed. The Opposition also ignores that Stine – an experienced computer programmer – could have prevented the data on Reynard from being on a server by simply turning the computer off and could have resolved any concerns about the physical safety of the device in his home by simply returning it to Implicit as Implicit had demanded. The Opposition asks the Court to suspend belief and take the Stines at their word that they did not take any Implicit confidential information from Reynard despite their own defense admitting that Stine attempted to access Implicit confidential information on Reynard after he had been terminated and had no right to be using Reynard at all. The destruction of all electronic

REPLY IN SUPPORT OF MOTION FOR SANCTIONS
CASE NO. 3:24-CV-03744-WHO

information from Reynard was not "negligent," as the Opposition contends. It was a knowing and willful act intended to destroy evidence of Stine's wrongdoing and deprive Implicit of information in litigation. An irrebuttable adverse jury instruction that the evidence that Stine destroyed would have shown Stine's taking and possession of Implicit trade secrets is the appropriate sanction for Stine's spoliation of evidence from Reynard.

The deletion of the text messages and the Stines' changing and conflicting accounts of what the text messages contained are so indefensible that the Opposition astoundingly argues that an adverse jury instruction is unnecessary because the Stines have so clearly and repeatedly lied that Implicit can easily impeach them at trial. But an irrebuttable jury instruction – specifically, that the evidence that Stine and Traver Stine destroyed would have shown both Stine's and Traver Stine's unlawful access to Implicit systems – is necessary to prevent Traver Stine from escaping liability for her wrongdoing. The Stines have attempted to exculpate Traver Stine by claiming that she gave Stine her "main" password but did not know why he wanted it, did not know he had been fired, did not know what he did with the password or Implicit's computer systems despite living together and receiving the messages that Stine himself sent to all Implicit employees regarding his actions, and never asked Stine about the serious allegations of misconduct contained in numerous communications she received from other Implicit personnel. But Traver Stine is not an innocent bystander. Stine testified that he deleted the text messages at Traver Stine's direction. The Opposition claims the Stines deleted the text messages because Traver Stine was worried about "retaliation" from Lavallee if Lavallee were to obtain the text messages. This is farcical. Lavallee had no access to either defendant's text messages. As they well knew, Lavallee could only obtain the text messages through discovery in civil litigation and could only use the text messages against the Stines if Implicit were to sue the Stines for their computer crimes. The Opposition therefore admits that Traver Stine directed the destruction of the text messages to prevent their use against her and Stine in anticipated litigation. Traver Stine is just as culpable as Stine for the computer crimes against Implicit and must be held to account.

The Court should grant the Motion and instruct the jury as set forth in the Motion.

REPLY IN SUPPORT OF MOTION FOR SANCTIONS
CASE NO. 3:24-CV-03744-WHO

## II.   ARGUMENT

### A.   The Court Should Order An Adverse Inference Jury Instruction For Stine's Spoliation Of All Electronic Evidence From Reynard

The Motion shows that Stine's spoliation of all electronic evidence from Reynard warrants a mandatory adverse inference jury instruction.  Mot. 8:16-10:9.  The Opposition admits that the Stines had a duty to preserve the electronic evidence from Reynard.  Opp. 2:26-3:3.  The Opposition also admits that Stine intentionally "wiped" all information from Reynard during the pendency of Implicit's preliminary injunction motion seeking Reynard's return.  *Id.*

The Opposition contends, however, that the Stines should face no repercussions for their intentional destruction of evidence because, among other things, the admitted intentional wiping of all information from Reynard was somehow merely "negligent" (Opp. 7:25-8:1) and Implicit supposedly suffered no prejudice because it purportedly should have done more, including moving to compel inspection of additional devices over Stine's objections, to try to determine what wrongful actions Stine had taken with respect to Reynard.  Opp. 6:17-25. These arguments are without merit.

The Opposition asserts that Implicit suffered no prejudice from Stine's spoliation of all information from Reynard because Implicit had other copies of the confidential information. Opp. 5:24-6:8.  But Stine's self-described "restor[ation] [of Reynard] to its pristine, virgin self" (Declaration of Joseph B. Palmieri (Dkt. 107-3) ("Palmieri Decl."), Ex. A ("Stine Tr. Vol. 1") 194:23-195:7) deleted not just the Implicit confidential information stored on the device but also ***all evidence of any actions Stine took with respect to Reynard***.  Declaration of Michael Kunkel (Dkt. 107-2) ¶ 10; Declaration of Jackie Ford (Dkt. 113-1), Ex. F at 204:24-205:11.  The Opposition admits that Stine tried to access Implicit's confidential information on Reynard in July or August 2024 – after Stine had been terminated from Implicit, had been instructed to return all Implicit confidential information, and had no right to access any Implicit confidential information.  *See* Opp. 2:20-3:3; Declaration of Robin Lavallee (Dkt. 107-1) ("Lavallee Decl.") ¶¶ 5-6, 10, 19-20.  It was at this time that Stine supposedly "noticed that there was information that should have been present on Reynard but was missing."  Opp.

2:21-3:1.

The only information on Reynard that Implicit deleted after Stine's termination were security files containing authentication tokens that could be used to unlock and access the rest of the Implicit network. Lavallee Decl. ¶ 23. Because Reynard served as a build machine, the authentication tokens were necessary to allow Reynard to connect to Implicit's other data centers to download all changes and updates to Implicit's source code. They served no other purpose. *Id.* ¶¶ 16-17, 23-24. Following Stine's unlawful post-termination access to the Implicit computer systems, Implicit disconnected its other data centers to prevent Stine from accessing them. *Id.* ¶ 17. Implicit rebuilt its infrastructure and networks on the other two data centers and diverted its operations to those data centers so that it was able function as a company without the use of Reynard. *Id.* ¶ 18. At some point between June 16 and June 20, 2024, Implicit remotely deleted the security files containing the authentication tokens so Stine could not gain access to the newly rebuilt Implicit computer network through Reynard. *Id.* ¶ 24. The deleted files related only to the build system portion of Reynard, leaving the rest of the machine untouched. *Id.* Implicit completely disconnected Reynard from its computer systems on June 20, 2024. *Id.*

The Opposition states that Stine noticed in July or August 2024 that Reynard was trying to connect to Implicit's servers, that Stine noticed that files that were supposed to be on Reynard were missing, and that Stine then decided to completely wipe Reynard, supposedly so "there would to be one less copy of Implicit remaining on the server (e.g., not already deleted by Lavallee) information on a non-Implicit device." Opp. 2:26-3:3. This supposed "innocent" explanation for Stine's spoliation of evidence (*see id.* 7:6-7) makes no sense.

Implicit had remotely deleted the authentication tokens no later than June 20, 2024, when it permanently disconnected Reynard from its servers. *See* Lavallee Decl. ¶ 24. If Reynard's attempts to connect to Implicit's servers were truly what drew Stine's attention to Reynard, that should have happened immediately after Implicit disconnected Reynard from its servers. But Stine supposedly did not notice until at least several weeks and up to two months later that Reynard was trying to connect to Implicit's servers and that certain files had been

REPLY IN SUPPORT OF MOTION FOR SANCTIONS
CASE NO.  3:24-CV-03744-WHO

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

deleted from Reynard.  The only way Stine could have noticed that the authentication tokens had been removed from Reynard is if he tried to access Implicit's computer systems through Reynard and failed or was actively looking for the security files to see if he could still access Implicit's computer systems.  This supposedly occurred in July or August 2024, after Stine had already been terminated and had no right to access any Implicit confidential information and during the pendency of Implicit's motion for return of Reynard.  Lavallee Decl. ¶¶ 5-6, 10, 19-20.  Stine had no lawful business turning Reynard on at all after his termination.

The assertion that Stine believed he was simply "protect[ing] Implicit information by reducing the number of copies available" (Opp. 7:6-7) defies belief.  Stine was supposedly worried about the security of Implicit's data because he realized files were missing from Reynard.  *See* Opp. 2:26-3:3.  But Stine is an experienced computer programmer who helped build Implicit's computer systems and Reynard.  He knew the only files missing were the authentication tokens.  He knew the purpose of the authentication tokens.  And he must have known that Implicit itself had removed the authentication tokens to protect its computer systems – which the Stines had previously unlawfully breached and taken over – from the Stines.  Stine did not have to wipe Reynard clean to prevent another copy of Implicit's confidential information from existing on a server.  *See* Opp. 2:26-3:3.  ***All he had to do was turn Reynard off***.  And if he was concerned about the physical safety of the machine itself within his home, ***he simply could have returned it to Implicit as demanded by Implicit instead of opposing Implicit's motion for return of the machine and wiping the machine clean during the pendency of the motion***.

What Implicit suspects happened but cannot prove because Stine spoliated all the evidence is that in July or August 2024, during the pendency of Implicit's motion for a preliminary injunction and for return of Reynard, Stine believed he would be ordered to return Reynard to Implicit.  He therefore exfiltrated what data he wanted to keep and use before he was forced to return it and then "wiped" Reynard to cover up any evidence of exfiltration.  This is also the only rational explanation for why, months after he was terminated, Stine attempted to use Reynard to access Implicit's rebuilt network and realized the security files

REPLY IN SUPPORT OF MOTION FOR SANCTIONS
CASE NO.  3:24-CV-03744-WHO

containing the authentication tokens had been deleted.  Stine then returned Reynard to its "pristine, virgin self" to destroy all evidence of his wrongdoing.  There is no plausible innocent explanation for Stine's use of and destruction of all information from Reynard in July or August 2024.[1]

The Opposition contends that an adverse inference jury instruction is not warranted because Implicit should have done more to try to determine what Stine did with the data on Reynard before he wiped it.  *See* Opp. 6:9-25.  This supposedly includes expending substantial time and resources moving to compel the inspection of Stine's other electronic devices over Stine's objection.  *See id*. 6:17-25.  This attempt to shift the burden of remediating Stine's intentional spoliation of evidence to Implicit is not supported by any legal authority and inadvertently acknowledges the Stines' and their counsel's obstruction of the discovery process throughout this litigation.

To say the Stines have been less than forthcoming with respect to their discovery obligations is a gross understatement.  Implicit has already been forced to file two discovery motions due to the Stines' obstructionist tactics – one to require the Stines to respond to discovery regarding the use of Traver Stine's credentials to unlawfully access and take over Implicit's computer systems (over the Stines' specious objections that these were privileged marital communications), and one to require the Stines to turn over their cell phones to a forensic expert to attempt to restore critical text messages intentionally deleted by the Stines.  Implicit also planned to file a third discovery motion to compel Stine to reappear for deposition because his counsel again invoked the marital communications privilege during Stine's first deposition to instruct him not to answer questions regarding communications he had with Traver Stine regarding the use of her credentials to access Implicit's computer systems ***in direct contravention of this Court's first discovery order***.  Stine's counsel capitulated and agreed to have Stine reappear to continue his deposition and answer these questions after Implicit's counsel made clear that it would be bringing yet another discovery

---

[1] It is also possible that Stine took these actions between June 20, 2024, and July 2, 2024, when Implicit moved for a temporary restraining order.

motion over the improper instructions not to answer.

The Opposition acknowledges that Implicit attempted to determine whether Stine retained copies of Implicit confidential information on any other devices by seeking inspection of all devices containing Implicit confidential information but that Stine objected to the inspection demands. The Opposition nevertheless faults Implicit (and asks the Court to fault Implicit) for not moving to compel inspection over Stine's objection in an apparent admission that Stine's objections were meritless and Implicit would have prevailed. *See id*. 6:17-25. This is also an apparent admission that the Stines' counsel violated Rule 26(g) by signing discovery objections that were without merit. *See* Fed. R. Civ. P. 26(g) (providing that counsel's signature on discovery objections is a certification that the objections are "consistent with these rules" and "not interposed for any improper purpose, such as to . . . cause unnecessary delay, or needlessly increase the cost of litigation").

The Opposition also asks the Court to assume Stine did not take any data from Reynard because the Stines have not produced any copies of such material. Opp. 6:9-16. But this is a case in which the Stines have engaged in two **known** incidents of spoliation of critical evidence, their counsel has blatantly violated this Court's discovery order, the Opposition acknowledges that Stine and his counsel served meritless discovery objections to force Implicit to expend time and resources to seek Court relief to obtain compliance with Stine's discovery obligations, and the Stines have given ever-changing and conflicting testimony and sworn discovery responses regarding their breach of Implicit's computer systems. The Stines' discovery misconduct is so bad and their word is so meaningless that their own Opposition advocates simply having Implicit impeach them at trial because "[t]he fact that related statements are contradictory speaks for itself." Opp. 8:23-27. Their own Opposition acknowledges that they have lied repeatedly but asks the Court to assume they are telling the truth about Reynard and engaged in no wrongdoing with respect to Reynard – even though the supposed "innocent" explanation for why Stine wiped Reynard clean makes no sense.

The spoliation of all information from Reynard was intentional and done in bad faith. The Opposition attempts to obscure that the only files missing from Reynard – the discovery

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

that supposedly led Stine to wipe Reynard to "protect" Implicit – were authentication tokens whose sole function was to give Reynard access to the rest of Implicit's network. The Opposition ignores that the only way Stine could have noticed the authentication tokens were missing is if he tried to use Reynard to access the rest of Implicit's network and failed or was actively looking for them to determine whether he could still access Implicit's network through Reynard – which admittedly occurred after Stine had no right to access any Implicit confidential information, including that stored on Reynard. The Opposition also asks the Court to believe that Stine – an experienced computer programmer – did not realize he could keep the data on Reynard off a server by simply turning the device off. The Opposition likewise asks the Court to believe that Stine was so worried about the safety of Reynard and Implicit's confidential information in his home that he had to wipe Reynard clean – but apparently not so worried about their safety that he opposed Implicit's motion for return of the machine. The destruction of all evidence from Reynard was not a "misguided" attempt to protect Implicit's confidential information. Opp. 7:6-7. It was a willful and wrongful act intended to destroy evidence of all actions Stine took with respect to Reynard after he was terminated and no longer had the right to access any information on Reynard. It was intended to prevent Implicit from using the evidence against the Stines. The Stines are entitled to no benefit of the doubt here.

Implicit has requested the following irrebuttable adverse inference jury instruction:

> Stine intentionally deleted evidence regarding his taking and possession of Implicit trade secrets. Stine was aware that he had a legal duty to preserve the evidence stored on Reynard. Stine deleted this evidence in order to prevent its discovery and/or use in this litigation. The jury must presume that the evidence that Stine destroyed would have shown Stine's taking and possession of Implicit trade secrets.

This jury instruction is "'the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the [Implicit].'" *Apple Inc. v. Samsung Elec. Co., Ltd.*, 888 F. Supp. 2d 976, 992 (N.D. Cal. 2012) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir.1994). The Court should therefore grant this Motion and instruct the jury accordingly.

REPLY IN SUPPORT OF MOTION FOR SANCTIONS
CASE NO.  3:24-CV-03744-WHO

**B.      The Court Should Order An Adverse Inference Jury Instruction For The Stines' Spoliation Of Text Messages**

The Motion explains why the Stines' coordinated deletion of their text messages warrants a mandatory adverse inference jury instruction. Mot. 10:11-13:23. The Opposition admits that the Stines deleted key text messages from June 14, 2024, regarding the use of Traver Stine's credentials to restore Stine's access to Implicit's computer systems, and have given changing and conflicting testimony and sworn discovery responses regarding the content of those text messages. Opp. 8:19-9:4. The Opposition asserts, however, that an adverse inference jury instruction is unwarranted because, among other things, Implicit suffered no prejudice because the Stines have admitted that Traver Stine gave Stine her password, "the Stines have provided all the information they can to address the matter," and the Stines did not anticipate litigation when they deleted the text messages. Opp. 8:19-10:17. These arguments are without merit.

The Opposition asserts that the Stines deleted the text messages because "'Juanita was scared of Robin, and she wanted the messages to be removed. She thought that they could be used, perhaps, for retaliatory things.'" Opp. 9:23-26. But the only way Lavallee could have obtained text messages from the Stines' phones was through civil discovery. And the only way Lavallee could "retaliate" against the Stines with the text messages ***is to use them in a lawsuit against the Stines for committing computer crimes against Implicit***. The only "retaliation" the Stines could have feared was a lawsuit. The Opposition asserts that the Stines believed their text messages would never be subject to disclosure because they were marital communications, which are normally not discoverable, and therefore did not delete them to prevent discovery in a lawsuit. *Id*. 10:4-6. But if this were true, then there would be no reason to fear Lavallee or Implicit ever obtaining the text messages to able to "retaliate" unless the crime-fraud exception to the marital communications privilege applied. The Stines destroyed the text messages because they were evidence of crimes against Implicit and the Stines wanted to prevent their discovery in a lawsuit, which Traver Stine admits she expected Implicit to file against Stine but was trying to avoid being brought into herself. *See* Traver Stine Tr. 50:16-

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

52:23, 93:5-22.  Because the Stines reasonably anticipated litigation, they had a duty to preserve the text messages.  *See Compass Bank v. Morris Cerulo World Evangelism*, 104 F. Supp. 3d 1040,1051 (S.D. Cal. 2015).  They intentionally deleted the text messages to deprive Implicit of key information in anticipated litigation.[2]

The Opposition attempts to downplay the significance of the deleted text messages as merely showing how Stine obtained access to Implicit's computer systems and argues the intentional destruction of evidence caused Implicit no prejudice because the Stines have admitted Traver Stine gave Stine her password and Implicit can thus establish this issue at trial.  *See* Opp. 8:28-9:8.  But Stine has admitted that the text messages contained more than just Traver Stine's password.  Palmieri Decl., Ex. B (Stine Tr. Vol. 2) 278:22-279:8.  They would evidence both Stine's and Traver Stine's intent with respect to their unlawful intrusion into Implicit's computer systems and both Stine's and Traver Stine's knowledge and culpability.  The Stines lied about the content of the text messages (and even, at first, their existence) to try to exculpate Traver Stine and otherwise conceal their wrongdoing.

Implicit and the Court will never know what these text messages or any other text messages the Stines may have deleted actually contained because the Stines successfully spoliated the evidence, but one can presume the contents are damning.  Upon learning of the spoliation, Implicit moved the Court for forensic examination of the Stines' cell phones in an attempt to recover all text messages the Stines may have deleted.  Fearing the forensic experts would be able to recover their deleted text messages, ***the Stines advocated for an adverse inference jury instruction as "less drastic" relief Implicit could pursue***.  *See* Dkt. 92 at 5. In other words, when the Stines believed there was a chance Implicit's forensic expert may be able to recover the text messages, they must have thought the messages' content was so damning that it would be better for them to be subject to an adverse inference jury instruction.  But now that the Stines know they have successfully spoliated whatever universe of relevant text messages that may have existed – including any text message evidence of their

---

[2] The Stines claim they deleted the text messages on June 14 and 15, 2024, but it is entirely possible that they deleted the text messages after Implicit filed this lawsuit.  We do not know when the deletions actually occurred because the Stines were successful in their spoliation.

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

discussions regarding their unlawful intrusion into Implicit's computer systems and any other plans they had to harm Implicit and Lavallee – the Opposition contends the text messages had minimal value and no sanctions are warranted.  It is easy enough to deduce that the deleted text messages must have gone much further than merely proving that Traver Stine knew why Stine had asked for her Implicit password, given that any adverse jury instruction of the type the Stines had previously suggested to the Court to avoid a forensic examination of their phones would have ordered the jury to make that basic inference.  Of course, we will never know. That is the nature of spoliation – we can never know the scope of the evidence they destroyed or how widespread such destruction was.

These text messages were particularly important for Implicit's claims against Traver Stine, who both Stine and Traver Stine tried to protect by at first testifying that she received an innocuous text from her husband asking for her password, which she sent without asking questions, and had no idea that he had been terminated or that he wanted her password to access Implicit's systems.  Traver Stine went so far as to testify that she used her Implicit password for other things, like social media and their Netflix account, as if Traver Stine might have believed that Stine wanted the Implicit password so that he could catch up on reruns of his favorite sitcoms.

Thanks to the Stines' coordinated acts of spoliation of each of their respective copies of these texts, it is now impossible to know what they actually communicated to each other in connection with the computer crimes they committed against Implicit.  At best, the only evidence of the contents of these texts is the Stines' own shifting testimony of their recollection of what they may have contained.  They have every motive to continue to conceal the full contents of those messages now that they have destroyed the only means of impeaching their accounts.

Implicit has requested the following irrebuttable adverse inference jury instruction:

> Stine and Traver Stine intentionally deleted evidence regarding their unauthorized access to Implicit's systems. Stine and Traver Stine were aware that that they each had a legal duty to preserve the evidence.  Stine and Traver Stine deleted this evidence to prevent its discovery and/or use in this litigation.  The jury must presume that evidence that Stine and Traver Stine destroyed

12

would have shown their unlawful access to Implicit systems. This jury instruction establishes the culpability of both Stine and Traver Stine just as the spoliated evidence presumably did. Stine admits to breaching Implicit's computer systems because the evidence of his wrongdoing is overwhelming and insurmountable. But the Stines and their counsel have diligently and unbelievably attempted to insulate Traver Stine from liability.

Stine originally testified that he told Traver Stine that he had been terminated or fired, that Lavallee had disabled Stine's access to Implicit's computer systems, and that Stine needed Traver Stine's Implicit Google Admin password. Stine Tr. Vol. 1 171:1-173:1. Minutes later, after a break in the deposition during which he conferred with his attorneys and likely Traver Stine as well, Stine recanted his testimony and claimed he really could not remember anything about the request for Traver Stine's password other than it was really short, he supposedly did not tell Traver Stine why he wanted her password, and he likely did not tell her he had been terminated. Stine Tr. Vol. 1 173:12-177:8. Traver Stine claimed that Stine just asked for her "main" password and not specifically for her Implicit password. Traver Stine Tr. 85:11-86:16. Traver Stine has unbelievably also claimed that she had no idea what Stine did with her password or with Implicit's computer systems the entire weekend of June 14, 2024, despite living in the same house as Stine, receiving the emails Stine sent to all Implicit employees regarding his actions, and seeing Slack messages from Implicit personnel regarding Stine's takeover of Implicit's computer systems following his termination. Traver Stine Tr. 49:6-53:24; Reply Declaration of Joseph B. Palmieri ("Palmieri Reply Decl."), Ex. 1 at 46:10-47:14. Traver Stine even testified under oath that she still does not know whether Stine accessed Implicit's computer systems after his termination despite attending Stine's deposition where he admitted to doing so. Palmieri Reply, Ex. 1 at 45:23-46:4, 94:2-6. But her incredible deposition testimony contradicts her sworn interrogatory responses in which she stated she gave Stine her Implicit password so that Stine could regain access to Implicit's computer systems because she believed "Stine was acting in the best interest of Implicit against Lavallee's irrational behavior." Palmieri Decl., Ex. E.

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104

The Opposition argues that an adverse inference jury instruction is not necessary because "the Stines have provided all the information they can to address the matter" (Opp. 9:14-16) but acknowledges that "the Stines' testimony is inconsistent on this subject" and "[t]he fact that related statements are contradictory speaks for itself." Opp. 8:23-27. But the Opposition does not simply acknowledge that the Stines have provided conflicting information regarding the deleted text messages. The Opposition actually argues that *the Stines have so obviously lied that there is no need for an adverse inference jury instruction because the Stines can easily be impeached at trial*. Opp. 8:23-27. While Implicit has every intention of impeaching the Stines at trial, impeachment is not a sufficient remedy for the willful spoliation of critical evidence. The Stines should not be spared an adverse inference jury instruction for being blatant liars. That would reward their acts of spoliation. The Opposition acknowledges that Implicit and the Court have no way of knowing what information, if any, provided by the Stines regarding the deleted text messages is true. An instruction requiring the jury to presume that the evidence that Stine and Traver Stine destroyed would have shown both Stine's and Traver Stine's unlawful access to Implicit systems is "'the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the [Implicit].'" *Apple*, 888 F. Supp. 2d at 992 (citation omitted).

## III.    CONCLUSION

Based on the foregoing, Implicit respectfully requests that the Court grant the Motion and order the irrebuttable adverse inference jury instructions set forth in the Motion.

Respectfully Submitted,

Dated: September 2, 2025                    GRELLAS SHAH LLP

By: _/s/ Dhaivat H. Shah_
Dhaivat H. Shah
Attorneys for Plaintiff and
Counterdefendant IMPLICIT
CONVERSIONS, INC.

GRELLAS SHAH LLP
550 CALIFORNIA ST., SUITE 1040
SAN FRANCISCO, CA 94104