Honorable Judge William H. Orrick
San Francisco Courthouse
450 Golden Gate Ave., 17th Floor
San Francisco, CA 94102

September 4, 2025

Re: *Implicit Conversions. Inc. v. Jacob Stine et al*, Case No. 3:24-cv-03744-WHO

Dear Judge Orrick,

The parties write concerning a discovery dispute over Jacob Stine, Juanita Traver Stine, and Project Crayon, LLC (collectively "Defendants")'s contention that Implicit Conversions, Inc. ("Plaintiff") has failed to particularly identify the trade secrets it claims are at issue in this case. Counsel have met and conferred at length and have not been unable to come to a resolution.

### **Defendant's Position:**

Plaintiff refuses to adequately identify its trade secrets in this case. It either must do so, or give up its claims under both the Defense of Trade Secrets Act (DTSA) and California Uniform Trade Secrets Act (CUTSA).

"To prove ownership of a trade secret, plaintiffs must identify the trade secrets and carry the burden of showing they exist. The plaintiff should describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade. Plaintiffs must clearly refer to tangible trade secret material instead of referring to a system which *potentially* qualifies for trade secret protection. (emphasis in original). Plaintiffs may not simply rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial. **It is inadequate for plaintiffs to cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information. Long lists of general areas of information containing unidentified trade secrets are not substitutes for particularized and concrete trade secrets**." *InteliClear, LLC v. ETC Global Holdings, Inc.* 978 F.3d 653, 658 (9th Cir. 2020) (internal quotations and citations omitted).

The Stines propounded two interrogatories on Implicit requesting that it "identify separately and with reasonable particularity each trade secret that YOU allege was misappropriated as set forth in paragraph 75/86 on your complaint." In response, Plaintiff stated "all source code in the following source code repositories" then listed *74* separate repositories which contain over *51,000* separate files.

Mr. Lavallee testified at deposition that some of the repositories contained code not owned by Implicit but by its former customer Sony Interactive Entertainment ("SIE"). He further testified that other files in other repositories included open-source source code that was owned by various owners. *Lavallee Tr. 219:19-220:23*. Mr. Lavalle revealed that even its

allegedly proprietary "Syrup" source code repository utilizes open-source source code files. *Lavallee Tr 221:19-222:5.* Plaintiff has failed to differentiate between open-source source code or source code owned by third parties from source code which *actually belongs* to Plaintiff and thus is capable of being a trade secret.

Confusingly, Mr. Lavallee testified that some of Plaintiff's repositories share the name of well-known open source repositories. *See Lavallee Tr. 224:16-225:23.* For instance, Implicit claims that all source code in a repository called "snex9" is a trade secret. Snex9 is a well-known open source project. When this was brought to the attention of Plaintiff's counsel, the response was that the code in Plaintiff's snex9 repository would need to be compared to the snex9 open source project to derive what information allegedly belonged to Implicit. However, Plaintiff's snex9 repository contains files that were created years before Implicit's formation.

As another example, Plaintiff has identified and produced a repository called x-mastodon/masticore. Upon review of this repository, the source code is labeled as containing material copyrighted by SIE, The Regents of the University of California, and UNIX System Laboratories, Inc. Clearly these files do not constitute Implicit trade secrets.

Despite this, Plaintiff continues to insist that the entirety of the 51,000+ files in 74 repositories constitute a trade secret because when each repository is taken as a whole, it creates a trade secret based on the parts that Implicit created. To use an analogy, this is akin to Implicit creating a video game for a PlayStation and then saying because it only works with PlayStation, the PlayStation is also owned by Implicit. Plaintiff commenced this litigation over a year ago and has plenty of time to decide what its trade secrets actual consist of.

At least one district court has recognized that when a repository contains open-source code then it is not a trade secret:

"First, it is unclear whether the Shoutlet or Suez repositories qualify as trade secrets. Plaintiff [and counter-defendant] admits that some of Opal's source code is confidential, but Plaintiff testified in his deposition he created much of the Shoutlet API [application programming interface] from publicly available code, which he then modified to suit Opal's needs. Plaintiff also contends that it is common in the software programming industry for API's similar to the Shoutlet and Suez code to be publicly posted. <u>Thus, it is unclear whether the Shoutlet and Suez code is generally known in the public or if it is "high level" such that economic value can be gained from its disclosure</u>. *See Vesta*, 2018 WL 4354301, at *17 (finding issue of fact prevented summary judgment on whether information satisfied statutory definition of trade secret)." *Robillard v. Opal Labs, Inc*. 428 F.Supp.3d 412, 452 (Or. Dist. 2019).

Plaintiff's failure to adequately identify its trade secret is grounds for a motion for summary judgment. (*See Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.* __F.4th__ (9th Cir. 2025) 2025 WL 2315671 at *2. However, Plaintiff's delays have likely deprived Defendants of the ability to bring a motion for summary judgment on Plaintiff's trade secret claims. If Plaintiff has no desire to particularly describe its trade secret as is required at trial, it is free to withdraw its trade secret misappropriation claims.

Defendants' expert only received Plaintiff's production of its source code on August 13, 2025, at which time it became clear that Plaintiff's trade secret identification consisted of swaths of open source material with no added description to identify what portions of the 51,000+ files were its trade secret. Defendants then brought the issue immediately to Plaintiff's attention. In light of Plaintiff's continued refusal to follow the requirements of discovery and of identification of its trade secrets, Defendants seek an order that: 1) Plaintiff amend its interrogatory responses to adequately "identify separately and with reasonable particularity each trade secret that YOU allege was misappropriated as set forth in paragraph 75/86 of your complaint." Alternatively, Plaintiff may dismiss its claims under DTSA and CUTSA if it cannot parse out the specifics of its trade secrets.

**Implicit's Position:**

Implicit has satisfied its discovery burdens in full, including responding to discovery regarding identification of its trade secrets. Defendants' motion is a transparent attempt to raise non-existent discovery issues after the deadline for discovery motions and to essentially transmogrify a discovery dispute into a summary judgment motion (which they also failed file by the deadline).

Defendants bring this dispute to the Court nearly a month after the August 11, 2025, deadline to file motions on discovery disputes. *See* Civil Local Rule 37-3 ("Where the Court has set separate deadlines for fact and expert discovery, no motions related to fact discovery may be filed more than 7 days after the fact discovery cut-off . . . ."). Defendants did not seek leave of Court to extend their deadline to file this motion. It must therefore be denied as untimely. Defendants did not even *raise* any concerns with Implicit's responses to Traver Stine's Interrogatory Nos. 17 and 18 until August 13, 2025. On July 21, 2025, defendants requested to meet and confer regarding Implicit's responses to Traver Stine's Second Set of Requests for Production Nos. 17 and 18. Those requests requested that Implicit produce "All DOCUMENTS that contain, memorialize, and/or describe the trade secrets identified in YOUR proper response to Juanita Traver Stine's Interrogatory No. 17" and "All DOCUMENTS that contain, memorialize, and/or describe the trade secrets identified in YOUR proper response to Juanita Traver Stine's Interrogatory No. 18."

Implicit then produced, consistent with defendants' request for all documents that "contain, memorialize and/or describe the trade secrets" all of the source code from the repositories identified in its responses to Traver Stine's Interrogatory Nos. 17 and 18. The Implicit source code was produced as plain text and binary files. Defendants came back and demanded that Implicit produce the entire history for each repository, purportedly so their expert could assess how and when Implicit modified the various repositories. This was beyond what was required of Implicit, but nonetheless, Implicit provided an entire new production that included the revision history of the codebase.

Implicit had by then provided the entirety of relevant source code and the entire audit history associated with that source code so that an expert could walk through every iteration, change and evolution. Defendants had no more room to complain. So, instead, on August 13, two days after the deadline to file discovery motions, defendants claimed there was something insufficient about Implicit's responses to Interrogatory Nos. 17 and 18, because some of the source code repositories identified had evolved from open-source code and they argued that, therefore, 100% of the lines of code in each identified repository was not written by Implicit and each open source line could not be a trade secret.

This thirteenth-hour line of attack is based on a false premise. Open-source code is public and available to everyone. But developers modify and evolve open-source code to make proprietary software. This includes decisions about rewriting existing lines of code and adding new lines of code within the context of the existing code base such that the moving pieces interact with each other in a way that yields functioning software that is profoundly different from other software that may contain the same open-source code but which has been unmodified or which has evolved based on different development decisions.

At this juncture, Implicit has identified each of the specific source code repositories it claims to be its trade secrets, produced the source code from those repositories, produced the modification history of the code, and has explained to defendants why these repositories, as a whole, are Implicit's trade secrets. Implicit has met its burden.

To be clear, Implicit does not dispute that the repositories it disclosed in response to Traver Stine's Interrogatory Nos. 17 and 18 contain open-source code. Nor does Implicit contend that the publicly-available open-source code is a trade secret. Rather, Implicit modified open-source code to build software. The ways it modified source code, including revising lines of code, adding lines of code, and deciding where such modifications should be made in the context of the existing code such that it will yield functioning software according to Implicit's specifications and that it can then sell to its customers, reflect Implicit's most treasured trade secrets and are not found in any version of open-source code.

Implicit, however, cannot provide a complete response to interrogatories asking it to identify its trade secrets by only identifying the lines of code it added to open-source code repositories. That is reductive and incomplete. Any lines Implicit added, and any lines Implicit rewrote or modified, have to be strategically and contextually placed within the existing code such that it dynamically interacts with all of existing lines and functions as Implicit designed it. Adding or modifying open-source code does not preclude trade secret protection.[1] *See Pump Labs, Inc. v. Gui*, No. SA CV 24-1910-JVS (DFMX), 2025 WL 1843254, at *1 (C.D. Cal. Mar.

---

[1] Defendants assert that "[a]t least one district court has recognized that when a repository contains open-source code then it is not a trade secret," citing to *Robillard v. Opal Labs, Inc.* 428 F.Supp.3d 412, 452 (Or. Dist. 2019). That case, however, declined to grant summary judgment because there was issue of fact as to whether the alleged trade secret was posted online without the owner's permission.

Hon. William H. Orrick
September 4, 2025
Page 5 of 5

13, 2025) (finding potential economic harm in disclosing alleged trade secret where open source code was modified). The code that Implicit adds to any open source or third-party code must be viewed in the context of the entire repository. By way of analogy, a publicly-available recipe for a cake could not itself be a trade secret. If, however, someone modifies the recipe by adding particular spices, and keeps the added spices a secret, the modified cake recipe, as a whole, would be a trade secret. And, one could not disclose the modified cake recipe without necessarily including the publicly available recipe as well. It does not follow that the original cake recipe is also being claimed as a trade secret.

Defendants' complaints about Implicit's interrogatory responses appear to conflate what Implicit is required to disclose, with the work their expert must perform. For example, defendants mischaracterize Implicit's position by saying "the code in Plaintiff's snex9 repository would need to be compared to the snex9 open source project to derive what information allegedly belonged to Implicit." Implicit has provided its modified Snex9 repository, along with the full history of the repository. The Snex9 repository (along with the other identified trade secret repositories) can easily be analyzed to see where the Implicit repository diverges from the open-source version by reference to the revision history in the source code Implicit produced. It is defendants' burden, likely through an expert, to analyze the Implicit modifications and argue why they do not transform the Snex9 codebase into an Implicit trade secret.

This motion should be denied because: 1) it is filed in violation of the deadlines set in Local Rule 37-3; and because 2) it fails on the merits. Defendants seem to acknowledge that this dispute is not an issue for a discovery motion, but rather an issue to be determined through summary judgment or at trial. Their dispute is not with the specificity with which Implicit has claimed its trade secrets, but whether they are trade secrets at all. That dispute is not appropriate for a discovery motion.